IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| ANDREW TYLER FOSTER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 6:15-cv-03519-BCW |
| | ) | |
| L-3 COMMUNICATIONS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## SUGGESTIONS IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Richard C. Godfrey, P.C.
(admitted *pro hac vice*)
J. Andrew Langan, P.C.
(admitted *pro hac vice*)
Kristopher S. Ritter
(admitted *pro hac vice*)
Tim Pickert
(admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:  (312) 862-2000
Facsimile:   (312) 862-2200

Joe Rebein, #35071
David B. Dwerlkotte, #62864
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
Telephone: (816) 474-6550
Facsimile:  (816) 421-5547

*Attorneys for Defendant L-3 Communications Corporation*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 2

ARGUMENT .................................................................................................................. 4

I.      PLAINTIFFS HAVE NOT PROPERLY ALLEGED ANY BREACH OF
WARRANTY. .................................................................................................... 4

          A.      Plaintiffs Have Not Properly Alleged Any Breach Of The Written
Warranty. ............................................................................................... 4

          B.      Plaintiffs' Implied Warranty Claim Fails Because Plaintiffs Do Not Allege
That They Purchased Their Sights For A Particular Purpose. ................. 5

II.     PLAINTIFFS' BREACH OF WARRANTY CLAIMS ARE BARRED OR
LIMITED BY THE STATUTE OF LIMITATIONS. ........................................ 6

III.    MOST OF PLAINTIFFS' CLAIMS ARE BARRED BY THEIR FAILURE TO
PROVIDE NOTICE ........................................................................................... 8

IV.    PLAINTIFFS' FRAUD ALLEGATIONS ARE FACIALLY DEFICIENT AND
INADEQUATELY PLED. .................................................................................. 9

V.     PLAINTIFFS' STRICT LIABILITY CLAIMS ARE BARRED BY THE
ECONOMIC LOSS DOCTRINE. .................................................................... 12

VI.    PLAINTIFFS HAVE NOT ALLEGED THAT THEIR SIGHTS HAVE
MANIFESTED ANY DEFECT. ....................................................................... 14

CONCLUSION ............................................................................................................. 15

**Cases**

*Alban v. BMW of N. Am.*,
  No. 09-cv-5398, 2011 WL 900114 (D.N.J. Mar. 15, 2011) ...................................................3

*Am. Standard Ins. Co. of Wisconsin v. Bracht*,
  103 S.W.3d 281 (Mo. Ct. App. 2003)......................................................................................15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................................................4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................................................4, 14

*Blake v. Career Educ. Corp.*,
  No. 4:08-cv-00821 ERW, 2009 WL 140742 (E.D. Mo. Jan. 20, 2009) .................................10

*Braden v. Wal-Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009) .....................................................................................................4

*Briehl v. Gen. Motors Corp.*,
  172 F.3d 623 (8th Cir. 1999) ..............................................................................................12, 15

*Cipollone v. Liggett Grp., Inc.*,
  505 U.S. 504 (1992)...................................................................................................................4

*Clapper v. Amnesty Int'l USA*,
  133 S. Ct. 1138 (2013)..............................................................................................................13

*Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*,
  61 F.3d 639 (8th Cir. 1995) .......................................................................................................9

*Davis v. Chase Bank U.S.A., N.A.*,
  650 F. Supp. 2d 1073 (C.D. Cal. 2009) .....................................................................................9

*Doe v. Miles, Inc.*,
  No. ED75100, 2000 WL 667383 (Mo. Ct. App. May 23, 2000)...............................................5

*Drobnak v. Andersen Corp.*,
  561 F.3d 778 (8th Cir. 2009) .....................................................................................................9

*Enervations, Inc. v. Minnesota Mining & Mfg. Co.*,
  380 F.3d 1066 (8th Cir. 2004) ...................................................................................................3

Case 6:15-cv-03519-BCW   Document 32   Filed 02/08/16   Page 3 of 22

*Far E. Servs. Corp. v. Tracker Marine, L.L.C.*,
    246 S.W.3d 486 (Mo. Ct. App. 2007) ..................................................................................8

*Gilliam v. Gohn*,
    303 S.W.2d 101 (Mo. 1957) ..........................................................................................7

*Graham v. McGrath*,
    243 S.W.3d 459 (Mo. Ct. App. 2007) ..................................................................................7

*Greenberger v. GEICO Gen. Ins. Co.*,
    631 F.3d 392 (7th Cir. 2011) ......................................................................................10

*HRL Land or Sea Yachts v. Travel Supreme, Inc.*,
    No. 1:07-cv-945, 2009 WL 427375 (W.D. Mich. Feb. 20, 2009) ...........................................10

*In re Bisphenol-A (BPA) Polycarbonate Plastic Products Liab. Litig.*,
    687 F. Supp. 2d 897 (W.D. Mo. 2009) ....................................................................5, 6, 11, 15

*Jarrett v. Panasonic Corp. of N. Am.*,
    8 F. Supp. 3d 1074, 1084 (E.D. Ark. 2013) .............................................................................10

*Johnsen v. Honeywell Int'l Inc.*,
    No. 4:14-cv-594 RLW, 2015 WL 631361 (E.D. Mo. Feb. 12, 2015) ......................................5

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ......................................................................................10

*Lizza v. Deutsche Bank Nat'l. Trust Co.*,
    1 F. Supp. 3d 1106, 1121 (D. Haw. 2014) .............................................................................10

*O'Neil v. Simplicity, Inc.*,
    574 F.3d 501 (8th Cir. 2009) ......................................................................................15

*Owen v. Gen. Motors Corp.*,
    533 F.3d 913 (8th Cir. 2008) ....................................................................................6, 7

*Pollard v. Remington Arms Co., LLC*,
    No. 13-0086-CW-W-ODS, 2013 WL 3039797 (W.D. Mo. June 17, 2013).....................7, 11

*Rivera v. Wyeth-Ayerst Labs.*,
    283 F.3d 315 (5th Cir. 2002) ......................................................................................15

*Sharp Bros. Contracting Co. v. Am. Hoist & Derrick Co.*,
    703 S.W.2d 901 (Mo. 1986) (en banc) ..............................................................................13

*Silving v. Wells Fargo Bank, NA*,
    800 F. Supp. 2d 1055 (D. Ariz. 2011) ..............................................................................10

*Stokes v. Dish Network L.L.C.*,
   2015 WL 4378217 (W.D. Mo. July 15, 2015)........................................................12

*Tietsworth v. Sears*,
   720 F. Supp. 2d 1123 (N.D. Cal. 2010) .................................................................9

*Two Moms & A Toy, LLC v. Int'l Playthings, LLC*,
   898 F. Supp. 2d 1213 (D. Colo. 2012).................................................................10

*U.S. Hotel & Resort Mgmt., Inc. v. Onity, Inc.*,
   No. 13-cv-1499, 2014 WL 3748639 (D. Minn. July 30, 2014) ............................13

*Webb v. Carter's Inc.*,
   272 F.R.D. 489 (C.D. Cal. 2011) .........................................................................15

*Weinstein v. Home Am. Mortg. Corp.*,
   No. 2:10-CV-1552, 2010 WL 5463681 (D. Nev. Dec. 29, 2010) .........................10

*Wilbur Waggoner Equip. & Excavating Co. v. Clark Equip. Co.*,
   668 S.W.2d 601 (Mo. Ct. App. 1984)...................................................................12

**Statutes**

Cal. Civ. Code § 1782 ..................................................................................................9

Cal. Civ. Code § 1794(e)(3)..........................................................................................9

Cal. Com. Code § 2607 .................................................................................................9

Magnuson-Moss Act, 15 U.S.C. §§ 2301, *et seq.*........................................................4

Mo. Ann. Stat. § 400.2-607(3)(a) .................................................................................8

Mo. Ann. Stat. § 400.2-725(1).......................................................................................6

Tex. Bus. & Com. Code § 17.505...................................................................................9

Wright & Miller, Fed. Prac. & Proc. Civ. § 1327 (3d ed.) ...........................................3

**Rules**

Federal Rule of Civil Procedure 9(b)....................................................................... *passim*

Rule 12(b)(6)................................................................................................................4

Case 6:15-cv-03519-BCW   Document 32   Filed 02/08/16   Page 5 of 22

## INTRODUCTION

Plaintiffs are purchasers of holographic weapons sights ("HWSs") manufactured and sold by the EOTech division of defendant L-3 Communications Corporation ("EOTech"). They allege that certain EOTech sights contained product defects and, among the nineteen counts in their Amended Complaint, allege breach of warranty, fraud, and violations of the consumer protection statutes of nine states. Nowhere, however, in their nearly 100-page Amended Complaint do plaintiffs ever allege that:

- any EOTech sight purchased by any plaintiff ever manifested any defect;

- any plaintiff purchased an EOTech sight within the time period encompassed by the statute of limitations;

- they have provided any pre-suit notice as required under the Uniform Commercial Code ("UCC") or the state statutes under which they have filed suit; or

- that they have sought any remedy from EOTech per the terms of the HWS product warranty, nor that EOTech has ever failed to honor its warranty obligations as to any purchaser of EOTech sights to repair or replace any defective sight.

These omissions are fatal to plaintiffs' claims, and their Amended Complaint should be dismissed in its entirety. In particular:

**Breach of Warranty Claims (Counts I and VII):** Plaintiffs cannot state a claim for breach of warranty because they do not allege EOTech failed to satisfy its obligations to repair or replace defective sights under the limited written product warranty and because plaintiffs have alleged no "particular" purpose to support a claim for a breach of implied warranty. In addition, plaintiffs' claims for breach of warranty are barred by the statute of limitations, their failure to provide pre-suit notice, and their failure to allege any manifested defect in their particular sight.

**Fraud and Deceptive Trade Practices Claims (Counts II, V, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI, XVII, XVIII, and XIX):** Plaintiffs cannot state any claim for fraud or deceptive trade practices because they fail to allege fraud with particularity as required by

1

Federal Rule of Civil Procedure 9(b) and also fail to allege any manifested defect in their sights. In addition, Counts X, XI, XIV are barred by plaintiffs' failure to satisfy the pre-suit notice requirement that is essential to pursuing any such claim.

**Strict Products Liability (Count VI):** Plaintiffs' strict products liability claim is barred by the economic loss doctrine, a bedrock principle of law that bars their claims, and their failure to allege any manifested defect in their sights.

**Payment by Mistake of Fact (Count III), Unjust Enrichment (Count IV):** Plaintiffs' claims for payment by mistake of fact and unjust enrichment are barred by their failure to allege any manifested defect in their sights.

## BACKGROUND

Although EOTech vigorously disputes plaintiffs' allegations, solely for purposes of this motion and in accordance with the Federal Rules, EOTech recites the following facts as alleged in the Amended Complaint. According to the Amended Complaint, the bulk of EOTech's sales of weapons sights have been made under contracts with the U.S. Department of the Navy. (Am. Compl. ¶ 56.) On November 25, 2015, EOTech reached agreement with the United States to resolve certain False Claims Act and breach of contract claims alleging that EOTech was required under federal contracts to disclose to the United States certain information concerning the sights it sold to the Navy, but that EOTech did not do so. (*Id.* ¶¶ 197, 218.)

In addition to its sales to the Government, EOTech also allegedly sold certain HWS models to individual consumers to whom it provided a two-year warranty that stated:

**Two (2) Year Product Warranty:**

All EOTech Holographic Weapon Sights are crafted with pride in the USA and manufactured with our customer's satisfaction in mind. L-3 Communications EOTech Inc. (L-3 EOTech) guarantees every product to be free from manufacturing defects in material and workmanship under normal use for a period of two (2) years from the manufacturer's date or customer's proof of purchase.

2

L-3 EOTech, at its sole option, will promptly repair or replace the product without charge to the customer, if the product is covered under warranty. . . .

(*Id.* ¶ 204; Ex. A.)[1]  Although plaintiffs allege that they "each purchased an EOTech sight," (*Id.* ¶ 41), they fail to allege how, where, when, and from whom they purchased their sights, as well as the model number and date of manufacture of their sights.

On December 4, 2015, without any pre-suit notice, plaintiffs filed the instant action. Plaintiffs' Amended Complaint liberally quotes the Federal False Claims Act complaint's allegations regarding EOTech's contracts with the Government, alleging that "EOTech's representations to the Government formed the basis of the contract awards that allowed EOTech to place its products in the hands of elite forces with the intended purpose to drive subsequent consumer sales." (*Id.* ¶ 215.)  Plaintiffs allege that certain EOTech sights suffered from performance issues, including (1) cold weather distortion, a distortion of the aiming dot in sub-freezing temperatures, for which a fix was instituted in spring 2008; (2) reticle fade, a dimming of the reticle due to incursion of moisture into the sight; (3) a condition referred to as "thermal drift," meaning that the sight's point of aim differed from its point of impact (or "failed to hold zero") when subjected to hot or cold temperature; and (4) parallax, which refers to the apparent movement of the reticle relative to the target.  (*Id.* ¶¶ 14, 78, 143-46, 173-75.)

Plaintiffs claim to be purchasers of EOTech sights.  (*Id.* ¶ 41.)  Plaintiffs themselves, however, do not allege that any of the defects they allege in fact manifested themselves in their

---

[1]     A complete copy of EOTech's Holographic Weapon Sights Warranty Information is attached as Exhibit A. Though plaintiffs selectively quote only a portion of the applicable warranty, (Am. Compl. ¶ 204), the Court may take judicial notice of and consider the full warranty on a motion to dismiss.  Wright & Miller, Fed. Prac. & Proc. Civ. § 1327 (3d ed.) ("[W]hen the plaintiff fails to introduce a pertinent document as part of her pleading . . . the defendant may introduce the document as an exhibit to a motion attacking the sufficiency of the pleading."); *Enervations, Inc. v. Minnesota Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004) ("documents 'necessarily embraced by the complaint' are not matters outside the pleading").  In breach of warranty cases, courts will consider the warranty when it is attached to a motion to dismiss because it is "integral to or explicitly relied upon in the complaint."  *Alban v. BMW of N. Am.*, No. 09-cv-5398, 2011 WL 900114, at *2 (D.N.J. Mar. 15, 2011) (granting motion to dismiss breach of warranty claims after considering full warranty attached to motion to dismiss).

3

sights.  Neither do they allege that they have sought any remedy from EOTech per the terms of the warranty, that they have provided pre-suit notice of any kind, nor that EOTech has ever failed to honor its warranty as to any purchaser of EOTech sights.

**ARGUMENT**

A complaint is properly dismissed under Rule 12(b)(6) if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In ruling on a motion to dismiss, "legal conclusions or 'formulaic recitation of the elements of a cause of action' . . . may properly be set aside." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Where allegations are grounded in fraud, a plaintiff must plead with particularity the circumstances constituting the alleged fraud. *See* Fed. R. Civ. P. 9(b).  The claims in plaintiffs' Amended Complaint fail to meet these standards and should therefore be dismissed.

**I.     PLAINTIFFS HAVE NOT PROPERLY ALLEGED ANY BREACH OF WARRANTY.**

**A.     Plaintiffs Have Not Properly Alleged Any Breach Of The Written Warranty.**

"A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 525 (1992).  Plaintiffs' claims for breach of warranty under the Magnuson-Moss Act, 15 U.S.C. §§ 2301, *et seq*. (Count I) fail because they do not properly allege EOTech violated its warranty.

EOTech's written warranty of its HWS units provided that EOTech would repair or replace any defective HWS returned to EOTech under its return procedures.  Under the warranty, "EOTech guarantees every product to be free from manufacturing defects in material and workmanship under normal use for a period of two (2) years from the manufacturer's date or customer's proof of purchase.  EOTech, at its sole option, will promptly repair or replace the

4

product without charge to the customer, if the product is covered under warranty." (Ex. A.) Plaintiffs have made no allegations whatsoever that EOTech has refused to honor the terms of its warranty to "promptly repair or replace the product without charge" if it has a manufacturing defect. To the contrary, plaintiffs allege merely that they have "each purchased an EOTech optical sight." (Am. Compl. ¶ 41.) At no point do plaintiffs allege that (1) they purchased their sights within the two-year warranty period; (2) their sights manifested any product defect under normal use; (3) they sought repair or replacement of their sight per the terms of the warranty; or (4) that EOTech failed to honor its obligations under the warranty to repair or replace their sight. Accordingly, plaintiffs have failed to state a claim for breach of the written warranty (Count I).

### B. Plaintiffs' Implied Warranty Claim Fails Because Plaintiffs Do Not Allege That They Purchased Their Sights For A Particular Purpose.

Plaintiffs have likewise failed to state a claim that EOTech breached an implied warranty of fitness for a particular purpose (Count VII, brought on behalf of the putative Missouri class). Missouri law is clear that "a breach of the implied warranty of fitness for a particular purpose may not be established without substantial evidence that the article or product was bought for a purpose that was special or 'particular' to the buyer and distinct from the article's or product's ordinary purpose." *Doe v. Miles, Inc.*, No. ED75100, 2000 WL 667383, at *7 (Mo. Ct. App. May 23, 2000). "[A] particular purpose differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer ***which is peculiar to the nature of his business***. Thus, a plaintiff must demonstrate that he intended to use the product for ***something other than its ordinary purpose***." *Johnsen v. Honeywell Int'l Inc.*, No. 4:14-cv-594 RLW, 2015 WL 631361, at *6 (E.D. Mo. Feb. 12, 2015) (granting motion to dismiss of implied warranty claim where plaintiff failed to allege use of product for a particular purpose different from its ordinary purpose) (citations omitted and emphasis added); *see also In re Bisphenol-A (BPA)*

*Polycarbonate Plastic Products Liab. Litig.*, 687 F. Supp. 2d 897, 909 (W.D. Mo. 2009) ("*In re BPA*") ("Plaintiffs cannot rely on this ordinary purpose to support a claim that there was a warranty of fitness for a particular purpose; they must point to some other purpose that is not "ordinary" in order to support their claim.").

Plaintiffs have failed to allege that they intended to put their sights to any such special or particular use. Instead, plaintiffs' Amended Complaint **confirms** that their purchase of the sights was precisely for the sights' ordinary purposes: "to use for personal, sporting and defensive purposes." (Am. Compl. ¶ 262.) The "ordinariness" of plaintiffs' alleged purpose for purchasing the sights is further evidenced by the fact that plaintiffs stated that such purposes were "advertised publically by Defendants." (*Id.*) Such an ordinary use by plaintiffs, without more, is fatal to plaintiffs' implied warranty claim. By failing to allege any particular purpose, there can be no breach of a warranty of fitness for particular purposes, and Count VII of plaintiffs' Amended Complaint must be dismissed.

## II.     PLAINTIFFS' BREACH OF WARRANTY CLAIMS ARE BARRED OR LIMITED BY THE STATUTE OF LIMITATIONS.

As a matter of law—and at a minimum—all breach of warranty claims for sights purchased before December 4, 2009 are barred by the statute of limitations. EOTech sights are sold with a two-year warranty. (Ex. A.) In Missouri, as in all states that have adopted the U.C.C., the statute of limitations for breach of warranty is four years. Mo. Ann. Stat. § 400.2-725(1). Thus, any breach of warranty claims relating to sights purchased more than six years prior to the date plaintiffs first filed suit (December 4, 2015) are untimely. *See Owen v. Gen. Motors Corp.*, 533 F.3d 913, 919 (8th Cir. 2008) ("[T]he four-year clock begins to tick when the breach is discovered or should have been discovered, or when the explicit period expires, whichever occurs first.") (citation omitted).

6

Contrary to plaintiffs' assertions, nothing tolls or otherwise extends the statute of limitations to encompass claims relating to sights purchased prior to December 2009. "In Missouri, it is well-settled that statutes of limitations are favored and can be avoided only by strictly complying with specific legislative exceptions, which courts cannot extend." *Owen*, 533 F.3d at 921, n.5; *Graham v. McGrath,* 243 S.W.3d 459, 464 (Mo. Ct. App. 2007). Indeed, "the discovery rule does not extend the life of an express warranty beyond its terms." *Pollard v. Remington Arms Co., LLC*, No. 13-0086-CW-W-ODS, 2013 WL 3039797, at *6 (W.D. Mo. June 17, 2013) (dismissing breach of warranty claims as barred by statute of limitations over plaintiffs' arguments of fraudulent concealment).

Neither are plaintiffs' allegations regarding fraudulent concealment sufficient to toll the statute of limitations. "To avoid the running of the statute of limitations, the fraudulent concealment "must be something more than mere silence on defendant's part. . . ; usually the employment of some means or device to prevent discovery should be shown." *Owen*, 533 F.3d at 920 (quoting *Gilliam v. Gohn*, 303 S.W.2d 101, 107 (Mo. 1957)); *Pollard*, 2013 WL 3039797, at *7 ("Defendants' failure to notify Plaintiff about customer complaints, decisions not to recall the Model 700, or any other statements made in internal company memos does not amount to fraudulent concealment of Plaintiff's breach of warranty claim to justify equitable tolling of the statute of limitations."). As in *Pollard*, plaintiffs' reliance on internal EOTech communications concerning the HWSs or communications between EOTech and various governments entities (*see generally* Am. Compl. ¶¶ 97-138) are insufficient by themselves to justify equitable tolling.

Plaintiffs omit from their Amended Complaint any allegations as to when, how, and from whom they purchased their EOTech sights, as well as which model of sight they allegedly purchased. Plaintiffs, however, should not be permitted to proceed with claims they know to be

time-barred through the artifice of vague pleading, and their claims should be held to be subject to dismissal to the extent they arise from purchases predating December 4, 2009.

Finally, regardless of when plaintiffs purchased their sights, all of plaintiffs' claims should be dismissed to the extent they allege a breach of warranty arising from a "cold weather distortion" defect. As plaintiffs' Amended Complaint itself alleges, a "cold weather distortion fix" was implemented by EOTech in the spring of 2008, (Am. Compl. ¶¶ 143-147), and thus did not occur in EOTech sights sold within the limitations period.

## III.  MOST OF PLAINTIFFS' CLAIMS ARE BARRED BY THEIR FAILURE TO PROVIDE NOTICE.

The UCC, as adopted by all 50 states, imposes strict requirements upon buyers seeking to recover for breach of warranty. One of these requirements is that a "buyer must within a reasonable time after he discovers or should have discovered any breach *notify* the seller of breach," and if they fail to do so, "be barred from *any remedy*." Mo. Ann. Stat. § 400.2-607(3)(a) (emphasis added); *Far E. Servs. Corp. v. Tracker Marine, L.L.C.*, 246 S.W.3d 486, 507 n.12 (Mo. Ct. App. 2007) ("A buyer's remedy for breach in regard to accepted goods as provided in section 400.2–714 is expressly conditioned upon the buyer's notification to the seller of the breach as required by section 400.2–607(3)(a)."). Nowhere in the Amended Complaint do plaintiffs allege that they provided any such notice, and thus their claims in Counts I and VII for breach of warranty are barred and must be dismissed. *Far E. Servs.*, 246 S.W.3d at 506 ("Tracker's failure to give Far East timely notice of the alleged non-conformity . . . bars any recovery by Tracker for the alleged defects.").

Similarly, plaintiffs' claims under several state consumer protection laws should also be dismissed for failure to provide pre-suit notice. Plaintiffs' claim under California's Song-Beverly Consumer Warranty Act (Count XI) fails because a plaintiff must provide pre-suit notice

of any breach of warranty in order to recover under that Act.  Cal. Civ. Code § 1794(e)(3); Cal.
Com. Code § 2607; *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1140 (N.D. Cal. 2010) ("A
plaintiff also must plead that she provided the defendant with pre-suit notice of the breach.").  In
addition, the Texas Deceptive Trade Practices Act (the "Texas DTPA") and the California
Consumer Legal Remedies Act (the "California CLRA") both have strict pre-suit notice
requirements.  The Texas DTPA requires sufficient notice be sent 60 days **prior** to the initiation
of litigation.  Tex. Bus. & Com. Code § 17.505.  Similarly, the California CLRA requires
sufficient notice be sent 30 days **prior** to the initiation of litigation.  Cal. Civ. Code § 1782.
Because plaintiffs have failed to provide any such notice, as required by statute, their claims
under Count X, XI, XIV are legally deficient and should be dismissed.  *See Davis v. Chase Bank
U.S.A., N.A.*, 650 F. Supp. 2d 1073, 1089 (C.D. Cal. 2009) ("[T]hese procedural requirements [in
the California CLRA] are strictly adhered to by dismissing a claim with prejudice.").

## IV.  PLAINTIFFS' FRAUD ALLEGATIONS ARE FACIALLY DEFICIENT AND INADEQUATELY PLED.

Under Rule 9(b), plaintiffs must "state with particularity the circumstances constituting
fraud," meaning that they must allege "such matters as the time, place, and contents of false
representations, as well as the identity of the person making the misrepresentation and what was
obtained or given up thereby."  *Drobnak v. Andersen Corp*., 561 F.3d 778, 783 (8th Cir. 2009)
(citations omitted).  "[C]onclusory allegations that a defendant's conduct was fraudulent and
deceptive are not sufficient to satisfy the rule."  *Commercial Prop. Invs., Inc. v. Quality Inns
Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995).  These requirements apply not only to plaintiffs'
common law fraud claims, but also to their claims under state consumer protection statutes that
sound in fraud, including their claims under the Missouri Merchandising Practices Act
("MMPA") and the consumer protection statutes of California, Hawaii, Illinois, Nevada,

Colorado, Arizona, Arkansas and Michigan. *Blake v. Career Educ. Corp.*, No. 4:08-cv-00821 ERW, 2009 WL 140742, at *2 (E.D. Mo. Jan. 20, 2009) ("[T]here is no indication that the Rule 9(b) heightened pleading requirements are relaxed under the [MMPA]. Rather, Rule 9(b)'s particularity requirements apply with equal force to state consumer fraud statutes as they do to common law fraud claims.") (collecting cases) (internal quotations omitted).[2]

Instead of pleading as Rule 9 requires, plaintiffs plead only generalized and conclusory allegations about EOTech communications to ***private consumers*** such as themselves, failing to identify the time, place, and contents of the alleged false representations. (*See, e.g.*, Am. Compl. ¶¶ 59-61 (referencing general product descriptions on EOTech's website); *id.* ¶ 66 ("To the extent that EOTech represented to consumers . . .").) Such allegations fail to meet the minimal standards under Rule 9(b). In contrast to the lack of detailed allegations regarding EOTech representations to plaintiffs or other consumers, plaintiffs' Amended Complaint contains voluminous allegations regarding the HWS performance specifications set forth in EOTech's 2004 and 2010 contracts with the U.S. Department of the Navy, as well as other communications between EOTech and the United States regarding EOTech HWSs. Indeed, the vast majority of the factual allegations in plaintiffs' Amended Complaint simply replicate the detailed allegations in the complaint in the now-resolved False Claims Act action regarding EOTech's contractual obligations ***to the United States*** and its communications regarding product performance ***to the***

---

[2]    Indeed, federal courts require such pleading with particularity under each of the individual state statutes which plaintiffs have sued L-3 for fraud or deceptive trade practices. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (California Unfair Competition Law, California False Advertising Law and Consumer Legal Remedies Act); *Lizza v. Deutsche Bank Nat'l. Trust Co*., 1 F. Supp. 3d 1106, 1121 (D. Haw. 2014) (Hawaii Unfair and Deceptive Trade Practices Act); *Greenberger v. GEICO Gen. Ins. Co*., 631 F.3d 392, 399 (7th Cir. 2011) (Illinois Consumer Fraud Act); *Weinstein v. Home Am. Mortg. Corp*., No. 2:10-CV-1552, 2010 WL 5463681, at *3 (D. Nev. Dec. 29, 2010) (Nevada Deceptive Trade Practices Act); *Two Moms & A Toy, LLC v. Int'l Playthings, LLC*, 898 F. Supp. 2d 1213, 1219 (D. Colo. 2012) (Colorado Consumer Protection Act); *Silving v. Wells Fargo Bank, NA*, 800 F. Supp. 2d 1055, 1075 (D. Ariz. 2011) (Arizona Consumer Fraud Act); *Jarrett v. Panasonic Corp. of N. Am*., 8 F. Supp. 3d 1074, 1084 (E.D. Ark. 2013) (Arkansas Deceptive Trade Practices Act); *HRL Land or Sea Yachts v. Travel Supreme, Inc*., No. 1:07-cv-945, 2009 WL 427375, at *8 (W.D. Mich. Feb. 20, 2009) (Michigan Consumer Protect Act).

*United States*.  Plaintiffs do not and cannot allege that, at the time they purchased their sights, they knew of and relied upon the alleged representations to the United States government regarding EOTech sights' compliance with Department of Defense contractual specifications.  *In re BPA*, 687 F. Supp. 2d at 904 ("For a statement to be relied upon and cause a purchaser's injury, the statement must have been heard by the purchaser.").

Plaintiffs attempt to bridge this fatal gap in their fraud claim by alleging that EOTech had a duty to, but did not, disclose certain alleged product defects to plaintiffs "because it made representations regarding the optical sights' specifications to federal contracting facilities to get federal contracts which Defendants then used as a false marketing tool to induce consumers to trust their products."  (Am. Compl. ¶ 220.)  In other words, plaintiffs' fraud theory is that consumers were induced to purchase EOTech sights by the fact that EOTech supplied tactical sights to the Department of Defense, and EOTech failed to disclose to the Department of Defense certain information about the compliance of its sights with contractual specifications.  This attenuated and indirect theory of fraud is directly contrary to the law.  Where a "[p]laintiff does not identify any representation made *directly to him or the proposed class*," fraud claims under Missouri law are properly dismissed.  *Pollard, LLC*, 2013 WL 3039797, at *4 (emphasis added); *see also In re BPA*, 687 F. Supp. 2d at 904 ("Plaintiffs' theory—that the placement of a product in a stream of commerce conveys a representation about the product's safety that can serve as grounds for fraud—has not been demonstrated to exist in any of the fifty states.").

In addition, plaintiffs have failed to allege the required causal relationships between any alleged misstatements to them and any harm they claim to have suffered, as they fail to identify not only the time of any fraudulent statements allegedly made to them, but also the purchase or manufacture dates and models of the HWSs they allegedly purchased.  Such failure to plead a

specific representation, reliance, and causation with the requisite particularity is fatal to plaintiffs' fraud-based claims. *See*, *e.g.*, *Stokes v. Dish Network L.L.C.*, 2015 WL 4378217, at *10 (W.D. Mo. July 15, 2015) (granting motion to dismiss MMPA claim for failure to allege causation with particularity); *In re Gen. Motors Corp. Anti-Lock Brake Products Liab. Litig.*, 966 F. Supp. 1525, 1535 (E.D. Mo. 1997) *aff'd sub nom. Briehl v. Gen. Motors Corp.,* 172 F.3d 623 (8th Cir. 1999) ("[W]here the complaint 'only states a conclusion that actual reliance existed' and is void of any allegations that anyone actually read any of the misleading statements or knew of their existence, such an allegation 'fails the particularity requirement of Rule 9(b).'").

Because plaintiffs have failed to plead their fraud allegations with particularity, Counts II (common law fraud), V (Missouri Merchandising Practices Act), VIII (California Unfair Competition Law), IX (California False Advertising Law); X (California Consumer Legal Remedies Act); XII (Hawaii Unfair and Deceptive Trade Practices Act); XIII (Illinois Consumer Fraud Act); XV (Nevada Deceptive Trade Practices Act); XVI (Colorado Consumer Protection Act); XVII (Arizona Consumer Fraud Act); XVIII (Arkansas Deceptive Trade Practices Act); and XIX (Michigan Consumer Protect Act) should all be dismissed.

## V.  PLAINTIFFS' STRICT LIABILITY CLAIMS ARE BARRED BY THE ECONOMIC LOSS DOCTRINE.

Plaintiffs' claim for strict product liability (Count VI) fails because plaintiffs do not allege any harm other than the alleged defects in the products they purchased. "Under Missouri law remedies for economic loss sustained by reason of damage to or defects in products sold are limited to those under the warranty provisions of the Uniform Commercial Code." *Wilbur Waggoner Equip. & Excavating Co. v. Clark Equip. Co.*, 668 S.W.2d 601, 602 (Mo. Ct. App. 1984). Indeed, Missouri law denies "recovery on a theory of strict liability in tort, as a matter of

policy, where the only damage is to the product sold." *Sharp Bros. Contracting Co. v. Am. Hoist & Derrick Co.*, 703 S.W.2d 901, 903 (Mo. 1986) (en banc).

Not a single plaintiff has alleged that one of their EOTech sights actually manifested a defect, let alone caused harm to any plaintiff other than economic loss. While plaintiffs assert—in an apparent attempt to avoid the economic loss rule—that their sights were "unreasonably dangerous for use . . . on a weapon maintained in whole or part for personal defense," (Am. Compl. ¶ 257), that assertion is both insufficient to plead actual non-economic harm and unsupported by any factual allegations in plaintiffs' Amended Complaint. Such speculative harm, without more, cannot constitute a sufficient injury because no actual or experienced defect has been pled, and plaintiffs' alleged risk of harm is too remote. *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) ("[W]e have repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient.") (citations omitted and italics in original); *U.S. Hotel & Resort Mgmt., Inc. v. Onity, Inc.*, No. 13-cv-1499, 2014 WL 3748639, at *4 (D. Minn. July 30, 2014) ("Plaintiffs have incurred no present injury . . . their purported future injury—an actual unauthorized entry—is too speculative and attenuated to satisfy the 'certainly impending' standard of 'imminence,' largely because it could occur only if third parties engaged in criminal conduct[.]"). Plaintiffs' allegations of "unreasonable danger" relating to hypothetical self-defense scenarios are thus insufficient as a matter of law.

In addition, far from being "certainly impending," plaintiffs' claimed risk of danger from use of their sights in personal defense is implausible and unsupported by the facts as pled. Plaintiffs do not allege that EOTech's sights are used in connection with firearms maintained for self-defense or personal safety. (Am. Compl. ¶ 52 ("EOTech's holographic weapon sight

13

technology is used in a variety of weapon sighting/targeting platforms, including products for individual-user weapons (*e.g.*, **rifles, grenade launchers**), crew-served weapons, such as **heavy machine guns**, and heads-up displays used in **aircraft and other vehicles**.") (emphasis added).). Given the nature of the product at issue, it belies common sense that any plaintiff purchased their sight for purposes of self-defense, and this renders the alleged risk-of-future-personal-injury claim implausible. "Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.[3]

## VI. PLAINTIFFS HAVE NOT ALLEGED THAT THEIR SIGHTS HAVE MANIFESTED ANY DEFECT.

Plaintiffs make no allegations at all regarding their own sights other than that "Plaintiffs each purchased an EOTech optical sight." (Am. Compl. ¶ 41.) Indeed, not once in the more than 500 paragraphs in their Amended Complaint do plaintiffs allege that any of their own EOTech sights **actually manifested** any alleged defect. To the contrary, plaintiffs' allegations recognize that not all EOTech sights will manifest each of the defects alleged by plaintiffs. (*See, e.g.*, *id.* ¶¶ 143-147 (noting that a "cold weather distortion fix" was made to EOTech sights in the spring of 2008).) Plaintiffs' Amended Complaint, in fact, excludes the possibility that plaintiffs had any manifest defect with their sights, alleging that they "could not reasonably have discovered that their optical sights were defective until [EOTech] settled the False Claims Act Suit with the United States on November 25, 2015." (*Id.* ¶ 197.)

The allegation that plaintiffs purchased a product from a product line that may contain a defect is insufficient to state a products-related claim under any legal theory that requires pleading of damages, and "[c]ourts [are] particularly vigilant in requiring allegations of injury or

---

[3] In addition, even if some putative class purchaser could allege specific facts showing that he or she purchased the sights for personal defense, that is the type of individual fact question that is never appropriate for class treatment; indeed, it reinforces the importance of plaintiffs' failure to make any claim under the warranty.

14

damages in products liability cases." *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 627, 628 (8th Cir. 1999) (affirming dismissal of claims for breach of warranty, fraud, and violation of state consumer protection statutes and stating that "[w]here, as in this case, a product performs satisfactorily and never exhibits an alleged defect, no cause of action lies"); *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 503 (8th Cir. 2009) ("It is not enough to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that their product ***actually exhibited*** the alleged defect.") (emphasis added).[4]  Furthermore, because plaintiffs received a product which performed as expected with no manifest defects, Counts III and IV for unjust enrichment and payment by mistake of fact necessarily fail.  *Am. Standard Ins. Co. of Wisconsin v. Bracht*, 103 S.W.3d 281, 293 (Mo. Ct. App. 2003) ("There can be no unjust enrichment if the parties receive what they intended to obtain.").  Because plaintiffs have failed to allege any manifested defect in their sight—and thus any cognizable damages—their Amended Complaint should be dismissed in its entirety.

## CONCLUSION

For the foregoing reasons, EOTech respectfully requests the Court dismiss all Counts of Plaintiffs' Amended Complaint with prejudice.

---

[4]    To the extent plaintiffs argue that they have suffered "benefit of the bargain" damages as a basis for injury, such a claim fails in circumstances like these where the alleged defect does not uniformly affect all customers in the same manner.  *See Webb v. Carter's Inc.*, 272 F.R.D. 489, 499 (C.D. Cal. 2011) (granting motion to dismiss because "the alleged defect here does not affect all consumers . . . [and thus does] not to amount to an injury supporting standing[.]"); *see also In re BPA*, 687 F. Supp. 2d at 911 (allowing "benefit of the bargain" injury for failure to disclose presence of chemical in plastic products because there was no dispute that the products contained the chemical).  Furthermore, such a theory of recovery is premised on contract-law principles and plaintiffs have alleged no contract or contractual privity with L-3. *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 320-21 (5th Cir. 2002) ("The wrongs [plaintiffs] allege—failure to warn and sale of a defective product—are products liability claims.  Yet, the damages they assert—benefit of the bargain, out of pocket expenditures—are contract law damages.  The plaintiffs apparently believe that if they keep oscillating between tort and contract law claims, they can obscure the fact that they have asserted no concrete injury.  Such artful pleading, however, is not enough to create an injury in fact.").

DATED: February 8, 2016

Respectfully submitted,

/s/ J. Andrew Langan

Joe Rebein, #35071
David B. Dwerlkotte, #62864
SHOOK HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

Richard C. Godfrey, P.C. (admitted *pro hac vice*)
J. Andrew Langan, P.C. (admitted *pro hac vice*)
Kristopher S. Ritter (admitted *pro hac vice*)
Tim Pickert (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for Defendant L-3 Communications Corp.*

16

## CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2016, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF system, which will send notifications of such filing to the CM/ECF participants registered to receive service in this matter.

/s/ *J. Andrew Langan*

*Attorney for Defendant*