## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

**ANDREW TYLER FOSTER, ET AL.**
**individually on behalf of all others similarly**
**situated**

Plaintiffs,

vs.

Case No. 6:15-cv-03519-BCW

**L-3 COMMUNICATIONS EOTECH INC, et**
**al.**

Defendants.

## PLAINTIFFS' MOTION FOR APPOINTMENT OF INTERIM CLASS COUNSEL AND SUGGESTIONS IN SUPPORT

Pursuant to Rule 23(g)(3) of the Federal Rules of Civil Procedure, Plaintiffs, through

counsel, respectfully move this court to appoint Craig R. Heidemann and Nathan A. Duncan of

the law firm of Douglas, Haun & Heidemann, P.C. as interim lead class counsel for Plaintiffs and

the putative class. Plaintiffs' counsel meets the criteria for appointment as interim class counsel.

Plaintiffs' counsel conducted extensive work investigating and identifying the claims against

Defendants. Counsel also has extensive experience litigating class actions and possesses the

requisite knowledge to prosecute this action. Plaintiffs' counsel also has the necessary resources

to efficiently and expeditiously represent the putative class. Plaintiffs provide the memorandum

below and affidavits signed by Craig R. Heidemann and Nathan A. Duncan (attached as Exhibits

1 and 2), proposed interim class counsel, in support of their Rule 23(g) motion.

# Table of Contents

INTRODUCTION ...................................................................................................................... 3

TABLE OF CONTENTS ........................................................................................................... 2

TABLE OF AUTHORITIES ...................................................................................................... 2

FACTUAL SUMMARY .............................................................................................................. 3

PROCEDURAL SUMMARY ..................................................................................................... 7

ARGUMENT ............................................................................................................................. 9

RULE 23(G)(3) AND THE NEED FOR INTERIM CLASS COUNSEL ...................................... 9

THE STANDARD FOR APPOINTING INTERIM CLASS COUNSEL ..................................... 11

THE COURT SHOULD APPOINT PLAINTIFFS' COUNSEL AS INTERIM CLASS COUNSEL ...................... 12

Plaintiffs' Counsel has Performed Extensive Work Identifying and Investigating Claims ................ 13

Plaintiffs' Counsel is Experienced in Handling Class Actions and Other Complex Litigation ........... 16

Plaintiffs' Counsel has Extensive Knowledge of the Applicable Law ........................................ 19

Plaintiffs Counsel has Committed the Necessary Resources to Prosecuting this Action .................... 20

CONCLUSION ....................................................................................................................... 20

# Table of Authorities

## Cases

Crocker v. KV Pharm. Co., 4:09-cv-198-CEJ, 2009 WL 1297684, at *1 (E.D.Mo. May 7, 2009) ................................................................................................................................. 11

In re Air Cargo Shipping Servs. Antitrust Litigation, 240 F.R.D. 56, 57 (E.D.N.Y. 2006) ......... 12

Lyons v. CoxCom, Inc., 08-CV-02047-H(CAB), 2009 WL 6607949, at *1-2 (S.D. Cal. July 6, 2009) ........................................................................................................................ 10

Roe v. Arch Coal, Inc., 4:15-CV-910 and 4:15-CV-1026, 2015 WL 6702287, at *2 (E.D. Mo. Nov., 2, 2015) ........................................................................................................ 11, 12

S.E. Missouri Hosp. v. C.R. Brand, Inc., 1:07CV0031TCM, 2007 WL 4191978, at *1-2 (E.D. Mo. Nov. 21, 2007) ........................................................................................................ 10

Walker v. Discover Fin. Services, 10-CV-6994, 2011 WL 2160889, at *3 (N.D. Ill. May 26, 2011) ........................................................................................................................ 12

Case 6:15-cv-03519-BCW   Document 45   Filed 02/24/16   Page 2 of 21

**Rules**

Fed. R. Civ. Pro. 23(c)(1)(A) .................................................................................. 14

Fed. R. Civ. Pro. 23(g), Advisory Committee Notes on 2003 Amendment ................................ 12

Fed. R. Civ. Pro. 23(g)(1)(A) .................................................................................. 12

Fed. R. Civ. Pro. 23(g)(1)(A)(iii) ............................................................................. 19

Fed. R. Civ. Pro. 23(g)(3). ...................................................................................... 9

<u>See</u>, Fed. R. Civ. Pro. 23, Advisory Committee Notes on 2003 Amendments ........................... 10

**Treatises**

Manual for Complex Litigation, Fourth, § 10.22 (2004) ............................................... 10

Manual for Complex Litigation, Fourth, § 21.11 (2004) ............................................... 10

Manual for Complex Litigation, Fourth, § 21.271 (2004) ............................................. 12

# Introduction

Plaintiffs recently filed suit against Defendants L-3 Communications EOTech, Inc. and L-3 Communications Corp. for violations of the Magnuson-Moss Warranty Act (15 U.S.C. § 2301, et seq.), fraud, unjust enrichment, and violations of various state consumer protection statutes. These claims arose out of the deceptive practices used by Defendants in connection with the marketing and sale of holographic weapon sights. Plaintiffs have already sought certification of a class action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, but now seek the appointment of interim class counsel under Rule 23(g)(3). For the reasons set forth below, the Court should sustain Plaintiffs' motion.

# Factual Summary

Plaintiffs' class action against Defendants arises out of Defendants' fraudulent marketing of holographic weapon sights ("HWS"). For years, Defendants marketed and sold EOTech sights to consumers touting the sights' ability to function in extreme temperatures, to withstand the

effects of weather and humidity, and to be parallax free[1]. Specifically, Defendants made the following misrepresentations to consumers (among others):

- In its product marketing brochures, EOTech represented, "Extreme Durability – Built to take it: The HWS has been designed and tested to provide consistent, reliable performance even in the most hostile operational environments. The HWS is Waterproof (submersible), fogproof, shockproof, and withstands extreme temperature variations."

- "No Reticle Wash-Out: The HWS's 30 brightness settings ensure the holographic reticle can be instantly viewed in ALL types of lighting environments, cluttered back- grounds and target colors. The HWS delivers an impressive 10,000,000:1 bright to low reticle contrast ratio … to ensure the reticle is always clearly viewable."

- In the HDS Specifications, it also said that the optics were "100% parallax free".

- EO Tech's brochure specified the temperature operating rage to be: "-40 to 150 F (using AA lithiums); -20 to 150 F (all other battery choices)"

Since 2005, Defendants also leveraged their contracts with United States government agencies, including the Department of Defense, to sell millions of dollars' worth of sights to the public. For example, EOTech advertised on its website that its Model 553 was "created in conjunction with the U.S. Special Operations Command" and is "designed to be the most rugged and battle-proven holographic weapon sight ever developed. It also offers features required by U.S. Special Forces to meet the stringent requirements of our elite fighting forces." EOTech advertises that its Model 552 is "the sight of choice by military units like Stryker Brigade, 10th Mountain, and 3rd Infantry" and that its Model EXPS3 was "chosen by the U.S. Special

---

[1] Parallax is a displacement or difference in the apparent position of an object viewed along two different lines of sight, and is measured by the angle or semi-angle of inclination between those two lines. https://en.wikipedia.org/wiki/Parallax

Operations Command . . . as their primary optic for close-quarter engagements." In the company profile section of its website, EOTech also advertised "USSOCOM awarded EOTech a contract in 2005. Special Operations and the Marine Corps chose the HWS as their standard close combat optic. Elite Army units including Stryker Brigade and the 101st Airborne also made the HWS their optic of choice."

Defendants successfully covered up their misrepresentations until a federal investigation led to a lawsuit against Defendants by the United States government. The U.S. filed its lawsuit on November 24, 2015 alleging that Defendants knew about defects in the HWS sold to the government and used by members of the armed forces and other government agencies. The defects described in the government's suit include:

- **Thermal Drift** – After zeroing the HWS at or near ambient temperature (73°F), the zero position will shift during operating temperature changes. The HWS have the potential to shift approximately +/- 4 Minutes of Angle (MOA) at -40°F and 122°F. Due to thermal drift, the sight may not return to zero. The systems have the potential of approximately a +/- 2 MOA zero shift upon return to ambient (73°F) after being exposed to any temperature between -40°F and 122°F temperatures.

- **Fading Reticle** – The complete 65 MOA ring with 1 MOA dot reticle may not be visible to the operator throughout the entire viewing window of the optic. The HWS's age and environmental exposure are factors that accelerate reticle dimming. Impact to operators is the holographic reticle may not be visible in all firing positions.

- **Parallax Error** – Parallax is an apparent change in the position of an object resulting from a change in position of the observer. The 65 MOA ring with 1 MOA dot reticle point of aim will appear to move in relation to your target during off-axis firing positions

where maintaining cheek-weld and sight picture is not feasible. The HWS has the potential of approximately 4 Minute of Angle (MOA) parallax error at 70°F and approximately 6 MOA parallax error at 5°F. Impact to the operators is the point of aim / point of impact will be affected by a MOA parallax error, in off-axis firing positions at all temperatures.

On November 25, 2015, <u>the day after the U.S. filed suit</u>, the Court entered a Stipulation and Order of Settlement and Dismissal of the action in which Defendants admitted to making fraudulent misrepresentations to the United States Government that are identical to those alleged in the present action. Defendants admitted to knowing about defects in the sights but failed to disclose those defects. Defendant admitted the following important facts in connection with the government suit:

- In 2006, EOTech became aware that its sights failed to maintain zero with temperature changes, a condition it referred to as "thermal drift".

- EOTech's CEO admits he knew that EOTech's sights were experiencing increasing parallax errors in cold temperatures as early as March, 2007.

- In early 2007, EOTech became aware that its sights were experiencing increasing parallax error in cold temperature. At 32° F, the parallax error was 12 MOA, i.e., 12 inches for every hundred yards, when measured from outside edge to outside edge of the sight; and at 5° F, the error was more than 20 MOA, from outside edge to outside edge.

- In February 2009, EOTech became aware, based on testing a sample of sights, that moisture was entering its sights. When moisture enters a sight, it can cause a dimming of the reticle. Reticle dimming can occur more quickly in humid environments. An optic's reticle is necessary to allow the user to acquire a target.

- EOTech has been part of the L3 "Warrior Systems" division since 2011.

- Beginning in 2011, EOTech conducted testing of sights sold to Crane and found thermal drift of 2 to 6 MOA over temperature variations for its carbine sights.

- EOTech continued to sell its sights to the government and the public without disclosing its findings.

Defendants agreed to pay the government $25.6 million to settle the case with the government. However, to date, Defendants have not issued any statement to its civilian customers who purchased defective HWS.


## Procedural Summary

Based on Defendants' public admissions in the government's lawsuit, and based upon the damages suffered by Plaintiffs that were identical to the damages sustained by the government, Plaintiffs filed suit against Defendants. Plaintiffs have already taken significant action in the prosecution of their claims against Defendants even though Defendants have not yet filed their answers or other responsive pleading. As detailed below, the progress already made in the case supports Plaintiffs motion for appointment of interim class counsel.

Plaintiff, Andrew Tyler Foster, filed suit against Defendants in this court on December 4, 2015. In his complaint, Foster pleaded a number of causes of action. He brought his claims individually and on behalf of a class described as "All persons who bought a class optical sight in the United States, Puerto Rico or outlying territories." He also filed claims on behalf of a Missouri subclass defined as "All persons who bought a class optical sight in the State of Missouri for personal, family or household purposes." The counts of the original complaint included actions for (1) violation of the Magnuson Moss Warranty Act (15 U.S.C. § 2301, et seq.); (2) fraud; (3) payment by mistake of fact; (4) unjust enrichment; (5) violation of the

Missouri Merchandising Practices Act (Mo. Rev. Stat. § 407.010, et seq.); (6) strict products liability; and (7) breach of warranty for a particular purpose. Plaintiff brought counts 1-4 on behalf of the nationwide class and counts 5-7 on behalf of the Missouri subclass.

The Court issued summons for Defendants on December 7, 2015. Special process served both Defendants on December 15, 2015. Defendants must file their answers or other responsive pleading on or before January 5, 2016.

In addition to filing his complaint, Plaintiff Foster also filed a motion for class certification on December 16, 2015. In the motion, Foster seeks an order of this court under Rules 23(b)(2) or 23(b)(3) of Federal Rules of Civil Procedure certifying this action as a class action. The motion and incorporated suggestions pray for the certification of the nationwide class and Missouri subclass defined in Plaintiff's original complaint and request the appointment of Craig R. Heidemann and Nathan A. Duncan of Douglas, Haun & Heidemann, P.C. as class counsel. Plaintiff served copies of his motion for class certification and suggestions in support on Defendants through their registered agents. Defendants have not yet filed any response.

Because Defendants had not yet filed an answer to the original complaint, Plaintiff filed his First Amended Complaint on December 22, 2015 as authorized by Rule 15(a)(1). Plaintiff's First Amended Complaint joined twelve additional plaintiffs who seek appointment as class representatives and bring state consumer protection claims for putative subclasses from California, Michigan, Hawaii, Texas, Pennsylvania, Arizona, Illinois, Nevada, Colorado, and Arkansas[2]. Defendants received copies of Plaintiffs' First Amended Complaint through their registered agents. To date, Defendants have not filed answers, have not had any attorneys enter their appearances, nor contacted Plaintiffs' counsel.

---

[2] One of the twelve plaintiffs intends to bring a claim pursuant to the Massachusetts consumer protection laws once he has complied with the statute's demand provisions.

There is also currently pending a similar class action in the United States District Court of Oregon (<u>Chen v. L-3 Communications EOTech, Inc.</u>, 1:15-cv-2308). The Oregon plaintiff filed his case against L-3 Communication EOTech, Inc. on December 10, 2015. Plaintiff served Defendant on December 17, 2105 and filed a motion for appointment of interim counsel on December 23, 2015. The Oregon plaintiff has not filed a motion for class certification.

The Oregon complaint seeks certification of a nationwide class and an Oregon subclass and brings claims for violation of the Magnuson Moss Warranty Act, violation of the Oregon Unlawful Trade Practices Act, intentional misrepresentation, fraudulent concealment/nondisclosure, and quantum meruit. Also, Plaintiff attempts to plead placeholder class claims for the violation of a number of states' consumer protection laws. However, there are no proposed class representatives for these claims. EOTech's must respond to the Oregon complaint on or before January 7, 2016. EOTech has not yet entered an appearance or filed a responsive pleading in the Oregon case.

# Argument

Rule 23(g)(3) of the Federal Rules of Civil Procedure provides for the appointment of interim class counsel before the Court certifies a class action under Rule 23(b) under certain circumstances. Appointment of interim class counsel is proper in this case due to the similar pending actions in this court and in Oregon. Furthermore, the Court should appoint Plaintiffs' counsel in this case, Craig R. Heidemann and Nathan A. Duncan, as interim class counsel to protect the proposed classes' interests during pre-certification proceedings.

## Rule 23(g)(3) and the Need for Interim Class Counsel

Rule 23 of the Federal Rules of Civil Procedure governs class claims in district courts.

While the appointment of class counsel traditionally occurs at the time of class certification, Rule

23 empowers courts to appoint interim class counsel. Rule 23(g)(3) states, "The court may

designate interim counsel to act on behalf of a putative class before determining whether to

certify the action as a class action." Fed. R. Civ. Pro. 23(g)(3). This provision became part of the

Rules in 2003. <u>See</u>, Fed. R. Civ. Pro. 23, Advisory Committee Notes on 2003 Amendments. Rule

23(g)(3) aids in clarifying the role of counsel where there are similar actions pending in the same

or different courts. Designation of interim counsel clarifies responsibility for protecting the

interests of the class during precertification activities...." Manual for Complex Litigation, Fourth,

§ 21.11 (2004). These precertification activities may include making and responding to motions,

conducting any necessary discovery, moving for class certification, and negotiating

settlement. <u>Lyons v. CoxCom, Inc.</u>, 08-CV-02047-H (CAB), 2009 WL 6607949, at *1-2 (S.D.

Cal. July 6, 2009).

      Interim class counsel is not required in all class actions; however, "[t]he appointment of

interim class counsel is discretionary by the Court and is particularly suited to complex actions."

<u>S.E. Missouri Hosp. v. C.R. Brand, Inc.</u>, 1:07CV0031TCM, 2007 WL 4191978, at *1-2 (E.D.

Mo. Nov. 21, 2007) (internal citations omitted). Courts may appoint interim class counsel where

"there are a number of overlapping, duplicative, or competing suits pending in other courts, and

some or all of those suits may be consolidated." Manual for Complex Litigation, Fourth, § 21.11

(2004). The appointment of interim class counsel provides substantial benefit to the efficient

litigation of complex class actions. The drafters of the <u>Manual for Complex Litigation</u>

recognized this reality writing:

      Complex litigation often involves numerous parties with common or similar

interests but separate counsel. Traditional procedures in which all papers and documents are served on all attorneys, and each attorney files motions, presents arguments, and examines witnesses, may waste time and money, confuse and misdirect the litigation, and burden the court unnecessarily. Instituting special procedures for coordination of counsel early in the litigation will help to avoid these problems. Manual for Complex Litigation, Fourth, § 10.22 (2004).

Here, the Court should appoint interim class counsel to perform those precertification activities necessary to protect the putative class's interests. As stated above, there is presently a case pending in the United States District Court of Oregon in which the plaintiff has filed class claims that are nearly identical to those brought by Plaintiffs in the present action. Both cases seek relief from L-3 Communications EOTech, Inc. Both cases contain counts for violations of the Magnuson Moss Warranty Act, fraud, equitable claims (unjust enrichment and quantum meruit), and violations of various states' consumer protection statutes. Because these suits are pending in different judicial districts, it is possible that the Judicial Panel on Multidistrict Litigation may ultimately consolidate the actions into multidistrict litigation. The class definitions in both cases overlap such that appointment of interim class counsel will allow for the efficient performance of precertification efforts.

## The Standard for Appointing Interim Class Counsel

In determining whether attorneys are fit to serve as interim class counsel, Courts consider a number of factors. Rule 23(g)(3) contains no criteria for selecting interim class counsel. <u>Crocker v. KV Pharm. Co.</u>, 4:09-cv-198-CEJ, 2009 WL 1297684, at *1 (E.D.Mo. May 7, 2009). However, courts apply the criteria outlined in Rule 23(g)(1)(A) to evaluate counsel's

ability to serve as interim class counsel. See, Roe v. Arch Coal, Inc., 4:15-CV-910 and 4:15-CV-1026, 2015 WL 6702287, at *2 (E.D. Mo. Nov., 2, 2015) (When appointing interim class counsel, courts generally look to the same factors used in determining the adequacy of class counsel under Rule 23(g)(1)(A)); In re Air Cargo Shipping Servs. Antitrust Litigation, 240 F.R.D. 56, 57 (E.D.N.Y. 2006) (applying the factors for appointment of class counsel to the appointment of interim class counsel).

Applying Rule 23(g)(1)(A), there are four factors courts considering in choosing interim class counsel: (1) (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. Pro. 23(g)(1)(A); see also, Roe, 2015 WL 6702287, at *2. The fourth factor may include counsel's ability to coordinate other pending state and federal actions involving the same or similar subject matter. Manual for Complex Litigation, Fourth, § 21.271 (2004). Courts also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Id. (quoting Fed. R. Civ. Pro. 23(g)(1)(B)). For example, courts have considered who filed the class action complaint first. See e.g., Walker v. Discover Fin. Services, 10-CV-6994, 2011 WL 2160889, at *3 (N.D. Ill. May 26, 2011). "In evaluating prospective class counsel, the court should weigh all pertinent factors. No single factor should necessarily be determinative in a given case." Fed. R. Civ. Pro. 23(g), Advisory Committee Notes on 2003 Amendment.


**The Court Should Appoint Plaintiffs' Counsel as Interim Class Counsel**

The Court should appoint Plaintiff's counsel as interim class counsel based upon the application of the Rule 23(g) factors set forth above.

## **Plaintiffs' Counsel has Performed Extensive Work Identifying and Investigating Claims**

Counsel's efforts to identify, investigate, and substantiate claims against Defendants supports their appointment as interim class counsel. Since news of the settlement in U.S. v. L-3 Communications EOTech, Inc., et al., counsel has labored diligently to determine whether consumers had similar claims against Defendants. Upon determining the viability of consumer claims, counsel performed research into possible claims, prepared a complaint, and began gathering evidence to support those claims. Plaintiffs' counsel has performed the following work in connection with this action:

1. Plaintiffs' Counsel has been in contact with large numbers of potential class members by telephone, email, and other means to discuss their experiences with the defective holographic optical sights. To date, counsel has been in contact with 260 potential class members. Counsel has heard from putative class members in 40 of the 50 states. Twenty-nine of these individuals have signed attorney client contracts with Plaintiffs' counsel seeking individual representation. These clients represent 19 different states. As evidenced by Plaintiffs' First Amended Petition, which added ten state consumer protection actions and subclasses to the case, Counsel's communication with the class members puts Counsel in a strong position to identify adequate, typical class representatives from each state and to represent class members from across the country. Counsel will continue to file claims for clients with similar claims in the future.

   One large component of Counsel's communication with putative class members has been the website Counsel launched within days of the U.S. v. L-3 Communications settlement. This website allows affected consumers to communicate directly with counsel and has positioned Plaintiffs' Counsel as <u>the</u> firm the putative class regards as the leading firm

investigating consumer claims. There have been over 21,000 separate visits to counsel's informational website since December 1, 2015, the date the site went live, averaging approximately 370 individual visits per day.

2. Plaintiffs' Counsel has been in communication with a key witness who has direct evidence of Defendants' fraudulent conduct. This witness testified for the government in the federal case. This witness contacted Plaintiffs' Counsel and voluntarily provided essential information. Plaintiffs' Counsel has conducted a recorded interview of this key witness's recorded to preserve his statements about the subject matter of this lawsuit and to assist in further factual development of the class claims.

3. The stage of pleadings shows the work Counsel has already invested. Counsel filed the **<u>first</u>** consumer complaint against Defendants on December 4, 2015. The initial complaint contains extensive, specific factual details supporting each of Plaintiff's claims. The level of detail in the initial complaint is indicative of the work performed by Plaintiffs' Counsel. In drafting the suit, Counsel conducted extensive research into the products offered by Defendants to the military and their similarity to those marketed to civilian consumers; into Defendants' warranty offerings since 2006; and into representations Defendant made about the quality of their holographic weapons sights.

After filing suit, Counsel then promptly served Defendants with process. Because of the speed with which Plaintiffs accomplished service of process, Defendants' answer is due on or before January 5, 2016—prior to the deadline in the Oregon case referenced above. The day after serving Defendants, Plaintiffs filed their Rule 23(c) motion for class certification[3]. Less than one week after filing the motion for class certification, Plaintiffs

---

[3] Plaintiffs filed their motion for class certification at such an early stage to comply with the

filed their First Amended Complaint joining new class representative plaintiffs and bringing new state law claims against Defendants. To successfully plead the new claims, Counsel conducted thorough and detailed research into the each of the fifty state's consumer protection laws to ensure that the amended complaint stated a claim and sought appropriate relief.

4. At the outset of the case, Plaintiffs' Counsel also sent Defendants lengthy correspondence directing Defendants to preserve all evidence (including electronically stored information) related to this case. Defendants received these letters through their registered agents on or about December 21, 2015.

5. Counsel has also submitted a request to the United States Attorney's office for a complete copy of their file used in the case against Defendants. Plaintiffs submitted this request pursuant to the Freedom of Information Act (5 U.S.C. § 552) and have been working with the U.S. Attorney's office to compile information that will be useful in prosecuting Plaintiffs' claims against Defendants.

6. Counsel has also coordinated testing of exemplar holographic optical sights that are the subject of this litigation to verify and document the problems outlined in Plaintiffs' complaint.

7. Counsel has obtained the "new warranty" cards wherein Defendants have stated that the sights must be rezeroed if used at a temperature other than the exact temperature at which they were initially sighted in.

The amount of work performed by Plaintiffs' Counsel consisting of nearly a thousand hours

---

mandate that the Court determine whether to certify the action as a class action "At an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. Pro. 23(c)(1)(A).

Case 6:15-cv-03519-BCW   Document 45   Filed 02/24/16   Page 15 of 21

of combined attorney time on the EOTech Project Team (four attorneys and three dedicated paralegals) in such a short period of time is indicative of the skill with which Counsel will represent the interests of the putative class. As such, Plaintiffs' Counsel satisfies the first 23(g)(1)(A) factor.

### Plaintiffs' Counsel is Experienced in Handling Class Actions and Other Complex Litigation

Plaintiffs' counsel has broad experience in class action and mass tort litigation. The experience will ensure that Counsel will effectively represent the class as interim class counsel. Counsel's law firm, Douglas, Haun & Heidemann, P.C. (DHH) is a well-established firm with a broad range of experience and knowledge. Established in 1912, DHH is currently staffed with thirteen attorneys and fifteen support staff operating out of two offices. DHH attorneys are licensed to practice in Missouri, Illinois, Kansas, and Arkansas and before the 8th Circuit Court of Appeals and the United States Supreme Court In addition, counsel has practiced across the country in national class actions and mass torts. The DHH litigation department has worked extensively in consumer class action cases and complex litigation and has achieved success for its clients against large corporations, government institutions, and banks. Courts have appointed Plaintiffs' class counsel in a number of important cases:

- <u>Wilhoite, et al. v. Missouri Department of Social Services</u> (U.S. District Court, Western District of Missouri, Case No. 2:10-cv-03026)—The Court appointed DHH lead class counsel in this class action, which involved the State of Missouri's violation of federal law governing the use of liens to collect reimbursement for Medicaid benefits paid to individuals who received compensation from third parties for personal injury claims. After extensive litigation, Plaintiffs' counsel secured a settlement valued at approximately $25 million for thousands of Missouri Medicaid recipients. Plaintiffs'

counsel did not negotiate any payment of attorney fees until the defendant agreed to the class settlement amount. Defendant paid class counsel's attorney fees separately from amounts paid to class members.

- Sherell v. Great Southern Bank (Circuit Court of Greene County, Missouri, Case No. 1131-CV02280)—The Court appointed DHH lead class counsel in this case against Great Southern bank. Great Southern Bank has 114 offices in eight states with $4.1 billion in assets. The class claims involved Great Southern's violation of the U.C.C. Counsel secured a settlement worth more than $5 million for the class. Again, Plaintiffs' counsel did not negotiate any payment of attorney fees until the defendant agreed to the class settlement amount. Defendant paid class counsel's attorney fees separately from amounts paid to class members.

- Claxton v. Kum & Go, L.C. (U.S. District Court, Western District of Missouri Case No. 6:14-cv-03385)—Plaintiffs' counsel filed suit on behalf of a class of individuals who purchased contaminated fuel. Plaintiffs' counsel secured a settlement in which the Defendant agreed to compensate class members for the total amount of their actual damages. Defendant paid class counsel's attorney fees separately from amounts paid to class members.

- Johnson, et al. v. Brazoria County, Texas, et al. (U.S. District Court, Western District of Missouri Case No. 2:99-cv-04021)—This was a class action prisoner § 1983 lawsuit pending in the U.S. District Court for the Western District of Missouri. Plaintiffs were Missouri prisoners who were transferred from Missouri state-penal institutions to jails in Texas pursuant to the "Texas Cell Lease Program," a contract between the Missouri Department of Corrections [DOC] and several Texas counties and a city whereby the

Texas entities agreed to house and supervise the Missouri prisoners in exchange for money. The Texas Cell Lease Program was operational in 1995 through 1997. The Court appointed Plaintiffs' Counsel, Craig R. Heidemann, as co-lead class counsel in the prisoner litigation. In that case, the Defendants paid the class $2.2 million, with attorney fees and costs paid separately.

Plaintiffs' Counsel is also currently involved in two pending mass tort cases:

- <u>In re Xarelto</u> (MDL 2592)—Plaintiffs counsel is serving as co-counsel on a number of cases pending in the Xarelto MDL. Additionally, the Court appointed Craig Heidemann and Nathan Duncan to serve on the Plaintiffs' Discovery Committee. Mr. Heidemann serves as a member of the Privilege Log Sub-committee. Mr. Duncan serves as a member of the Bayer Defendant Sub-committee.

- <u>In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation</u> (U.S. District Court, Northern District of California Case No.: 3:15-md-02672)—Plaintiffs' counsel filed one of the first Volkswagen class actions in Missouri (Hall v. Volkswagen AG, et al. 2:15-cv-04212) based on Volkswagen's fraudulent marketing and sales of vehicles equipped with the TDI engine. Counsel represents 26 individual plaintiffs. The Missouri case has been consolidated and transferred by the JPML to the Northern District of California for further proceedings.

- Plaintiffs' Counsel was also involved in the Vioxx litigation and settlement (MDL 1657). Counsel represented 114 Plaintiffs and was able to recover approximately $3.2 million for Counsel's clients in this MDL.

Plaintiffs' counsel has additional class action suits pending in which Counsel expects to be appointed class counsel as follows:

- <u>Heidemann v. DJ Holdings of Springfield, et al.</u>, Circuit Court of Greene County, Missouri Case No. 1531-CC00284—This class action involves claims brought under Missouri's consumer protection law (Mo. Rev. Stat. § 407.010, et seq.) for misrepresentations made by a commercial gym regarding the terms and duration of membership agreements. The defendants made these misrepresentations in connection with the marketing and sale of memberships. Plaintiffs' Counsel will seek certification of a class of Missouri consumers who suffered damages as a result of the defendants' misrepresentations.

- <u>Clymer v. Branson Bank</u>, Circuit Court of Taney County, Missouri Case No. 13AF-AC000341-01—This class action seeks damages on behalf of a class of individuals who were damaged by the defendant's violation of the UCC.

In light of Counsel's significant experience litigating class actions, the Court should appoint Plaintiffs' Counsel interim class counsel.

### **Plaintiffs' Counsel has Extensive Knowledge of the Applicable Law**

Rule 23 requires that courts consider counsel's knowledge of the applicable law in evaluating whether to appoint counsel as class counsel. Fed. R. Civ. Pro. 23(g)(1)(A)(iii). Plaintiffs' Counsel's experience in the class actions and mass tort cases described above shows that they have the requisite knowledge to serve as interim class counsel in this case. Counsel has detailed knowledge of the substantive and procedural law governing complex class action cases. Furthermore, DHH has committed a large portion of its litigation department to specializing in UCC violations, violations of federal and state consumer law and standing up for consumers against large multi-jurisdictional corporations. Since January 2011, the firm has successfully represented 116 Plaintiffs in consumer related claims wherein claims for violations of federal

and/or state law were set forth.  As such, Counsel is well positioned to represent the putative class's interests until class certification.

**Plaintiffs Counsel has Committed the Necessary Resources to Prosecuting this Action**

The final factor to be considered by this court in ruling on Plaintiffs' Motion for Appointment of Interim Class Counsel is proposed Interim Class Counsel's resources committed to representing the class. As discussed above, DHH has close to thirty employees committed to representing the proposed class. DHH has committed every resource necessary to ensure that the putative class's interests are protected until the Court rules on Plaintiffs' pending motion for class certification. Plaintiffs' counsel has the human resources, the financial resources, and the time required to see that the proposed class receives the compensation to which it is entitled. While it is impossible to precisely gauge the actual expenses that may be incurred in the prosecution of this action, the out of pocket expenses may be upwards of $750,000.  DHH has the present ability to finance the litigation even if the expenses were double this estimated amount.  As such, Plaintiffs' Counsel satisfies the fourth factor in Rule 23(g)(1)(A).

# Conclusion

In light of the foregoing, Plaintiffs respectfully request that the Court appoint Craig R. Heidemann and Nathan A. Duncan of the law firm of Douglas, Haun & Heidemann, P.C. as interim class counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure. Counsel has performed and continues to perform extensive work investigating and substantiating Plaintiffs' claims against Defendants. Furthermore, counsel has extensive experience in litigating class actions and other complex litigation. Counsel is well qualified to handle the rigors of the pending litigation against Defendants as counsel has the requisite experience and knowledge of the applicable law. Finally, Plaintiffs and their attorneys have committed and will continue to

commit the necessary resources to represent the class.

      **WHEREFORE**, Plaintiffs move this court for an order appointing Craig R. Heidemann and Nathan A. Duncan of the law firm of Douglas, Haun & Heidemann, P.C. as interim class counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure and for such other relief as the Court deems just and proper.

                    **DOUGLAS, HAUN & HEIDEMANN, PC**
                    1910 E. Battlefield Rd., Suite A
                    Springfield, MO 65804
                    Phone: (417) 326-5261
                    Fax: (417) 326-2845
                    craig@dhhlawfirm.com
                    nathan@dhhlawfirm.com

                    */s/Nathan A. Duncan*
              By_____
                    Craig R. Heidemann
                    Missouri Bar No. 42778
                    Nathan A. Duncan
                    Missouri Bar No. 60186
                    Attorneys for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on February 24, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and a complete copy of the foregoing instrument was served to: alangan@kirkland.com; jrebein@shb.com; rgodfrey@kirkland.com; ritterk@kirkland.com and tim.pickert@kirkland.com.

                    **DOUGLAS, HAUN & HEIDEMANN, P.C.**

                  By____*/s/ Nathan A. Duncan*_____