| | |
|---|---|
| ANDREW TYLER FOSTER, et al,<br><br>Plaintiffs,<br><br>v.<br><br>L-3 COMMUNICATIONS EOTECH, INC. et al,<br><br>Defendants | Case No. 6:15-cv-03519-BCW<br><br>Hon. Brian C. Wimes |
| JESSE ROLFES et al,<br><br>Plaintiffs,<br><br>v.<br><br>L-3 COMMUNICATIONS EOTECH, INC. et al,<br><br>Defendants | Case No. 4:16-cv-00095-BCW<br><br>Hon. Brian C. Wimes |
| JERRY CHEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>L-3 COMMUNICATIONS EOTECH, INC. et al,<br><br>Defendants | Case No. 4:16-cv-00095-BCW<br><br>Hon. Brian C. Wimes |

| | |
|---|---|
| CLAY PITTMAN, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>              v.<br><br>L-3 COMMUNICATIONS EOTECH, INC. et al,<br><br>    Defendants | Case No. 4:16-cv-00438-BCW<br><br><br>Hon. Brian C. Wimes |
| TIMOTHY BRAGINTON and TREVOR WEIR, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>              v.<br><br>L-3 COMMUNICATIONS EOTECH, INC. et al,<br><br>    Defendants | Case No. 4:16-cv-00439-BCW<br><br><br>Hon. Brian C. Wimes |

**SUGGESTIONS IN SUPPORT OF PLAINTIFFS' MOTION FOR APPOINTMENT OF INTERIM CLASS COUNSEL AND CONSOLIDATION**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

A.     The Court Should Appoint the Proposed Leadership Team Because Counsel Satisfy Rule 23 Criteria and the Proposed Structure Reflects Cooperation and Efficiency .......... 2

    1.     Standard for Appointment of Interim Class Counsel............................................ 2

    2.     The Proposed Leadership Team Has Devoted Substantial Time and Resources to Investigating Claims at Issue in This Litigation ................................................ 4

    3.     The Proposed Leadership Team Has Extensive Experience in Handling Class Action and Other Complex Litigation, and Has Substantial Knowledge of the Applicable Law ........................................................................................................ 6

        a.     Tim Dollar (Dollar Burns & Becker, L.C.)................................................. 6

        b.     Craig R. Heidemann (Douglas Haun & Heidemann PC) ........................... 7

        c.     Sharon S. Almonrode (The Miller Law Firm, P.C.) .................................. 9

        d.     Bonner C. Walsh (Walsh, PLLC) ............................................................ 10

        e.     Adam R. Gonnelli (Faruqi & Faruqi, LLP) .............................................. 11

    4.     The Proposed Leadership Team Will Commit Resources Necessary to Represent the Class ................................................................................................ 12

    5.     The Proposed Leadership Structure is Fair, Efficient and Ideally Suited for This Litigation ............................................................................................................. 13

B.     The Above-Captioned Cases Meet the Requirements of Fed. R. Civ. P. 42(a) for Consolidation .................................................................................................................. 14

CONCLUSION..................................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**  **Page(s)**

*Bhisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig. v. Avent Am., Inc.*,
   Case No. 08-1967-MD-W-ODS, 2011 U.S. Dist. LEXIS 2416
   (W.D. Mo. Jan. 7, 2011) ...................................................................................................4

*Crocker v. KV Pharm. Co.*,
   No. 09-CV-198 (CEJ), 2009 U.S. Dist. LEXIS 38661 (E.D. Mo. May 7, 2009) ......................3

*In re Crude Oil Commodity Futures Litig.*,
   Case No. 11 Civ. 3600 (WHP), 2012 U.S. Dist. LEXIS 23084
   (S.D.N.Y. Feb. 14, 2012) ................................................................................................13

*Deangelis v. Corzine*,
   286 F.R.D. 220 (S.D.N.Y. 2012) .....................................................................................13

*EEOC v. HBE Corp.*,
   135 F.3d 543 (8th Cir. 1998) ..........................................................................................14

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
   MDL Docket No. 1869, 2008 U.S. Dist. LEXIS 34229 (D.D.C. Apr. 28, 2008)....................13

*Southeast Mo. Hosp. v. C.R. Bard, Inc.*,
   Case No. 07cv0031 TCM, 2007 U.S. Dist. LEXIS 86392
   (E.D. Mo. Nov. 21, 2007). ................................................................................................2

**Other Authorities**

Advanced Notes Committee on 2003 Amendements ......................................................................4

Fed. R. Civ. P. 23.................................................................................................2, 3, 12, 13

Fed. R. Civ. P. 42(a) ...............................................................................................13, 14

Manual for Complex Litigation ...............................................................................................13

Moore's Federal Practice (3d ed. 2007)..........................................................................................4

Plaintiffs and their undersigned counsel respectfully move this Court for an order consolidating the above-captioned actions and appointing Interim Class Counsel.

**INTRODUCTION**

Proceedings in the above-captioned class actions were stayed by order of this Court dated April 28, 2016, pending a ruling by the Judicial Panel on Multidistrict Litigation on the transfer of the *Pittman* and *Braginton* cases from the Eastern District of Michigan. The Panel proceedings were rendered moot by the dismissal of those cases and their refiling in this District and assignment to this Court. In a status report submitted by the parties on July 21, 2016, the parties informed the Court that they had a scheduled mediation for August 12, 2016, and requested that the Court extend the stay until October 12, 2016. The stay request carved out an exception for Plaintiffs' right to move for appointment of interim class counsel.

Plaintiffs now move for an order appointing Tim Dollar of Dollar Burns & Becker, L.C. of Kansas City as Chair of an interim leadership group consisting of counsel in the five above-captioned cases. The movants have self-organized and agreed to the proposed leadership structure among themselves and know of no competing leadership applications. In addition, each member of the proposed leadership group has submitted a declaration to support their argument that the Court should find that they satisfy the requirements of Rules 23(g)(1) and 23(g)(4).[1]

In addition, as part of this application, Plaintiffs request that the Court consolidate the *Braginton* and *Pittman* actions that were refiled in this District and assigned to this Court with

---

[1] Proposed co-lead counsel stands ready to submit any additional material the Court should find necessary in writing or in person, although unlike settlement approval under Rule 23(e)(2) no hearing on this motion is required.

1

the *Foster*, *Chen*, and *Rolfes* actions that were consolidated by the Court's orders of March 18, 2016 (ECF No. 35 in the *Rolfes* action) and April 1, 2016 (ECF No. 66 in the *Foster* action).

## ARGUMENT

A. **The Court Should Appoint the Proposed Leadership Team Because Counsel Satisfy Rule 23 Criteria and the Proposed Structure Reflects Cooperation and Efficiency**

1. **Standard for Appointment of Interim Class Counsel**

Prior to determining whether a class should be certified, which often occurs many months or years after a case is filed, courts may appoint ***interim*** class counsel pursuant to Rule 23(g)(3) of the Federal Rules of Civil Procedure.[2] *See* Fed. R. Civ. P. 23(g)(3). Appointment of interim class counsel will "serve to clarify who bears the responsibility for protecting the interests of the putative class" during precertification activities. *Southeast Mo. Hosp. v. C.R. Bard, Inc*., Case No. 07cv0031 TCM, 2007 U.S. Dist. LEXIS 86392, at *5 (E.D. Mo. Nov. 21, 2007). *See also* Rule 23 Practice Commentary ("pre-certification discovery, dispositive motions, or settlement negotiations . . . may have a critical bearing on the interests of the putative class members" and often necessitate the appointment of interim class counsel).

The appointment of interim class counsel is left to the discretion of the Court. *Southeast Mo. Hosp.*, 2007 U.S. Dist. LEXIS 86392, at *4 (stating that "the appointment of interim class counsel is discretionary by the Court and is particularly suited to complex actions."). In considering the leadership appointment, the Court must consider: (i) the work counsel has done in investigating and identifying the claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted; (iii) counsel's

---

[2] Rule 23(g)(2) expressly provides for appointment of interim class counsel even when there are no competing applicants. *See* Rule 23(g)(2) ("When one applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4). If more than one adequate applicant seeks appointment, the court must appoint the applicant best able to represent the interests of the class.").

2

knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). *See Crocker v. KV Pharm. Co.*, No. 09-CV-198 (CEJ), 2009 U.S. Dist. LEXIS 38661, at *4 (E.D. Mo. May 7, 2009) (applying four factors in Rule 23(g)(1)(A) to the selection of interim class counsel).

Plaintiffs and their counsel in the above-captioned actions have organized themselves and recommend to the Court a leadership structure of Tim Dollar of Dollar Burns & Becker, L.C. as Chair of a leadership committee comprised of Mr. Dollar, Craig Heidemann of Douglas Haun & Heidemann PC, Sharon S. Almonrode of The Miller Law Firm, P.C., Bonner Walsh of Walsh, PLLC, and Adam Gonnelli of Faruqi & Faruqi, LLP (together, the "Proposed Leadership Team").

Plaintiffs believe that litigation of this case directed by the proposed leadership, with Tim Dollar as the Chair, presents an efficient and robust leadership team with the experience in high profile national litigation that maximizes the chance for a successful resolution of this case for the proposed class. The firms comprising the Proposed Leadership Team have made a significant investment into this litigation, have sufficient resources to vigorously protect the interests of the class in this litigation, and have backgrounds of success as counsel or class counsel in national consumer class actions.

The Proposed Leadership Team satisfies, and exceeds, the criteria listed in Rule 23. All five firms bring a diversity of outstanding experience and reputation both at the national and local level, all of which will benefit the proposed class and this Court's oversight of the consolidated actions. The Proposed Leadership Team has significant experience handling complex consumer class actions involving the types of claims asserted here. The Proposed

Leadership Team is also well-versed in the applicable law and statutes and possesses the resources needed to handle a complex class action such as this one.

### 2. The Proposed Leadership Team Has Devoted Substantial Time and Resources to Investigating Claims at Issue in This Litigation

In considering a motion for appointment of interim class counsel, a court must consider the work undertaken by that counsel in the case. *See* Advisory Committee Notes on 2003 amendments (stating the investigative and analytical efforts of counsel can be a significant factor under Rule 23(g)(1)(A)). A counsel who has undertaken investigatory and analytical tasks prior to drafting the complaint is better able to represent the class than one who did not. *See* Moore's Federal Practice § 23.120(3)(a) (3d ed. 2007). *See also Bhisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig. v. Avent Am., Inc.*, Case No. 08-1967-MD-W-ODS, 2011 U.S. Dist. LEXIS 2416, at *47 (W.D. Mo. Jan. 7, 2011) (considering, in part, the "abundant work" proposed co-lead counsel did in investigating and pursuing potential claims in appointing class counsel). To date, the Proposed Leadership Team has devoted significant time and resources to investigation and pursing the claims in this litigation.

All five firms conducted extensive pre-suit investigations before filing each plaintiff's complaint, which describe in detail the operation of EOTech Sights and the benefits claimed by EOTech concerning durability and efficacy of EOTech Sights that were material to consumers. Proposed Leadership Team's work in identifying and investigating the claims in this case demonstrates that they have and will continue to fairly and adequately represent the proposed class. The following work has been performed thus far:

    a) Discussed EOTech Sights' performance with civilian and law enforcement users in several states, reviewed both historic and current specifications

4

and claims made by the manufacturer, and retained an expert. Physical inspections and testing of exemplar EOTech Sights were also performed.

b) Collected information from their clients, as well as other consumers in at least 40 states, regarding their experiences with the EOTech Sights and whether they believed the EOTech Sights were performing as advertised.

c) Communicated with a witness who possesses information in connection with Defendants' advertising and marketing practices.

d) Conducted a thorough search of publicly available sources to locate and analyze all available documents related to Defendants' misrepresentations in connection with their marketing and advertising of the EOTech Sights, including government reports, consumer periodicals, company press releases, and advertisements.

e) Conducted a thorough review of the available legal documents related to Defendants' business practices and searched publicly available resources to locate and analyze other documents concerning the purported accuracy, efficacy, and durability of the EOTech Sights.

f) Issued a subpoena to the U.S. Attorney's office in the Southern District of New York.

g) Filed a consolidated amended complaint with this Court.

h) Organized themselves into a leadership structure and moved for appointment as interim class counsel.

i) Finalized a confidentiality order and an ESI protocol for filing with this Court.

5

j) Prepared for and conducted a mediation with Defendants in an attempt to resolve the case.

### 3. The Proposed Leadership Team Has Extensive Experience in Handling Class Action and Other Complex Litigation, and Has Substantial Knowledge of the Applicable Law

The second and third factors demonstrate that the Proposed Leadership Team is eminently qualified to represent the interests of the proposed class in this litigation. All five firms have substantial experience in complex litigation. Dollar Burns & Becker, L.C. has a nationwide reputation for trial excellence. Douglas, Haun & Heidemann P.C. has experience prosecuting consumer class actions and UCC violations. The Miller Law Firm, P.C. is a nationally ranked law firm that specializes in class action litigation and complex business disputes. Walsh, PLLC is experienced in complex consumer litigation and contributes scientific expertise. Faruqi & Faruqi, LLP has specific experience in litigating large-scale consumer class actions involving deceptively marketed and advertised products. Together, the Proposed Leadership Team possesses the experience and knowledge needed to efficiently and vigorously represent the class.

### a. Tim Dollar (Dollar Burns & Becker, L.C.)

The lawyers of Dollar Burns & Becker, L.C. have recovered hundreds of millions of dollars in awards and settlements for clients against companies of all sizes. The firm was named as a leading authority by *Lawyers Weekly USA*. Tim Dollar is a founding partner of the firm. *See* Declaration of Tim Dollar in Support of Motion for Appointment of Interim Class Counsel ¶ 1.

Mr. Dollar is an experienced litigator, who practices in state and federal courts. He has served as lead counsel in at least 250 jury trials, *id*. ¶ 5, and as counsel in several class actions on behalf of consumers, including cases brought under the Magnuson-Moss Warranty Act and Missouri Merchandising Practices Act. Mr. Dollar is a recipient of the Lon O. Hocker Memorial

6

Trial Attorney award, an honor given to an attorney in the state of Missouri who has demonstrated excellence in trial work. *Id*. ¶ 6. Mr. Dollar has been named to the Missouri & Kansas Super Lawyers Top 100 and Top 50 Kansas City lists. Mr. Dollar also is a well-known and respected lecturer and published author, and he is often invited to speak about trial tactics and strategies. *Id*. ¶ 7. Mr. Dollar is well-regarded by his peers as an experienced and zealous advocate, but also a consummate professional. Mr. Dollar's experience in successfully advocating for his clients establishes that Mr. Dollar is well-suited to serve as Chair of Plaintiffs' Executive Committee and Interim Class Counsel here.

### b. Craig R. Heidemann (Douglas Haun & Heidemann PC)

Douglas, Haun & Heidemann, P.C. ("DHH") is a well-established firm with a broad range of experience and knowledge. Established in 1912, DHH is currently staffed with ten attorneys and thirteen support staff operating out of two offices. *See* Affidavit of Craig R. Heidemann in Support of Motion for Appointment of Interim Class Counsel ("Heidemann Affidavit") ¶ 3. DHH attorneys are licensed to practice in Missouri, Illinois, and Arkansas and before the 8th Circuit Court of Appeals and the United States Supreme Court. *Id*. ¶ 3. In addition, counsel has practiced across the country in national class actions and mass torts. *Id*. ¶ 4-8. The DHH litigation department has worked extensively in consumer class action cases and complex litigation and has achieved success for its clients against large corporations, government institutions, and banks. *Id.* ¶¶ 4-9. Furthermore, DHH has committed a large portion of its litigation department to specializing in UCC violations, violations of federal and state consumer law and standing up for consumers against large multi-jurisdictional corporations. *Id.* ¶ 4, 9.

Additionally, DHH has at least two firm members who are actively and directly involved in the firearms industry. Mr. Heidemann owns a majority interest in a sporting goods limited

liability company (the "Company"). *Id.* ¶ 12. While that Company has no business or other relationship with the Defendants and does not regularly stock or sell or in any way distribute or promote the Defendants' products, Mr. Heidemann has a professional knowledge of optical sighting/aiming devices and the importance to class members that point of aim and point of impact be identical in order to place rounds where intended. *Id.* ¶ 12. Plaintiff Foster specially ordered his EOTech in question from the Company in 2012 and in turn, the Company sourced the product from a third-party wholesaler. *Id.* ¶ 13. The Company has never had any relationship or communication with EOTech. *Id.* ¶ 14. Out of an abundance of caution, Mr. Heidemann retained former Missouri Supreme Court Chief Justice Chip Robertson to provide an opinion as to any conflict of interest associated with representing Foster and the class exists, and Judge Robertson delivered an unqualified opinion that no conflict existed and that Mr. Heidemann remained suitable under Rule 23 to represent the class. *Id.* ¶ 15.

Mr. Heidemann has been appointed lead counsel or co-lead counsel in several important class action cases including *Wilhoite, et al. v. Missouri Department of Social Services*, No. 2:10-cv-03026 (W.D. Mo. July 11, 2013), *Sherell v. Great Southern Bank*, No. 1131-CV02280 (Circuit Court of Greene County, Missouri, 2014), *Claxton v. Kum & Go, L.C.*, No. 6:14-cv-03385 (W.D. Mo. June 11, 2015), and *Johnson, et al. v. Brazoria County, Texas, et al.*, No. 2:99-cv-04021 (W.D. Mo. 1999). Heidemann Affidavit ¶ 4. Mr. Heidemann also currently serves as a member of the Plaintiffs Discovery Committee (Privilege Log subcommittee) in a pending mass tort case, *In re Xarelto (Rivaroxaban) Products Liability Litigation*, No. 2:14-md-02592 (E.D. Mo.). *Id*. Further, Mr. Heidemann represents 26 plaintiffs in *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, No. 3:15-md-02672 (N.D. Cal.). *Id.*

### c. Sharon S. Almonrode (The Miller Law Firm, P.C.)

The Miller Law Firm, P.C. (the "Miller Firm") is a nationally-recognized leading firm in complex class litigation and multidistrict litigation. *See* Declaration of Sharon S. Almonrode in Support of Motion for Appointment of Interim Class Counsel ("Almonrode Decl.") ¶ 5. The Miller Firm has been ranked Tier 1 in Detroit by *U.S. News-Best Lawyers* "Best Law Firms" for commercial litigation. *Id.* ¶ 7. The Miller Firm successfully obtained over $2 billion in settlements and/or verdicts on behalf of clients. *Id.* ¶ 6. The firm has represented clients in class actions in various courts throughout the country, and has held numerous leadership positions. *Id.* ¶ 5. *See also* Exhibit A to Almonrode Decl.

Ms. Almonrode has significant experience with class actions, consumer and other complex litigation. *Id.* ¶ 9. She has been recognized as a Michigan Super Lawyer (including top 25 consumer lawyers; top 50 women lawyers state-wide; top 100 attorneys state-wide) and has an AV Preeminent rating from Martindale-Hubbell – the highest peer review rating. *Id.* ¶ 8. Ms. Almonrode has successfully litigated cases resulting in multi-million dollar settlements, including the successful resolution of one of the largest settlements in Michigan involving an ERISA pension plan for $110 million dollars.

Some noteworthy cases include the Miller Firm having served as (a) special trial counsel in the antitrust class action, *Cason-Merendo et. al.* v. *VHS of Michigan Inc., et. al.*, No. 2:06-cv-15601 in the Eastern District of Michigan; (b) lead counsel in the first successful national dietary supplement class action, *Gasperoni* v *Metabolife International, Inc.*, No. 00-71255, before the Honorable Avern Cohn of the Eastern District of Michigan; (c) co-lead counsel in the *In Re: Refrigerant Compressors Antitrust Litigation,* MDL-2042, in the Eastern District of Michigan with a $30M settlement; (d) served as co-lead class counsel *In re AIG 2008 Securities Litigation,*

No. 08-CV-4772, which was settled last year for $970.5M before the Honorable Laurie Swain of the SDNY; and (e) co-lead counsel in the *City of Farmington, et.al.* v *Wells Fargo Bank,* No. 0:10-cv-04372, which was resolved on the weekend before trial for $62.M and litigated before the Honorable Donovan Frank in the USDC Minnesota. *Id.* ¶ 11. For a more complete representative list, see Exhibit A to Declaration.

The Miller Firm has the resources, commitment and experience to represent the proposed class.

> **d.** **Bonner C. Walsh (Walsh, PLLC)**

Mr. Walsh's experience with handling consumer class actions supports his appointment as an interim class counsel. Mr. Walsh has been certified as class counsel in previous nationwide and state class actions and has used his expertise to garner substantial victories for plaintiffs and class members. *See* Declaration of Bonner C. Walsh in Support of Motion for Appointment of Interim Class Counsel ¶¶ 7-8. In addition to experience with consumer class actions, Mr. Walsh holds a B.S in Physics, enabling him to deal with experts effectively and knowledgeably, giving Plaintiffs an advantage in the efficient gathering of evidence. *Id.* ¶ 3. Prior to attending law school, Mr. Walsh did significant research concerning defects in metals and gained a familiarity with laboratory testing protocols as well as analytical tools beyond those normally found in an attorney's toolkit. *Id.* ¶ 4. Mr. Walsh's research paper, *Segregation of Solutes In Two-Phase Mixtures*, was published in *Hyperfine Interactions*—a journal devoted to physics and chemistry. *Id.* ¶ 5. Mr. Walsh also presented his research, *Site Preferences of Solutes In The Two-phase Field Between $Pd_3Ga_7$ And $PdGa$*, to the American Physics Society. *Id.* ¶ 6.

In addition, Mr. Walsh has been a competitive shooter, and his personal experience and familiarity with weapon sights, optics and firearms makes him an especially valuable asset to this

litigation. *Id.* ¶ 9. Mr. Walsh's scientific expertise and experience handling complex consumer litigation further supports his appointment as a member of Plaintiffs' Executive Committee.

    e.  **Adam R. Gonnelli (Faruqi & Faruqi, LLP)**

As a national 27-lawyer firm with offices in New York, California, Delaware, and Pennsylvania, Faruqi & Faruqi, LLP ("Faruqi") has served as lead or co-lead counsel in numerous high-profile cases that provided significant recoveries to consumers, shareholders, and employees. *See* Declaration of Adam R. Gonnelli in Support of Motion for Appointment of Interim Class Counsel ("Gonnelli Decl.") ¶¶ 3-4. As discussed in detail in the Gonnelli Decl., Faruqi has extensive experience representing consumers in a variety of state and federal complex class actions at all stages of litigation from trial through settlement. *Id.* ¶ 3. Its attorneys have represented purchasers of various consumer products and have been appointed to serve as interim class counsel in at least 13 consumer class action cases since 2011. *See id.* ¶ 7; *see also* Faruqi Firm Résumé attached as Exhibit 1 to the Gonnelli Decl.

Mr. Gonnelli is a partner in the Faruqi's New York office. Gonnelli Decl. ¶ 1. Mr. Gonnelli has a lead role in numerous state and federal complex litigation and class actions, and has obtained significant recoveries for class members in many cases. These cases have included, among other things, wage and hour disputes, transaction litigation and consumer class actions.

Faruqi, along with co-counsel, successfully prosecuted two trials against a manufacturer for making false and misleading claims regarding its hair restoration product in *Thomas v. Global Vision Products*, No. RG-03-091195 (Cal. Super. Ct. Alameda Cnty. 2003). After seven years of protracted litigation, a jury in the first trial returned a verdict of almost $37 million, and subsequently returned a second jury award of more than $50 million. The *Thomas* verdicts

11

represented the largest consumer class action jury award in California for 2009 (according to the legal trade publication VerdictSearch). *See id.* ¶ 5.

Faruqi has successfully engaged in extensive, intricate and successful motion practice involving complex legal and factual issues in consumer class actions that involves deceptively marketed and advertised products against distributors and manufacturers. Faruqi has obtained class certification for claims under the relevant statutes (e.g., Magnuson-Moss Warranty Act, Unfair Competition Law, Consumer Legal Remedies Act, and warranty claims) at issue in the consolidated actions on at least six occasions. *Id.* ¶ 8.

More recently, Faruqi, as co-lead class counsel reached a significant settlement with CitiMortgage for improper foreclosure practices in connection with homes owned by active duty service members in *Rodriguez v. CitiMortgage, Inc.*, No. 11-cv-04718-PGG-DCF (S.D.N.Y. 2011). The settlement provides class members with a monetary recovery of at least $116,785.00 per class member, plus the amount of any lost equity in the foreclosed property, for a total available monetary recovery of approximately $38,000,000. *See* Gonnelli Decl. ¶ 6. Faruqi's exemplary consumer class action résumé together with its diverse experience handling other complex class actions support its application for appointment as a member of Plaintiffs' Executive Committee.

### 4. The Proposed Leadership Team Will Commit Resources Necessary to Represent the Class

Rule 23(g) also requires the court to consider "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(iv). The Proposed Leadership Team has both the financial resources and personnel necessary to pursue a case of this magnitude. Each of these firms is willing and able to commit the time and resources necessary to lead this case. Together, the firms have 68 attorneys. Importantly, such resources are not limited to merely the

12

financial, but also include substantial expertise and work-product that will benefit Plaintiffs and the proposed class in this action. Proposed Leadership Team's ability to draw from this experience will allow them to vigorously prosecute this case.

### 5. The Proposed Leadership Structure is Fair, Efficient and Ideally Suited for This Litigation

In addition to the factors enumerated under Rule 23(g), the rule also provides that the court "may" consider other matters it deems pertinent. Fed. R. Civ. P. 23(g)(1)(B). Courts commonly give weight to a proposed leadership structure reached by consensus amongst plaintiffs. *See e.g., Deangelis v. Corzine*, 286 F.R.D. 220, 225 (S.D.N.Y. 2012) (giving "significant weight" to leadership structure developed among ten of twelve plaintiffs in a consolidated action); *In re Crude Oil Commodity Futures Litig.*, Case No. 11 Civ. 3600 (WHP), 2012 U.S. Dist. LEXIS 23084, at *9 (S.D.N.Y. Feb. 14, 2012) (appointing leadership structure proposed by a majority of the plaintiffs because "the Court gives some weight to plaintiffs' 'self selection' of class counsel"); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, MDL Docket No. 1869, 2008 U.S. Dist. LEXIS 34229, at *13 (D.D.C. Apr. 28, 2008) (appointing proposed leadership structure, stating "the Court nevertheless does owe some deference" to the firms that self-organized and reached a proposed leadership structure).

The Court should encourage and defer to Plaintiffs' "private ordering" approach as long as it determines that the proposal for leadership is fair, proposes qualified counsel, has opportunities for all firms to be represented, and no "side deals" have been reached to achieve proposed structure. Manual for Complex Litigation § 10.22 (4th ed. 2004). Here, the proposed leadership structure was formed by consensus after numerous communications among counsel representing plaintiffs in above-captioned cases.

13

**B.     The Above-Captioned Cases Meet the Requirements of Fed. R. Civ. P. 42(a) for Consolidation**

The *Braginton* and *Pittman* actions are two of the five above-captioned consumer class actions pending before this Court alleging false, misleading and deceptive marketing and sale of holographic weapon sights (the "EOTech Sights" or "Sights") by Defendants L-3 Communications EOTech, Inc. ("EOTech") and L-3 Communications Corp. ("L-3"). This Court formally consolidated *Foster*, *Rolfes*, and *Chen* actions (the "Consolidated Actions") on March 18, 2016 (ECF No. 35 in the *Rolfes* action) and April 1, 2016 (ECF No. 66 in the *Foster* action), respectively, designating the *Foster* action as the lead case.

Cases "sharing common aspects of law or fact may be consolidated to avoid unnecessary cost or delay." *EEOC v. HBE Corp.*, 135 F.3d 543, 550 (8th Cir. 1998). *See also* Fed. R. Civ. P. 42(a) (consolidation of claims is appropriate where the actions "involve a common question of law or fact"). Indeed, as this Court recognizes, consolidation is warranted in actions that involve "common defendants, overlapping legal issues, and related factual scenarios." *Foster et al. v. L-3 Communications EOTech, Inc. et al*, No. 6:15-cv-03519-BCW (W.D. Mo. Apr. 1, 2016) (ECF No. 66, Order granting motion to consolidate). "[C]onsolidation will create savings to the court system by reducing inconvenience, inefficiencies, and unnecessary delays." *Id*.

Consolidation of the *Braginton* and *Pittman* actions with the Consolidated Actions is appropriate because these actions name the same Defendants and involves similar allegations. All these actions allege, among others, violations of various state consumer protection statutes. Accordingly, the legal and factual issues involved in these actions overlap greatly, rendering consolidation appropriate to effectively streamline the litigation and conserve resources of the parties and the Court.

**CONCLUSION**

For the reasons stated above and in the accompanying declarations, Plaintiffs' motions should be granted.

Dated: August 22, 2016

Respectfully submitted,

**DOLLAR BURNS & BECKER, L.C.**

By: */s/ Tim Dollar*
Tim Dollar, Missouri Bar No. 33123
1100 Main Street, Suite 2600
Kansas City, MO 64105
Tel: (816) 876-2600
Fax: (816) 221-8763
Email: timd@dollar-law.com

*Proposed Co-Lead Counsel and Chair of the Plaintiffs' Leadership Team*

Craig R. Heidemann
**DOUGLAS HAUN & HEIDEMANN PC**
111 W Broadway St
Bolivar, MO 65613
Tel: (417) 326-5261
Fax: (417) 326-2845
Email: cheidemann@bolivarlaw.com

Sharon S. Almonrode (admitted *pro hac vice*)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Suite 300
Rochester, MI 48307
Tel: (248) 841-2200
Fax: (248) 652-2852
Email: ssa@millerlawpc.com

Bonner C. Walsh (admitted *pro hac vice*)
**WALSH, PLLC**
P.O. Box 7
Bly, Oregon 97622
Tel: (541) 359-2827
Fax: (866) 503-8206
Email: bonner@walshpllc.com

15

Case 6:15-cv-03519-BCW   Document 82   Filed 08/22/16   Page 19 of 20

Adam R. Gonnelli (admitted *pro hac vice*)
Nadeem Faruqi (pending *pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, New York 10017
Tel: (212) 983-9330
Fax: (212) 983-9331
Email: agonnelli@faruqilaw.com
nfaruqi@faruqilaw.com

*Proposed Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of August, 2016, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF system, which will send notifications of such filing to the CM/ECF participants registered to receive service in this matter.

By: */s/ Tim Dollar*
Tim Dollar

*Attorney for Plaintiff*