1    IN THE UNITED STATES DISTRICT COURT
     WESTERN DISTRICT OF MISSOURI
2            SOUTHERN DIVISION

3

ANDREW TYLER FOSTER, et al.,        )
4                                    )
             Plaintiffs,             ) No. 15-03519-CV-S-BCW
5                                    ) September 22, 2016
        V.                           ) Kansas City, Missouri
6                                    ) CIVIL
L-3 COMMUNICATIONS EOTECH,           )
7  INC., et al.,                     )
                                     )
8            Defendants.             )

9


10

               TRANSCRIPT OF TELECONFERENCE
11
         BEFORE THE HONORABLE BRIAN C. WIMES
12            UNITED STATES DISTRICT JUDGE

13    Proceedings recorded by electronic stenography
              Transcript produced by computer
14

15

16

17

18

19

20

21

22

23

24

25

               Kathleen M. Wirt, RDR, CRR
               United States Court Reporter
     400 E. 9th Street, Suite 7452 * Kansas City, MO 64106
                       816-512-5609

```
  1                    APPEARING BY TELEPHONE:

  2
        For Plaintiffs:          MR. TIM EUGENE DOLLAR
  3                              Dollar, Burns & Becker
                                 1100 Main St., Suite 2600
  4                              Kansas City, MO 64105

  5                              MR. CRAIG HEIDEMANN
                                 MR. NATHAN A. DUNCAN
  6                              Douglas, Haun & Heidemann
                                 111 W. Broadway, P.O. Box 117
  7                              Bolivar, MO 65613-0117

  8                              MR. ANDREW M. GONYEA
                                 The Miller Law Firm, P.C.
  9                              950 W. University Drive, Suite 300
                                 Rochester, MI 48307
 10
                                 MR. ADAM GONNELLI
 11                              MS. INNESSA S. MELAMED
                                 Faruqi & Faruqi
 12                              685 Third Ave, 26th Floor
                                 New York, NY 10017
 13
                                 MR. BONNER CHARLES WALSH
 14                              Walsh LLC
                                 P.O. Box 7
 15                              Bly, OR 97622

 16     For Defendants:          MR. RICHARD C. GODFREY
                                 MR. J. ANDREW LANGAN
 17                              Kirkland & Ellis
                                 300 N. LaSalle St.
 18                              Chicago, IL 60654

 19                              MR. JOSEPH M. REBEIN
                                 Shook, Hardy & Bacon, LLP
 20                              2555 Grand Boulevard
                                 Kansas City, MO 64108-2613
 21

 22

 23

 24

 25


                        Kathleen M. Wirt, RDR, CRR
                        United States Court Reporter
        400 E. 9th Street, Suite 7452 * Kansas City, MO 64106
                            816-512-5698
```

1       SEPTEMBER 22, 2016

2                   - - -

3           THE COURT:  Good morning, counsel.

4           MR. DOLLAR:  Good morning.

5           MR. GODFREY:  Good morning, Your Honor.

6           THE COURT:  Well, I think we've got a count of who

7   all is on the phone call.  Who is going to speak on behalf of

8   the plaintiffs?

9           MR. DOLLAR:  Tim Dollar, Your Honor.

10          THE COURT:  Okay.  And on the defense?

11          MR. GODFREY:  Richard Godfrey, Your Honor.

12          THE COURT:  Okay.  Mr. Godfrey, great.  Great.

13          Well, let me take up a couple of matters.  I've

14  received the -- or I've had an opportunity to review the motion

15  in opposition as it relates to appointment of interim counsel.

16  It is my plan to get out an order on that next week.  But my --

17  I can tell you my decision with respect to that is to

18  appoint -- to grant the said motion to appoint.  The Court

19  understands arguments presented by the defense, but I think in

20  the end, in a lot of ways, I think that just supports the

21  reasons why I should.  And so -- but I'll get that out in an

22  order.

23          Now, my main concern is this.  We have a position

24  statement concerning the scheduling order, and we're not able

25  to come to agreement.  So let me tell you all how I typically

1  handle these type of cases, and then you all are free to

2  comment or tell me how we can get to that point.

3          Now, with respect to allowing merits or class

4  discovery to proceed simultaneously, typically what I have done

5  is to proceed with class discovery.  Now, to the extent there's

6  some overlap, there's overlap, but we do move forward with the

7  class discovery, and to the extent there's overlap.  Now, the

8  only caveat in this particular case is we've been sitting on

9  the starting line for a while.  Another one of my goals is

10  always to keep cases moving and keep them progressing in an

11  efficient but steady way, and so that would be the slight

12  caveat to that.

13          But to the extent of merit discovery as it relates

14  to class discovery, which I think is the sticking point -- am I

15  wrong?

16          MR. DOLLAR:  That would be one of the main sticking

17  points, Your Honor.  This is Tim Dollar.

18          THE COURT:  Okay.  It would be to -- yes, definitely

19  class discovery, but to the extent there's some overlap, in

20  fact, there may be, and I understand that.  And then what I

21  have done before is we get at least a tentative scheduling

22  order so we can meet that goal and then we, depending on how

23  the Court rules with that, then we move forward accordingly.

24  Thoughts?

25          MR. DOLLAR:  This is Tim Dollar for plaintiff.  Yes,

1 Your Honor. I mean, our position is essentially that much of

2 the discovery will overlap, but what I hear the Court saying is

3 to the extent it does, it does, and we can -- certainly the

4 focus can be on the issues related to class certification, but

5 many of those issues, as the Court points out, will be the

6 same.

7 And our only point was we didn't want to be in a

8 position, for the purpose of promoting efficiency and judicial

9 economy and in light of the fact that we've been on the

10 starting line for some time, to have to go around the country

11 and depose a person who might have information that is on class

12 certification but also might have lots of other factual

13 information that would be merit-based, but also go to the point

14 of class certification and have to come back and take that

15 deposition a second time. That seems to be just a waste of

16 time and money, in our view. That's our view.

17 THE COURT: Mr. Godfrey?

18 MR. GODFREY: Two points, Your Honor. No. 1, there

19 will be some overlap with merits discovery, but it will be very

20 limited; and the likelihood that there will be many witnesses

21 on the defense side that are both class and merits is very

22 small. I can go into some detail to give you examples, but,

23 for example, how many units were sold that would have the

24 alleged defect is a fairly precise question. That person is

25 not going to have a great deal of merits-related in terms of

1   the nature of the defect, where the defect manifested itself,

2   whether the plaintiffs or members of plaintiff class would ever

3   have the experience of a manifested defect.  And so, of course,

4   on the margins where there's overlap between class and merits,

5   good lawyers can work that out where you're not going to have a

6   witness taken twice.

7          But what the plaintiffs' position is, as we

8   understand it, is that in their view, all of the issues go to

9   both class and discovery, and we just -- that's just not my

10  experience in cases like this, and that basically eliminates

11  the distinction between class and merits.

12         THE COURT:  Well, here is my position.  The parties

13  get together with the understanding of what I just said is that

14  this -- I don't need specifics.  To the extent there is overlap

15  and to the extent that any of these witnesses could be class

16  and merit, then we need to do it at the time that discovery

17  needs to move forward.

18         Now, you know, you characterize it as it's only

19  marginal; Mr. Dollar may say, well, it's not marginal, Judge.

20  Well, you all get together and make this determination with

21  respect to that.  The focus should be, though -- my focus is on

22  discovery related to class.  And to the extent -- to the end

23  that it overlaps, where we're not cumulative or duplicative

24  coming back to the same people, we need not do that.  That's my

25  point, and I'm sure you guys can work it out.

1            MR. GODFREY:  Your Honor, we -- this is Rick

2    Godfrey.  We agree with that, and we will follow that guidance

3    accordingly.

4            THE COURT:  Okay.  Next issue, it seems to have

5    dealt with dispositive motions or motions of some sort which

6    would stop discovery.  Let me tell you my general rule.  If

7    there's a motion to dismiss or some other dispositive motion, I

8    do not stop discovery.  I don't do it.  So to the extent anyone

9    files -- I don't think there's anything out there, but to the

10   extent someone does, I will deny a motion to stay discovery

11   while the Court rules on it.  I just don't do it.

12           MR. GODFREY:  Your Honor, this is Rick Godfrey.  We

13   understand, and our proposal that we ended up making to the

14   Court was the same that we had made that we felt we had

15   agreement on last February where a motion to dismiss does not

16   stay pending discovery.  So we're not at odds with the Court on

17   that issue.

18           THE COURT:  Well, great.  You're not at odds with

19   me, it's odds with the other side.  I mean, I'm just telling

20   you kind of how I do it.  So -- well, that's good.  Mr. Dollar?

21           MR. GODFREY:  We originally proposed to them that,

22   because that made some sense to us.  They didn't agree, so we

23   reverted to the proposal we submitted to the Court, was the one

24   that we did before that's on the same page as Your Honor.

25           THE COURT:  Okay.  Was that Mr. Dollar?

1      MR. DOLLAR:  Well, yeah, I mean, I'm not 100 percent

2   sure that's correct, I don't want to misstate anything.  But I

3   mean, the simple -- we want to begin and proceed with

4   discovery, period.

5      THE COURT:  And so do I want you guys too, and I

6   think we're all on the same page, and motions will not stop

7   this, absent extraordinary circumstances.  So I think we're

8   good.  I think.  Right?

9      MR. DOLLAR:  Yes.

10      MR. GODFREY:  Yes.

11      THE COURT:  All right.  The last issue, I'm not

12   sure, related to -- I'm not sure.  And Mr. Dollar, explain a

13   little bit.  I was reading in the position statement concerning

14   the scheduling order, (c) allowing full or limited nonparty

15   discovery to occur without getting permission of the Court to

16   depose or direct discovery to the -- help me, I'm just not sure

17   exactly what the issue is there between the parties.

18      MR. DOLLAR:  Well, the issue for the plaintiff is we

19   just want to follow the rules and conduct discovery that is

20   contemplated under the federal rules.  And as the Court knows,

21   sometimes that involves discovery from the parties, but in many

22   cases, as it does and it would in this case, involve discovery

23   from third parties.

24      For some reason, the defendant wants to depart from

25   the federal rules and require plaintiff to seek permission from

1  the Court every time we want to do any discovery not from them,

2  and there's just no basis for that, and it would involve us

3  coming to the Court and involving you in matters that really

4  shouldn't involve or need the Court.  We just want to conduct

5  discovery pursuant to the rules.

6           THE COURT:  Okay.  Counsel, Mr. Godfrey?

7           MR. GODFREY:  Yes.  Mr. Dollar and his proposal

8  misses a predicate step which Your Honor has already commented

9  on.  This very issue, Your Honor, was the subject of discussion

10 with the Court in the last status in February.

11          What is missing from the plaintiffs' proposed

12 scheduling order, but Your Honor identified it early on this

13 morning, is the plaintiffs do not have any focus in their

14 scheduling order or even mention the class, putative class

15 action.  And third-party discovery, for the most part, that

16 they're seeking has nothing to do with class issues.  It is on

17 the merits, and what we've said from the start is let's settle

18 the pleadings because the pleadings define the scope of the

19 case, and let's determine the class because the class defines

20 the magnitude of the case and whether there's going to be a

21 case.  In some cases like this, if the class is denied or if

22 only a state class is certified, it's a much different case

23 than otherwise.

24          And it makes no sense to us -- in most courts, it

25 makes no sense to -- and Your Honor pinpointed this in February

because we had this discussion before where, why should we have
massive merits discovery through third parties when the issue
here is whether or not there is a class and what the nature of
the case is to begin with.

So when Mr. Dollar says he wants to follow the
federal rules, the federal rules do not simply say that in a
putative class action you start with massive merits discovery.
They give the Court the discretion to fashion the case so that
discovery is both efficient and it makes sense.  I see no
reason why we should have depositions or discovery of 15 or 20
third parties on the merits of this case when there may not
even be a case and there may not even be a case left if there's
no -- if the Court determines there is no class or if the Court
determines there's a different class or a smaller class.

THE COURT:  Well, let me --

MR. DOLLAR:  The --

THE COURT:  Go ahead.

MR. DOLLAR:  I'm sorry, Your Honor, this is Tim.  I
was simply going to point out that the Court also noted that,
and it is true, many of the issues that this Court will need to
examine for the class certification do involve the same issues
that are relative to the merits.  What is the nature of the
representation?  Was it a representation that was the same made
to all?  What is the nature and extent of the admissions that
were made, and were those uniform to all people who might be

1   similarly situated?  All of those really can't be parsed and
2   distinguished out between merit and the arguments for class
3   certification.  And so there may be third parties contemplated
4   by the rules that would be the subject to -- of initial
5   discovery.

6           THE COURT:  Right.  And let me ask this question so
7   I can be clear, Mr. Godfrey.  I know in February -- refresh my
8   recollection.  I think that's when we had the individual case,
9   is that correct, here?

10          MR. GODFREY:  We had the putative class case brought
11  by the Foster plaintiffs.

12          THE COURT:  Okay.  Hold on, hold on, let me finish.

13          So is that what we're talking about?  And then I
14  think at that time, one of the attorneys wanted to be appointed
15  lead counsel, and then they wanted these nonparty subpoenas.
16  And what I ended up saying, well, the subpoena, I think
17  somewhere in New York -- wasn't there some subpoenas?  There
18  was nonparty subpoenas being issued, or the request was, and
19  then I kind of stopped that by saying, yeah, issue them.  And I
20  think somewhere in New York; is that right?  Something like
21  that?

22          MR. GODFREY:  Your Honor, that's correct.  At the
23  time we had what I thought was an agreed scheduling order where
24  Your Honor addressed this connection with a New York subpoena
25  to the U.S. Attorney's Office.

1          THE COURT:  Oh, yeah, that's what -- okay, yeah.

2     Okay, yeah, yeah, yeah.

3          MR. DOLLAR:  But that was when -- that was just when

4     there was one case and you wanted to proceed, as I understand

5     it -- I wasn't there.  You wanted it to proceed in an orderly

6     fashion, and you wanted all of these consolidated, which we've

7     now done, now we should just proceed.

8          THE COURT:  So let me -- and let me just tell you my

9     thoughts, and then we'll -- you know, typically -- and I don't

10    think this changes what I said from earlier, and I think one of

11    the -- is counsel on the phone who was on that first case with

12    me?

13         MR. HEIDEMANN:  Yes, Judge, this is Craig Heidemann.

14    I'm here.

15         THE COURT:  Yeah, Mr. Heidemann.  Because what was

16    it, Mr. Heidemann, why did I allow you to do that subpoena?  I

17    think there, you know, the take -- the process was kind of

18    longer, wasn't it, and I think it was stopped or delayed.

19    Refresh -- help me there.  I'm just going from memory.

20         MR. HEIDEMANN:  The U.S. Attorney's Office in New

21    York we believed had the documents that were produced by the

22    defendant in the government prosecution, and we anticipated

23    that it would take a while to litigate the protective order

24    issue --

25         THE COURT:  Right, right.

1           MR. HEIDEMANN:  -- or the objections to the

2    subpoena.  And you said -- we recognized that that was likely

3    to happen, and so you allowed us to get started on that.

4           THE COURT:  Right.

5           MR. HEIDEMANN:  But you quashed the in-state

6    subpoenas for Midway and Bass Pro.

7           THE COURT:  Okay.  Right, right.  Oh, yeah.  Now

8    that -- yeah, okay.

9           You know, here is my thoughts, and I don't know if

10   this is even a guide -- I don't think I changed from any

11   position I've taken.  I think the discovery related to class,

12   and to the -- I wouldn't change it -- and to the end, these

13   nonparty folks may have something related to it, then, you

14   know, or there's some cross-over, then I think, you know,

15   discovery.  If not, then we move forward with the, you know,

16   class discovery and only the overlap.  You know, I don't change

17   that position.

18          MR. DOLLAR:  And Your Honor, this is Tim.  We don't

19   need to get your permission to do that.  If our focus is class

20   certification, we just follow the rules.

21          THE COURT:  Yeah, I mean.  I mean -- and let me --

22   Mr. Godfrey, do you have any -- you know, I don't know.  That's

23   my position on the discovery issue.  You know, to the end, we

24   do class, to the extent it overflows into kind of merit and

25   deals with that, then so be it.  But, you know --

1          MR. GODFREY:  Your Honor, it's hard to argue, and I

2    don't disagree with that, but the devil is always in the

3    details.

4          THE COURT:  Sure.

5          MR. GODFREY:  Let's focus on the two issues that

6    concern the defendant the most and I think should concern the

7    Court the most.

8          One is we need something in the scheduling order

9    that settles the pleadings because the pleadings ultimately are

10   going to define, you know, whether we have a case and, if so,

11   the nature of the case.  And then secondly, we need the class

12   certification schedule after class discovery.  Unless we have

13   those two items tied down, we are not going to be able to

14   efficiently manage this, and it's going to be treated as an

15   individual case.

16         THE COURT:  Well, didn't I -- hold on.  Didn't I

17   just say what I typically do is, in this kind of bifurcated

18   way, is to set up a schedule that's dealing with class

19   discovery, and to the extent that it overflows or overlaps

20   merits discovery, so be it.  But what we do is to get a

21   scheduling order up until that point, and once the Court makes

22   some determination, then we have our scheduling order that's

23   going to relate to what's remaining, or the class, or whatever.

24   That's what I said.  And that's what the parties need to do.

25   Meet and confer.

1    MR. GODFREY:  Your Honor, we agree with that.  I did

2  not hear it quite that way, but we agree with that.

3    THE COURT:  That was the first thing I said.  That's

4  how I typically handle these class actions.  We've got to do a

5  scheduling order related to the class discovery, and to the

6  extent, what overlaps -- yeah, I will tell you different in

7  other cases I've had, it seems to me there's a larger amount of

8  these nonparties that are involved in other matters I've had.

9  It just seems -- it just works out that way.  But I don't think

10  my general thoughts would change on that, and I don't think

11  counsel needs to get permission from me.

12    I think -- I'm not going to get in the weeds at

13  least at this point.  You know, I think I made it clear what I

14  think the discovery should focus on, and, to the extent it

15  overlaps and goes to these nonparties and they have -- there's

16  relevant discovery that relates to the class, then so be it.

17  Now, if there's dispute about that, then, yes, call me.

18    MR. GODFREY:  Your Honor, we understand.  And our

19  scheduling order, with one exception, does precisely what you

20  just said, our proposed scheduling order.  And that was the

21  third-party discovery, but we can modify that accordingly.

22    THE COURT:  Yeah, I mean, you know -- okay.  Is

23  that -- and, Mr. Dollar, if I'm hearing you, I think that's

24  what -- I know you see it slightly different and you think,

25  hey, Judge, let's just get this case moving and get on with

1  discovery whether there's merit.  And so I think the bottom
2  line and part of your concern, or at least what I heard earlier
3  is you don't want this kind of duplication or going back, and I
4  don't want that either.  I think to the extent, you know,
5  whether it's a nonparty or any other discovery, and this laser
6  focus on class and they have other information that may be
7  merit-based, then, you know, so be it.  I think you're entitled
8  to that discovery at this time.

9         MR. DOLLAR:  Right.  I mean, as I understand it,
10 what the Court is telling us is, one, we do not need to get
11 pre, you know, permission from the Court to do third-party
12 discovery if the focus of that discovery is on the issues, as
13 we see it, related to class certification, we should proceed
14 and we are able to proceed.  And to the extent that a witness,
15 a document, or other from a third party or this defendant
16 overlaps into the merit issues, take it, do it, and get moving.

17        THE COURT:  Yeah, it sounds like we're all on the
18 same page, so why don't we do this.  You know, I still want to
19 be able to -- you know, you all meet and confer, and then we
20 get back on the phone just so we shore up everything in terms
21 of that.  And then, you know, I'll be out of your hair unless
22 and until you all want another conference call.  So why
23 don't -- you know, what, two weeks?

24        MR. DOLLAR:  Sure.  Because I do anticipate, Your
25 Honor, just hearing the comments on this call, while I would

1  prefer that we not have to put you in the weeds, my guess is

2  that when we have a next conference with our opposing counsel,

3  we're likely to have disputes about whether a particular

4  request we have really is --

5          THE COURT:  Sure.

6          MR. DOLLAR:  You know, whether it overlaps.  But I

7  think we should make an effort at that, and we will.

8          THE COURT:  Sure.  And, you know, I don't disagree.

9  I mean, and not that I don't -- you know, sometimes I have to

10 get in the weeds to kind of be clear when we have kind of a

11 situation and then, you know, once we resolve that, that will

12 kind of impact other issues that come up.  So to the extent we

13 need to do that, I think it's helpful.  If we do it early on,

14 then it cuts down on stuff later.  So I don't mind that.

15         We'll get back on, let's say, October 6 at 9

16 o'clock.  Hopefully we'll have a scheduling order proposed by

17 the parties.  Now, to the extent that we need to adjust parts

18 of it, you know, or talk about parts, fine.  But if you agree

19 on most, then, you know, that's fine with me, and then we'll

20 talk about the others and then we'll just move forward from

21 there.

22         MR. GODFREY:  Your Honor, this is Rick Godfrey, and

23 that sounds fine.  There's two other issues I'd like to raise

24 with the Court, though, so that we have some guidance.

25         THE COURT:  Okay.

1    MR. GODFREY:  No. 1 is we now have a new complaint

2    filed the 19th.  We do not have a responsive pleading date, but

3    I would think that until we have the scheduling order, we

4    should not set a responsive pleading date.  That is, a move or

5    otherwise plead.  Otherwise, we'd like to have until November

6    3rd to move or otherwise plead.  I don't know what we'll be

7    able to work out on that, but right now we still have a stay

8    that continues, and we'd like to just get clarity on the

9    responsive pleading date or motion practice that we have as to

10   that complaint.

11         THE COURT:  Okay.  Let me ask you, you said we have

12   a stay.  I think you guys had a stay.

13         MR. GODFREY:  Actually, Your Honor, Your Honor

14   entered a stay.

15         THE COURT:  Well, I entered a stay to a certain day,

16   and then I had something and I looked in my file, and it said,

17   "hey, we as parties agree on this."  And it wasn't a request,

18   it was like, hey, we agree on this.  And I was like, well,

19   that's wonderful they agree on it, but just because you file it

20   in the court and you guys agree on it doesn't mean I agree on

21   it.  So I may beg to differ a little bit on that stay because

22   it wasn't -- because there was no response from the stay giving

23   you guys approval or giving you guys opportunity.  I didn't say

24   anything about it because I wanted to let it ride.

25         And that's why I called a conference call, to get

this case moving. Because in my mind, unless and until I
ruled, it wasn't a stay. You guys -- you guys just decided,
"hey, Judge, we're trying to settle this thing, I want a stay."
That's my recollection, but I'm not looking at the document
right now, but I don't think I ever --

          MR. GODFREY: Actually, Your Honor, there was a
stay, and what we did was --

          THE COURT: There was a stay, but it wasn't the stay
that you guys suggested the date.

          MR. GODFREY: No, it was -- that's correct, Your
Honor.

          THE COURT: I know.

          MR. GODFREY: All I was saying, Your Honor, is we
need to have a responsive pleading date. We would suggest
November 3rd.

          THE COURT: Okay. Well, let's focus on that because
we're not under a stay because my stay ended. Your stay or
your parties' stay, which was never ratified by me, is just
that. It was never. It was just like, okay, these guys want
until this time, but it wasn't put into motion, like, here is
what we're doing, Judge.

          So anyway, Mr. Dollar, what's your position on that?

          MR. DOLLAR: Well, I -- we take the position as the
Court said. There's no stay. We should proceed. But --

          THE COURT: No, I just -- with the time frame. With

1  the time frame.

2          MR. DOLLAR:  Sure.  I am confident we can work a

3  responsive pleading date out.  That shouldn't be controversial,

4  and we can do that in a conference between the two of us.

5          THE COURT:  Yeah, I don't think that's --

6  Mr. Godfrey, I don't think that's a big deal, hearing what I

7  hear.  That's fine with me.

8          MR. GODFREY:  Well, Your Honor, that's good news,

9  but it's not in their draft order of what I'm asking you this

10 morning.  Maybe we need to have a conference offline with

11 Mr. Dollar.  I'm suggesting November 3rd so we have clarity

12 about this so I don't have to run around and do stuff this

13 week.

14          MR. DOLLAR:  No, I agree with that.  We'll get on

15 the phone, and we can work that out.

16          THE COURT:  Okay.  November 3rd.  Okay.  What's the

17 second issue?

18          MR. GODFREY:  The second issue is just a brief

19 report to the Court.  The parties have made progress in

20 mediation.  We'll continue to meet on that.  I was going to ask

21 the Court, because the Court's already clarified the first

22 issue, whether we should stay all proceedings until the next --

23 until October 6th because the parties are either I think by

24 that time going to be very close, if not have reached a

25 settlement, or they're not going to reach a settlement.  I

1 think that the parties have made in the last ten days

2 significant progress. I think there are two open issues. I

3 think that -- we have communicated through the mediator, I

4 think that we're waiting to hear back from the plaintiffs, but,

5 you know, the parties have made progress.

6         And so I would prefer -- well, obviously, we're

7 going to get the scheduling order worked out, but I would

8 prefer to try to put our efforts in the next two weeks into

9 seeing if we can settle this matter, subject to Your Honor's

10 approval, of course. But I thought I would raise that issue

11 and also just report to the Court that we've actually made some

12 progress. Whether we can reach closure or not I think is still

13 unknown, but we've made more progress than I had hoped to at

14 one point. So I'm somewhat optimistic, but I'm not overly

15 optimistic. I'm just somewhat optimistic, I'll put it that

16 way.

17         THE COURT: Mr. Dollar, what are your thoughts on

18 that?

19         MR. DOLLAR: I am not optimistic, but I don't think

20 we should stay -- I think we should get the case going. If

21 discussions are productive, they're productive; if they're not,

22 they're not. But we should -- we've been on the starting line

23 for some time, and we should just proceed, and it doesn't

24 prevent anybody from having discussions, we always do that.

25 And we are -- I'm going to have a communication back to the

1  mediator this afternoon, but it shouldn't prevent us from

2  getting the case going.  We are not settled, and the issues

3  that remain open are significant, and there remain significant

4  hurdles to resolution.  But I am always going to be open to

5  discussion.  And, as I say, I'm going to communicate back with

6  the mediator this afternoon, but it shouldn't prevent us from

7  moving forward.

8            THE COURT:  Yeah, you know, the thing is, I want

9  to -- why don't we look to October 6th.  I think -- I'm not

10  going to stay it until that date.  I've stayed it, this case

11  has been around.  You know, I want to get it moving.  To the

12  extent we have to just work on a dual track, try to get it

13  settled, if you can, if not, we'll move forward on the

14  scheduling order and we just go from there.

15            So I'll get you guys back on the phone on October

16  6th at 9 o'clock, and we'll -- hopefully there will be

17  agreement on most, if not all, and those things that you're not

18  on agreement with, we'll work them out on the phone and we'll

19  get moving.

20            MR. DOLLAR:  Thank you.

21            MR. GODFREY:  Your Honor, thank you very much.

22            THE COURT:  All right.  Thank you all.  I appreciate

23  you getting on the phone.

24            (Teleconference concluded.)

25                      - - -

1       <u>CERTIFICATE</u>

2              I certify that the foregoing is a correct transcript

3   from the record of proceedings in the above-entitled matter.

4

5

6    September 26, 2016

7                                    /s/_____
                                     Kathleen M. Wirt, RDR, CRR
8                                    U.S. Court Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25