**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| ANDREW TYLER FOSTER, et al, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No.6:15-cv-03519-BCW |
| v. | ) | |
| | ) | Hon. Brian C. Wimes |
| L-3 COMMUNICATIONS EOTECH, INC. et al, | ) | |
| | ) | Consolidated with: |
| | ) | |
| Defendants. | ) | Case No. 4:16-cv-00095-BCW |
| | ) | Case No. 4:16-cv-03109-BCW |
| | ) | Case No. 4:16-cv-00438-BCW |
| _____ | ) | Case No. 4:16-cv-00439-BCW |

## SUGGESTIONS IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

CONCISE STATEMENT OF ISSUES PRESENTED ............................................................... iii

TABLE OF AUTHORITIES........................................................................................................iv

BACKGROUND ...........................................................................................................................1

BACKGROUND OF THE LITIGATION………………………………………………………...3

ARGUMENT ................................................................................................................................5

    I.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ...........5

        A.    Standards and Procedure: Class Action Settlements are Favored.................................5

        B.    The Proposed Settlement, Which Was the Result of Arm's Length Negotiations Among Experienced Counsel, Is Presumptively Valid .................................................6

        C.    The Proposed Settlement is Fair, Reasonable, and Adequate as Required Under Fed. R. Civ. P. 23(e) .............................................................................................................8

            1.     The Settlement is Fair and Reasonable When Weighed Against the Strengths and Weaknesses of the Claims .................................................................................9

            2.     Defendant's Financial Condition Supports Settlement ..........................................10

            3.     Risk and Expense of Further Litigation (*i.e.*, Trial and Any Subsequent Appeals) Weigh in Favor of Approval.................................................................................10

    II.    CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE .................................................................................................................11

        A.    The Class Satisfies the Requirements of Rule 23(a) ...................................................12

            1.     The Class Members Are Too Numerous to Be Joined ...........................................12

            2.     There are Common Questions of Law and Fact......................................................13

            3.     Plaintiffs' Claims are Typical of the Class.............................................................15

            4.     Lead Plaintiff Will Fairly and Adequately Protect the Interest of the Class ...........16

        B.    Rule 23(b)(3) Is Satisfied ..........................................................................................17

            1.     Issues Common to the Class Predominate Over Individual Issues .........................17

            2.     Plaintiffs Believe A Class Action is Superior to Other Methods of Adjudication ..18

        C.    Interim Lead Counsel Should be Appointed Class Counsel .......................................20

    III.    THE COURT SHOULD APPROVE THE FORM OF THE NOTICE AND PLAN FOR PROVIDING NOTICE TO THE CLASS ...................................................................21

    IV.    PROPOSED SCHEDULE OF EVENTS....................................................................22

    V.    CONCLUSION ........................................................................................................23

Case 6:15-cv-03519-BCW   Document 122   Filed 02/13/17   Page 2 of 30

## CONCISE STATEMENT OF ISSUES PRESENTED

1. Whether this Court should enter an order: (a) preliminarily approving the proposed Settlement in this action (the "Settlement") as memorialized in the Class Action Settlement Agreement (the "Agreement"); (b) approving the form and method for providing notice, as provided in the Agreement, which describes, *inter alia*, the pendency of this action, the terms of the proposed Settlement, Class Members' rights with respect thereto, the proposed release of claims, the proposed Plan of Allocation of the Settlement proceeds, the request for an award of Attorneys' Fees and Litigation Expenses, and the procedures for submitting proofs of claim; and (c) setting the date for a fairness hearing (the "Final Approval Hearing") to consider: (i) whether the proposed Settlement provided for in the Agreement is fair, reasonable and adequate to the Class and should be finally approved by the Court and implemented; and (ii) Class Counsel's application for an award of Attorneys' Fees and Litigation Expenses?

   Named Plaintiffs' Answer:    Yes

# TABLE OF AUTHORITIES

## Cases

*Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525 (8th Cir. 1996)……………...………..……….15

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231, 2245, 138 L. Ed. 2d 689 (1997)……………………………………………………………………......17, 18, 19

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 133 S.Ct. 1184 (2013)………………..……17

*Armstrong v. Bd. of School Dirs. of the City of Milwaukee*, 616 F.2d 305 (7th Cir. 1980)…….6, 7

*Avritt v. Reliastar Life Ins. Co.,* 615 F.3d 1023 (8th Cir. 2010)………….……………..……17

*Boswell v. Panera Bread Co.*, 311 F.R.D. 515 (E.D. Mo. 2015)……………..……..……….12

*Carson v. American Brands, Inc.*, 450 U.S. 79 (1981)…………………………………..……….9

*In re Charter Communications, Inc., Securities Litig.*, No. MDL 1506, 4:02-CV-1186 CAS, 2005 WL 4045741 (E.D. Mo. June 30, 2005)……………………………………………….9

*Claxton v. Kum & Go, L.C.*, No. 6:14-CV-03385-MDH, 2015 WL 3648776 (W.D. Mo. June 11, 2015)………………………………………………..…………..8, 13, 15, 16, 19

*Cromeans v. Morgan Keegan & Co.*, 303 F.R.D. 543 (W.D. Mo. 2014)………..…………….12

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995)………………...……….7, 15, 21

*Ebert v. Gen. Mills, Inc.,* No. CIV. 13–3341 DWF/JJK, 2015 WL 867994 (D.Minn. Feb. 27, 2015)…………………………………………………………..……….....12-13

*Ebert v. Gen. Mills, Inc.*, 823 F.3d 472 (8th Cir. 2016)………………………..……..12, 13

*Elizabeth M. v. Montenez,* 458 F.3d 779 (8th Cir.2006)…………………….………………....12

*Galloway v. Kansas City Landsmen, LLC*, No. 4:11-1020-CV-W-DGK, 2012 WL 4862833 (W.D. Mo. Oct. 12, 2012)……………………………………………………….....11-12

*In re Gen. Motors Corp. Pick-Up truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768 (3d Cir. 1995)………………………………………………………………..……...…5

*Grier v. Chase Manhattan Auto. Fin. Co.*, No. Civ. A. 99-180, 2000 WL 175126 (E.D. Pa. Feb. 16, 2000)……………………………………………………………………....7

iv

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975)………………7, 8, 9, 10, 21

*Ingersoll v. Farmland Foods, Inc.*, No. 10-6046-CV-SJ-FJG, 2012 WL 12897285 (W.D. Mo. Feb. 9, 2012)………………………………………………………………….…….13

*Khoday v. Symantec Corp.*, No. CIV. 11-180 JRT/TNL, 2014 WL 1281600 (D. Minn. Mar. 13, 2014)…………………………………………………………………………………….…….15

*Lafollette v. Liberty Mut. Fire Ins. Co.*, No. 2:14-CV-04147-NKL, 2016 WL 4083478 (W.D. Mo. Aug. 1, 2016)………………………………………………….………………...15, 17

*Lane v. Lombardi*, No. 2:12–CV–4219–NKL, 2012 WL 5462932 (W.D.Mo. Nov. 8, 2012)..16

*Liddell by Liddell v. Bd. of Edu. Of City f St. Louis,* 126 F.3d 1049 (8th Cir. 1997)………....5

*Little Rock Sch. Dist. V Pulaski Cnty. Special Sch. Dist. No. 1,* 921 F.2d 1371 (8th Cir. 1990)……………………………………………………….…………………………….......5, 7

*Marshall v. Nat'l Football League*, No. 13-3581, 2015 WL 2402355 (8th Cir. May 21, 2015)………………………………………………………………….…………….…….8, 9

*Miracle v. Bullitt County, Ky.*, No. 05-130-C, 2008 WL 4974799 (W.D. Ky. Aug. 15, 2008)………………………………………………………….…………………...……..6

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)………………………..21

*In re Nasdaq Market-Makers Antitrust Litig.*, No. 94 CIV. 3996(RWS), 1997 WL 805062 (S.D.N.Y. Dec. 31, 1997)…………………………………………………………….……6

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999)……………………………..…………….…….7

*Paxton v. Union Nat'l Bank,* 688 F.2d 552 (8th Cir.1982)…………………………………...12

*Petrovic v Amoco Oil Co.,* 200 F.3d 1140 (8th Cir. 1999)…………………………...5, 9, 10, 21

*In re Prudential Ins. Co. of Am. Sales Practices Litig. Agent Actions,* 148 F.3d 283 (3d Cir. 1998)……………………………………………………………………….…….……...5, 6

*Rattray v. Woodbury County, Iowa,* 253 F.R.D. 444, 452 (N.D.Iowa 2008),………..……….12

*Roeser v. Best Buy Co.*, No. CIV. 13-1968 JRT/HB, 2015 WL 4094052 (D. Minn. July 7, 2015)……………………………………………………………….…………………...15

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992 (8th Cir. 2016)…...13, 17, 18

*Speer v. Cerner Corporation*, No. 14-0204-CV-W-FJG, 2016 WL 5444648 (W.D. Mo. Sept. 27,

2016)……………………………………………………………………………………18, 19

*In re Uponor, Inc., F1807 Plumbing Fittings Liability Litig.,* 716 F.3d 1057 (8th Cir. 2013)……………………………………………………………..…………………………7, 11

*U.S. Fid. & Guar. Co. v. Lord,* 585 F.2d 860 (8th Cir.1978)………………….………………16

*Van Horn v. Trickey,* 840 F.2d 604 (8th Cir. 1988)………………………………………………9

*Wal–Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541(2011)…………………………………………13

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.,* 396 F.3d 922 (8th Cir. 2005)……………8, 9

**Rules**

Fed. R. Civ. P. 23(a)…………………………………………………………......11, 12
Fed. R. Civ. P. 23(a)(1)……………………………………………………………...12
Fed. R. Civ. P. 23(a)(2)……………………………………………………………...13
Fed. R. Civ. P. 23(a)(3)……………………………………………………………...15
Fed. R. Civ. P. 23(a)(4)……………………………………………………………...16
Fed. R. Civ. P. 23(b)…………………………………………………………………...11
Fed. R. Civ. P. 23(b)(3)………………………………………………………11, 17
Fed. R. Civ. P. 23(e)…………………………………………………………5, 8, 21
Fed. R. Civ. P. 23(e)(1)……………………………………………………………...21
Fed. R. Civ. P. 23(e)(2)…………………………………………………………….6
Fed. R. Civ. P. 23(g)(1)……………………………………………………………21
Fed. R. Civ. P. 23(g)(1)(A)………………………………………………………20
Fed. R. Civ. P. 23(g)(1)(A)(i)(iv)………………………………………………20

**Other Authorities**

Manual for Complex Litigation (Third) § 30.41 (1995)………………………………………6
Newberg on Class Actions (4th ed. 2002) at § 11.41……………………………………………5
Newberg on Class Actions (4th ed. 2002) at § 11.24……………………………………………7

# BACKGROUND

This Memorandum is submitted in support of Preliminary Approval of the Settlement reached between the Named Plaintiffs, Andrew Tyler Foster, Jesse Rolfes, Jerry Chen, Clay Pittman, Timothy Braginton, Bruce Gibson, Jason Brooks, Kainoa Kaku, Alan Gibbs, Richard Morgan, Chris Drummond, Rob Dunkley, Travis Young. Chad Mingo, April Smith, Michael Ma, and Jim Richard, individually and on behalf of the putative Class (collectively, "Plaintiffs"), and Defendants L-3 Communications EOTech, Inc. and L-3 Communications Corporation (collectively, "Defendant" or L3 EOTech or EOTech) (collectively, the "Parties"). Defendant does not oppose this motion, but expressly disputes the factual allegations Plaintiffs make about the action, agrees that the settlement is fair, reasonable and adequate, but take no position on the value of the benefits conferred on the Class. A copy of the Settlement Agreement, together with exhibits, is attached as Exhibit 1.

The case involves allegations that hundreds of thousands of Holographic Weapons Sights ("HWS") sold to consumers did not perform as advertised, resulting in, among other things, inaccurate shot placement. Defendant denies these allegations. The proposed Settlement resolves the class action claims pending in this Court against Defendant and offers the following substantial benefits:

1. The option to return HWS purchased as far back as 2005 and receive a full refund of the purchase price up to the Manufacturer's Suggested Retail Price, ranging from $299 to $1,179, plus $15 for shipping and a $22.50 L3 EOTech product voucher; or

2. The option to keep the HWS and receive a cash benefit, which is potentially as much as $50, but no less than $25, depending how many people submit Valid Claims; or

3. The option to keep the HWS and receive a $100 voucher toward the purchase of a new L3 EOTech product; or

1

4. The receipt of a $22.50 voucher toward the purchase of a new L3 EOTech product for those class members who previously received a refund from L3 EOTech.

The terms of the Settlement are set forth in the Settlement Agreement and its accompanying exhibits; those terms govern, if approved. Moreover, the Settlement, if approved, will resolve all claims asserted against the Defendant in this action.

The proposed Settlement is the result of extensive arm's length negotiations, between the parties, including use of a third-party independent mediator and multiple mediations across the country; and it is fair, reasonable, and adequate, and deserves to be preliminarily approved. The Settlement confers substantial benefits to the Class in a case of considerable complexity, and in the face of hard-fought litigation by Defendant and the attendant risk of a defense verdict at trial and lengthy appeals. As such, Plaintiffs respectfully request that the Court enter an Order:

(1) preliminarily approving the Settlement of the claims against Defendant in this Action as set forth in the Settlement Agreement;

(2) certifying the class for purposes of Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure; and appointing Interim Class Counsel as Class Counsel; (*See* Docket 107, Order Appointing Interim Class Counsel)

(3) approving the form, substance and requirements of the proposed Notice and Summary Notice, and the methods for disseminating notice to Class Members concerning the Settlement. (The proposed Notice and Summary Notice are attached as Exhibits B and C to Ex 1 Settlement Agreement);

(4) setting the date for a Final Approval Hearing to be held approximately seventy-five (75) days from the date of entry of the Preliminary Approval Order, where the Court will consider Final Approval of the Settlement, as well as the amount of Attorneys' Fees and Litigation Expenses to award to Class Counsel, and the amount of any Service Awards to award to the Named Plaintiffs.

In determining whether to grant Preliminary Approval, the issue before the Court is whether the proposed Settlement is within the range of what might be found to be fair,

reasonable, and adequate, such that Notice of the proposed Settlement should be provided to the Class and that a hearing be scheduled for Final Approval. The proposed settlement represents a substantial benefit for the Class and should be granted preliminary approval.

A proposed Preliminary Approval Order is attached as Exhibit F to the Settlement Agreement, and filed concurrently herewith.

## BACKGROUND OF THE LITIGATION

Commencing in late 2015, a series of proposed class actions alleging violations of the Magnuson Moss Act, state common law, and various state consumer statutes were filed against Defendant in Missouri, Oregon and Michigan. In April 2016, counsel for the Michigan case filed a Motion before the Judicial Panel on Multi-District Litigation. Thereafter, the parties in the various cases conferred and agreed to consolidate the cases in Missouri. Michigan counsel withdrew the Motion for Transfer to the JPML on May 5, 2016, and dismissed their separate case in Michigan. Thereafter, the Court consolidated the cases and Plaintiffs filed a Second Amended Consolidated Complaint on September 19, 2016. Docket 101. On October 3, 2016, the Court entered an order appointing Timothy Dollar, Craig Heidemann, Adam Gonnelli, Bonner Walsh and Sharon Almonrode as Interim Lead Counsel.

Interim Lead Counsel conducted an in-depth investigation of the claims and underlying events relating to the Action. This investigation included, among other things, review and analysis of (i) publicly available information concerning the Defendant, including newspaper articles, online publications, analyst reports and commentary; (ii) regulatory filings made by Defendant with the United States Securities and Exchange Commission; (iii) on line information regarding the company, the product; and (iv) a review of information in *United States* v. *L-3 Communications EOTech, Inc.*, et al., 1:15-cv-09262, (SDNY) a case filed by the Department of Justice.

3

Plaintiffs allege in the Second Consolidated Class Action Complaint that EOTech sold Holographic Weapons Sights to consumers that Defendant advertised as having been tested in accordance with military standards. (Complaint, ¶ 8). Plaintiffs further alleged that EOTech Sights, contrary to Defendant's representations, could not properly operate in temperatures from -40 to 150F, were not free of "parallax" and were not fogproof. (Complaint, ¶ 33). Defendant has denied the claims and disputed these allegations, and is confident that it would prevail on its defenses. Plaintiffs sought relief in this action individually and on behalf of a nationwide Class and state subclasses (as defined herein) under the federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.; state consumer fraud statutes; breaches of express and implied warranties; and unjust enrichment. (Complaint, ¶ 12).

The Parties engaged in multiple discussions regarding the scope and nature of discovery, and multiple negotiation sessions and mediations before an independent mediator, which ultimately led to this Settlement. The Parties met in person with the Independent Mediator on four occasions, and had numerous telephonic conferences with the Mediator. Further, the Parties conducted continuing discussions and negotiations with and without the Mediator's participation.

At the time the Parties executed the Settlement Agreement, Plaintiffs and Interim Lead Counsel had a thorough understanding of the strengths and weaknesses of the Plaintiffs' claims and Defendant's potential defenses. In light of (i) the Settlement's substantial benefits; (ii) the cost and risks of continuing the litigation against the Defendant through trial and appeals; (iii) the fact that the proposed Settlement resulted from arm's length negotiations by an experienced and respected mediator; and (iv) the approval of the Settlement by the named Plaintiffs with the recommendation of the Court-appointed Interim Lead Counsel, it is respectfully submitted that

4

the Settlement warrants the Court's preliminary approval in order that notice can be provided to the Class.

**ARGUMENT**

## I. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A. Standards and Procedure: Class Action Settlements are Favored

Settlement is the preferred means of resolving litigation, particularly in the class action context. *Liddell by Liddell v. Bd. of Edu. Of City f St. Louis,* 126 F.3d 1049, 1056 (8th Cir. 1997). The Eighth Circuit has recognized that "strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor." *Petrovic v Amoco Oil Co.,* 200 F.3d 1140, 1148 (8th Cir. 1999) (citing *Little Rock Sch. Dist. V Pulaski Cnty. Special Sch. Dist. No.* 1, 921 F.2d 1371, 1388 (8th Cir. 1990)).

By supporting the settlement of complex class-action disputes, the judicial system can minimize litigation expenses on both sides, reduce the strain on scarce judicial resources and avoid the risks of trial to both parties. *In re Gen. Motors Corp. Pick-Up truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 784 (3d Cir. 1995) (citing cases); Newberg on Class Actions (4th ed. 2002 ("Newberg") at § 11.41.

The parties settling a class action brought in federal court must seek the approval of the settlement from the court. Fed. R. Civ. P. 23(e); *see also In re Prudential Ins. Co. of Am. Sales Practices Litig. Agent Actions ("Prudential"),* 148 F.3d 283, 307 (3d Cir. 1998) (cited by 2003 Amendments to Rule 23(e). Under Rule 23(e), preliminary approval is the first of a two-stage process where the Court must determine whether the settlement appears to fall within the range of reasonableness and whether the proposed notice plan meets the requirements of due process.

5

At this stage, the Parties request only preliminary approval of the Settlement. As courts considering preliminarily approving class action settlements have stated:

> In considering whether to grant preliminary approval to a class action settlement agreement, courts make a preliminary evaluation of the fairness of the settlement, prior to a hearing on notice. Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has not obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval should be granted.

*In re Nasdaq Market-Makers Antitrust Litig.*, No. 94 CIV. 3996(RWS), 1997 WL 805062, at *8 (S.D.N.Y. Dec. 31, 1997) (citing Manual for Complex Litigation (Third) § 30.41, at 237 (1995)); *see also Miracle v. Bullitt County, Ky.*, No. 05-130-C, 2008 WL 4974799, at *5 (W.D. Ky. Aug. 15, 2008) (citations omitted) (to same effect). Thus, the preliminary approval hearing "is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong v. Bd. of School Dirs. of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (footnote omitted).

Here, Plaintiffs request only that the Court take the first step in this process, granting preliminary approval of the proposed Settlement. This is warranted because the Settlement is certainly beneficial to the Class. This is particularly true in light of the complexities of this action and the substantial risks of continued litigation, including the risk of receiving less recovery if the action were to continue and the risk of delay and potential appeals.

### B. The Proposed Settlement, Which Was the Result of Arm's Length Negotiations Among Experienced Counsel, Is Presumptively Valid

The proposed Settlement is presumptively fair, reasonable and adequate, as it was reached after substantial investigation, discovery, disclosures and litigation, and it was the result of arm's length negotiations between experienced counsel.

6

In considering the motion currently before it, the Court must make a preliminary determination of whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Prudential*, 148 F.3d at 316. Although the decision to approve a proposed settlement is committed to the Court's sound discretion, courts attach "[a]n initial presumption of fairness . . . to a class settlement reached in arm's length negotiations between experienced and capable counsel after meaningful discovery." *Grier v. Chase Manhattan Auto. Fin. Co.*, No. Civ. A. 99-180, 2000 WL 175126, at *5 (E.D. Pa. Feb. 16, 2000); *see also Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975); Newberg § 11.24. "The view of the parties to the settlement must also be considered. . . .[C]lass counsel is experienced in this type of litigation. *See Armstrong*, 616 F.2d at 325 (7th Cir. 1980) (noting that the views of counsel are to be accorded deference)." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995).

Indeed, this Court should begin its analysis with the presumption that the proposed Settlement is fair and valid. Courts have held terms of a settlement are appropriate where the parties, represented by experienced counsel, have engaged in extensive negotiations at an appropriate stage in the litigation, when they can intelligently evaluate the strengths and weaknesses of the case and the propriety of the settlement. *See, e.g., In re Uponor, Inc., F1807 Plumbing Fittings Liability Litig.*, 716 F.3d 1057 (8th Cir. 2013) ("A settlement agreement is 'presumptively valid.'") (quoting *Little Rock Sch. Dist.*, 921 F.3d at 1391); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999) (courts "may take a settlement amount as good evidence of the maximum available if . . . parties of equal knowledge and negotiating skill agreed upon the figure through arm's length bargaining, unhindered by any considerations tugging against the interests of the parties ostensibly represented in the negotiation.").

The extent of the investigation and arm's length negotiations in this action has been more than sufficient to support a presumption of fairness of this Settlement. To be sure, Plaintiffs and Defendant are sophisticated in the practice of consumer class actions and they were capable of assessing the strengths and weaknesses of their positions, and balancing the potential value of Plaintiffs' claims against the substantial risks and expense of trial. The Court fully considered Plaintiffs' counsel's experience and qualifications prior to granting the motion to appoint interim class counsel, in which counsel detailed their qualifications (Dockets 81-87, 107). Further, settlement negotiations were lengthy and protracted, and conducted with the assistance of an experience class action mediator, Rodney A. Max of Upchurch Watson White & Max, who has conducted more than 4,000 mediations.

Where, as here, the parties are represented by experienced counsel and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference. *See DeBoer*, 64 F.3d at 1178 (views of counsel to be accorded deference) (citations omitted). The extent and nature of the negotiations conducted by both Class Counsel and Defense Counsel, their experience litigating complex class actions, and the arm's length nature of the settlement negotiations all weigh in favor of preliminary approval of the Settlement.

## C. The Proposed Settlement is Fair, Reasonable, and Adequate as Required Under Fed. R. Civ. P. 23(e)

In addition to evaluating the propriety of the negotiations, courts in the Eighth Circuit consider four factors in determining whether a proposed settlement is fair, reasonable, and adequate: (1) the merits of the plaintiff's case weighed against the settlement terms; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *Claxton v. Kum & Go, L.C.*, No. 6:14-CV-03385-MDH,

8

2015 WL 3648776 (W.D. Mo. June 11, 2015) (citing *Marshall v. Nat'l Football League*, No. 13-3581, 2015 WL 2402355, at *4 (8th Cir. May 21, 2015); *see also In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932-33 (8th Cir. 2005) (citing *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 124 (8th Cir. 1975)); *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988).

At the preliminary approval stage, the fourth factor is not yet relevant. At this stage, the three relevant factors all weigh in favor of granting preliminary approval of the Settlement.

### 1. The Settlement is Fair and Reasonable When Weighed Against the Strengths and Weaknesses of the Claims

"The single most important factor in determining whether a statement is fair, reasonable and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Marshall*, 2015 WL, at *4 (quoting *Van Horn*, 840 F.d at 607); *see also In re Wireless*, 396 F.3d at 933 (citing *Petrovic*, 200 F.3d at 1150). The Court must balance the risks and benefits of litigation against immediate recovery for the class members. *Grunin*, 513 F.2d at 124; *Petrovic¸* 200 F.3d at 1150. In evaluating this factor, however, "the Supreme Court has cautioned . . . that in determining whether to approve a settlement, courts should 'not decide the merits of the case or resolve unsettled legal questions.'" *In re Charter Communications, Inc., Securities Litig.*, No. MDL 1506, 4:02-CV-1186 CAS, 2005 WL 4045741 (E.D. Mo. June 30, 2005) (citing *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981); *see also Grunin*, 513 F.2d at 1123-24.

Here, the framework of the proposed Settlement will result in Class Members recovering a full refund if they so choose for HWS manufactured as far back as 2005. Absent this Settlement, however, Class Members' ultimate recovery of any amount of their losses is uncertain. Rather than a full refund, the ultimate finder of fact might have awarded a small

9

fraction of the purchase price or nothing at all. Further, Defendant had numerous defenses that would have raised complicated and difficult factual and legal questions at trial. Moreover, even if Plaintiffs were to prevail at trial, there is no doubt that Defendant would have appealed any judgment in favor of Plaintiffs as well as class certification. These substantial risks and inevitable delays and the strong possibility that Class Members could recover less or nothing at all as a result of a trial or subsequent appeal were seriously considered and balanced with the potential value of Class Members' claims in arriving at the Settlement.

### 2. Defendant's Financial Condition Supports Settlement

Courts also examine the compensation provided in the settlement and the defendant's ability to pay when determining whether the settlement is fair, reasonable and adequate. *See Petrovic*, 200 F.3d at 1152 (citing *Grunin*, 513 F.2d at 124). In this case, Defendant is a large defense contractor. There is no reason for concern that Defendant will be unable to provide the benefits outlined in the Settlement Agreement.

### 3. Risk and Expense of Further Litigation (*i.e.*, Trial and Any Subsequent Appeals) Weigh in Favor of Approval

Finally, the Court must evaluate whether the expense and complexity of further litigation weigh in favor of approving the settlement. Where, as here, continued litigation would result in the risk and expense of a lengthy trial and likely appeals of any pro-Plaintiff verdict, this factor weighs in favor of settlement approval. *Petrovic* at 1152 (prospect of lengthy trial and appeals militated in favor of class settlement).

The proposed Settlement does not give undue preferential treatment to the Class Representatives over other Class Members. The Class Representatives will receive the same level of benefits, based on the same Plan of Allocation methodology, as the Class Members

10

(Court-approved Service Awards for the substantial work performed by the Class Representatives aside).

As will be shown in the Final Approval process when Class Counsel file their application for Court approval of fees and expenses, Class Counsel will request a maximum of $10 Million for attorneys' fees and costs, which is a reasonable fee request given the scope of this litigation, the work already completed, the work that will be needed to finalize this Settlement, and the value provided to the class. Given the significant amount of work done in this case, the amount of risk and costs attendant with the litigation, trial, and likely future appeals, the substantial benefits provided to the Class Members, and the minimal percentage that $10 million represents as a ratio of the value of the benefit conferred on class members, the requested fees will be shown to fall well within the range of reasonableness. The fees will be paid separately by Defendant and will not in any way reduce the benefits to the Class. Thus, on preliminary evaluation, the Settlement is presumptively fair and should be preliminarily approved.

In short, all relevant factors weigh in favor of approving this settlement.

## II. CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE

In granting preliminary settlement approval, the Court should also certify the Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The proposed Settlement Class consists of:

> All United States residents who are the current owner of EOTech HWS Models 400, 502, 511, 512, 512 CAMO, 512.XBOW, 512.LBC1, 516, 517, 518, 551, 552, 552.XR, 552.LBC1, 552.LBC2, 553, 555, 555.USMC, 556, 557, 557.4XFTS, 557.4XFXD, 557.3X.FTS, 557.G23.FTS, 558, EXPS2, EXPS3, HHS I, HHS II, MPO II, MPO III, XPS2, XPS2-RF, XPS2-Z, XPS2-Z2, XPS2-300, and XPS3 that were manufactured between January 1, 2005, and November 1, 2016, and purchased for personal use on or before the Preliminary Approval Order date or who previously returned one of these HWS models to EOTech and received a refund.

11

The Eighth Circuit has acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See, e.g., In re Uponor, Inc.,* 716 F.3d at 1060 (affirming district court's certification of proposed classes for settlement purposes). A settlement class, like other certified classes, must satisfy all the requirements of Rule 23(a) and (b). *Galloway v. Kansas City Landsmen, LLC,* No. 4:11-1020-CV-W-DGK, 2012 WL 4862833, at *1 (W.D. Mo. Oct. 12, 2012) (citing *Elizabeth M. v. Montenez,* 458 F.3d 779, 786 (8th Cir.2006)). This Court has "broad discretion" to decide whether certification is appropriate. *Ebert v. Gen. Mills, Inc.,* 823 F.3d 472, 477 (8th Cir. 2016) (citations omitted).

## A. The Class Satisfies the Requirements of Rule 23(a)

Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

### 1. The Class Members Are Too Numerous to Be Joined

The first subdivision of Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "In considering this requirement, courts examine the number of persons in the proposed class and factors such as the nature of the action, the size of the individual claims, and the inconvenience of trying the individual claims." *Cromeans v. Morgan Keegan & Co.,* 303 F.R.D. 543, 551 (W.D. Mo. 2014) (citing *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 561 (8th Cir.1982)). "The Eighth Circuit has not established a rigid rule regarding the size of the proposed class that will satisfy this requirement." *Id.* (citing *Rattray v. Woodbury County, Iowa,* 253 F.R.D. 444, 452 (N.D. Iowa 2008), *order aff'd,* 614 F.3d 831 (8th Cir.2010)). That said, courts within the Eighth Circuit have frequently certified classes

12

of fewer than 100 members. *See, e.g., Boswell v. Panera Bread Co.*, 311 F.R.D. 515, 527 (E.D. Mo. 2015) ("the Court concludes that the proposed class of at least 61 individuals, who are geographically disbursed throughout numerous states, satisfies the numerosity requirement."); *Ebert v. Gen. Mills, Inc.*, No. CIV. 13–3341 DWF/JJK, 2015 WL 867994, at *9 (D.Minn. Feb. 27, 2015) ("In general, a putative class with over forty members meets [the numerosity] requirement.").

Here, the numerosity requirement is easily satisfied. According to sales information provided by the Defendant, the proposed nationwide Class is estimated to involve many hundred thousands of consumers. Because joining thousands of Class members who reside in a geographically dispersed area would be burdensome and expensive, and thus impracticable, the numerosity requirement of Rule 23(a)(1) is satisfied here.

## 2. There are Common Questions of Law and Fact

Rule 23(a)(2) requires that there be a question of law or fact common to the class. Fed. R. Civ. P. 23(a)(2); *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 998 (8th Cir. 2016). "The plaintiffs' 'claims must depend upon a common contention ... [which] must be of such a nature that it is capable of classwide resolution ...'" *Ingersoll v. Farmland Foods, Inc.*, No. 10-6046-CV-SJ-FJG, 2012 WL 12897285, at *6–7 (W.D. Mo. Feb. 9, 2012) (quoting *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011)). "In *Dukes,* the Court acknowledged that a single common question 'will do' for purposes of Rule 23(a)(2)." *Ebert*, 823 F.3d at 478 (quoting *Wal–Mart Stores, Inc.,* 131 S.Ct. at 2556).

Courts have applied the commonality requirement permissively in consumer class cases where, like here, defendants' uniform acts and omissions are at the center of the case. *See, e.g., Claxton,* 2015 WL 3648776, at *3 (identifying "multiple questions of law or fact common to the class[,]" including "whether Defendant misrepresented the gasoline sold; whether the

13

marketing/labeling of the gasoline was false, misleading, deceptive, or unfair; whether Defendant knew or should have known of the contamination prior to relevant time period; whether the sale of contaminated fuel constituted a breach of an express or implied warranty; etc.").

The "commonality" requirement based upon the complaint's allegations is satisfied here. The Complaint alleges that common legal and factual questions include, but are not limited to:

(a) whether Defendant advertised or marketed HWS in a way that was false or misleading;

(b) whether Defendant's statements about the operating temperature range of the Sights were false or misleading;

(c) whether Defendant's statements about the Sights being free of parallax were false or misleading;

(d) whether Defendant's statements about the Sights being fogproof were false or misleading;

(e) whether Defendant's statements about the accuracy and durability and the ability of the Sights to function in varied and harsh environments were false or misleading;

(f) whether, by the misconduct set forth in this complaint, Defendant has engaged in unfair, fraudulent or unlawful business practices;

(g) whether Defendant's conduct was committed knowingly or intentionally;

(h) whether Defendant breached its express warranties made to Plaintiffs and Class Members;

(i) whether Defendant breached its implied warranties made to Plaintiffs and the Class Members.;

(j) whether Defendant's conduct violates the Magnuson-Moss Act;

(k) whether Defendant's conduct constitutes violations of the state laws asserted herein;

(l) whether Defendant was unjustly enriched by its conduct;

(m) whether Class Members suffered an ascertainable loss as a result of the Defendant's misrepresentations; and

14

(n) whether, as a result of Defendant's misconduct as alleged herein, Plaintiffs and Class members are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

SCAC ¶ 103. Courts have consistently found such allegations of a common and consistent course of conduct to be the hallmark of consumer actions certified under Rule 23. *See, e.g., id.* at *7-8 (certifying class of purchasers of contaminated fuel); *Khoday v. Symantec Corp.*, No. CIV. 11-180 JRT/TNL, 2014 WL 1281600, at *1 (D. Minn. Mar. 13, 2014) (certifying class of purchasers of download insurance products); *Roeser v. Best Buy Co.*, No. CIV. 13-1968 JRT/HB, 2015 WL 4094052, at *1 (D. Minn. July 7, 2015) (certifying class of purchasers of Geek Squad's "Home Networking Made Simple" product).

Therefore, the commonality requirement is satisfied.

### 3. Plaintiffs' Claims are Typical of the Class

Rule 23(a)(3) requires that the claims of the class representatives be typical of those of the class. Fed. R. Civ. P. 23(a)(3). The requirement "is fairly easily met so long as other class members have claims similar to the named plaintiff." *Lafollette v. Liberty Mut. Fire Ins. Co.*, No. 2:14-CV-04147-NKL, 2016 WL 4083478, at *6 (W.D. Mo. Aug. 1, 2016) (quoting *DeBoer,* 64 F.3d at 1174 (8th Cir. 1995)). "In determining typicality, courts consider whether the named plaintiff's claim 'arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory.'" *Id.* (quoting *Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1540 (8th Cir. 1996)).

Here, based upon the complaint's allegations, the typicality requirement is satisfied, as the claims asserted by Lead Plaintiffs are based upon the same statements contained in Defendant's advertising, marketing, and other written materials for the HWS that form the basis of the claims of all Class members. *See* SCAC ¶¶ 13-33 (Lead Plaintiffs "relied on EOTech's representations about the accuracy, durability, and specific performance standards of the Sights."

15

Defendant, as noted, denies these allegations. Lead Plaintiffs, like the other putative Class members, seek to recover damages for claimed losses from the same representations made by Defendant throughout the Class Period. Plaintiffs allege that the impact of the Defendant's misrepresentations affected all members of the Class in the same manner. Since the alleged losses of both Lead Plaintiffs and the Class members arise out of the same course of conduct, Plaintiffs' claims are typical of the claims of the class. *Id.* (citing *Alpern,* 84 F.3d at 1540).

### 4. Lead Plaintiffs Will Fairly and Adequately Protect the Interest of the Class

Rule 23(a)(4) allows class certification if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy of representation is a twofold requirement—'(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class.'" *Claxton*, 2015 WL 3648776, at *4 (quoting *Lane v. Lombardi,* No. 2:12–CV–4219–NKL, 2012 WL 5462932, at *3 (W.D.Mo. Nov. 8, 2012), and *U.S. Fid. & Guar. Co. v. Lord,* 585 F.2d 860, 873 (8th Cir.1978)).

As to the first requirement, Lead Plaintiffs have retained counsel highly experienced in consumer class action litigation to prosecute their claims and the claims of the Class. Undersigned counsel have extensive experience litigating consumer class actions on behalf of injured consumers and have obtained significant recoveries in this area of the law. *See Motion for Appointment of Interim Lead Counsel,* Dockets 81-87; and Exhibit 2.

Further, Lead Plaintiffs have no interests that are antagonistic to those of the Class. As purchasers of Defendant's HWS who claimed to have suffered losses as a result of Defendant's alleged actions, Lead Plaintiffs' interests are directly aligned with the interests of all Class

members. Lead Plaintiffs and the absent Class members have precisely the same interest in proving their claims against Defendant,

Thus, Rule 23(a)(4)'s adequacy requirement is satisfied.

## B. Rule 23(b)(3) Is Satisfied

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) is "designed to secure judgments binding all class members save those who affirmatively elect[] to be excluded," where a class action will "achieve economies of time, effort, and expense, and promote.... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 614–15, 117 S. Ct. 2231, 2245, 138 L. Ed. 2d 689 (1997) (citation omitted).

The requirements of Rule 23(b)(3) are satisfied here given the Complaint's allegations:

### 1. Issues Common to the Class Predominate Over Individual Issues

"At the core of Rule 23(b)(3)'s predominance requirement is the issue of whether the defendant's liability to all plaintiffs may be established with common evidence.... If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Sandusky Wellness Ctr. LLC*, 821 F.3d at 998 (quoting *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010)). "The requirement is not satisfied if 'individual questions ... overwhelm the questions common to the class.'" *Lafollette*, 2016 WL 4083478, at *9 (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S.Ct. 1184, 1196 (2013)).

17

Here, Plaintiffs contend that common questions of fact and law predominate over individual questions because the central questions relating to Defendant's liability are common to the Class, *e.g.,* whether Defendant allegedly made materially false and/or misleading representations regarding the performance and functionality of the HWS, thereby injuring Lead Plaintiffs and the Class members who purchased the HWS during the Class Period. As a result, Plaintiffs believe that Defendant's liability to Lead Plaintiffs and the Class members may be established with common evidence: Defendant's advertising, marketing, and other written materials regarding the HWS. The same alleged course of conduct by the Defendant forms the basis of all Class members' claims and, Plaintiffs claim, resolution of the question whether the HWS are defective will apply to the whole class

Thus, Plaintiffs contend that the common questions of law and fact relating to the Defendant's liability affect all members of the Class and predominate over questions affecting individual members. *Sandusky Wellness Ctr., LLC*, 821 F.3d at 998 (defining the "core" of the predominance requirement as "whether the defendant's liability to all plaintiffs may be established with common evidence.").

### 2. Plaintiffs Believe A Class Action is Superior to Other Methods of Adjudication

Rule 23(b)(3) lists four factors relevant to the superiority analysis:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

18

Fed. R. Civ. P. 23(b)(3). "Rule 23(b)(3) is the best method of adjudication for situations ... in which the potential recovery is [sufficiently] small that litigation of a single claim is, as a general matter, hardly worth the cost and effort of litigation." *Speer v. Cerner Corporation*, No. 14-0204-CV-W-FJG, 2016 WL 5444648, at * 11 (W.D. Mo. Sept. 27, 2016) (citations omitted). *See also Amchem Prod., Inc.,* 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (citation omitted). Notably, with respect to manageability, "When confronted with a settlement only class, however, 'a district court need not inquire whether the case, if tried, would present intractable management problems.'" *Claxton*, 2015 WL 3648776, at *5 (quoting *Amchem Products, Inc.,* 521 U.S. at 620).

Here, class action treatment is superior to any other method for the fair and efficient adjudication of the controversy, particularly with respect to the proposed settlement. There is little incentive to individually control the prosecution because the settlement accounts for (1) Class members who previously received a refund from Defendant, who may be additionally entitled to a voucher toward the purchase of a new L3 EOTech product; (2) Class members who have not previously received a refund but would like to keep their HWS, who may be additionally entitled to a cash benefit or voucher; and (3) Class members who have not previously received a refund and want to return their HWS for a full refund.

In addition, the individual claims here are relatively small – the manufacturer's suggested retail price for the HWS ranges from $299 to $1,179. The Class members, therefore, lack incentive to bring individual actions. *Speer*, 2016 WL 5444648, at * 11; *Amchem Prod., Inc.,* 521 U.S. at 617).

Moreover, the Court has already consolidated separate actions against Defendant and determined it is desirable to concentrate litigation in this forum. A class action in this instance will avoid potential duplicative litigation and will save the Parties time and legal costs to adjudicate common legal and factual issues. *Amchem Prod., Inc.*, 521 U.S. at 614–15.

Therefore, Plaintiffs believe that a class action settlement here is superior to other available methods for fairly and efficiently adjudicating the controversy.

## C. Interim Lead Counsel Should be Appointed Class Counsel

Lead Plaintiff also requests that this Court appoint Dollar Burns & Becker, L.C.; Douglas Haun & Heidemann, P.C.; Walsh, L.L.C.; The Sultzer [1] Law Group P.C, Faruqi & Faruqi LLP and The Miller Law Firm, P.C. as class counsel in accordance with Fed. R. Civ. P. 23(g). That provision states that the court certifying a class must also "appoint class counsel." Class counsel must "fairly and adequately represent the interests of the Class." Fed. R. Civ. P. 23(g)(1)(A), (B). In appointing class counsel, the court must consider:

- the work counsel has done in identifying or investigating potential claims in the action;
- counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
- counsel's knowledge of the applicable law; and
- the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A)(i)(iv).

The firms moving for appointment as class counsel have an abundance of complex litigation experience, including numerous successful class actions. *See Firm Resumes (Dollar, Heideman, Walsh, Faruqi, Miller), Dockets 81-87; and Sultzer, Ex. 2.* Further, the firms have

---

[1] During the course of the litigation, counsel Adam Gonnelli left co-Interim Lead Counsel Faruqi & Faruqi to join the Sultzer Law Group. Both firms have actively worked on the case, and Plaintiffs request that the Sultzer Law Group be added to the Lead Counsel Group. A copy of the firm resume of the Sultzer Law Group is attached as Exhibit 2.

20

already undertaken a vigorous prosecution of this action, including conducting an initial investigation of the claims, coordinating the consolidation of this action, filing the SCAC, and negotiating settlement over the course of several mediation sessions, among other things. Through these efforts, undersigned counsel have demonstrated their commitment to this action, and they have invested the resources necessary to litigate the case to a successful conclusion. The firms' ample and notable records in litigating and achieving successful outcomes, and their commitment to this action to date, strongly indicate that these firms will adequately represent the interests of the Class.

Accordingly, under the considerations identified in Rule 23(g)(1), Lead Counsel submit that they have demonstrated they are qualified for appointment as class counsel.

## III. THE COURT SHOULD APPROVE THE FORM OF THE NOTICE AND PLAN FOR PROVIDING NOTICE TO THE CLASS

Fed. R. Civ. P. 23(e) also requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Settlement notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Petrovic*, 200 F.3d at 1153 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Put another way, notice need only satisfy the "broad 'reasonableness' standards imposed by due process." *Id.* (quoting *Grunin*, 513 F.2d at 121). There is no requirement that the notice provide "a complete source of information" or an exact amount of recovery for each class member. *Id.* (citing *DeBoer*, 64 F.3d at 1176).

These standards are unquestionably satisfied by the proposed Notice. The proposed Notice to which the Settling Parties have agreed, attached as Exhibit B to the Settlement Agreement, informs each eligible Class Member of the general provisions of the Settlement and

their right to object or appear at the fairness hearing, and the applicable deadlines. The Notice also defines the claims that are released as part of the Settlement, the amount of recovery, anticipated requests for attorneys' fees and costs as well as service awards for the Class Representatives, and it informs Class Members where to go for further information. The simple, easy-to-read Notice satisfies the reasonableness standard of Fed. R. Civ. P. 23(e)(1).

The notice plan will include publication in various print media directed to owners of firearms and class members, such as "Guns & Ammo" and "American Rifleman". *See Exhibit 3, Affidavit of Jeanne Finegan.* On the internet, notice in the form of banner advertisements will be placed on websites and e-newsletters directed to readers of firearms-related content will be distributed. *Id.* ¶ 21 . There will also be advertisements on digital advertising platforms and social media. *Id* ¶¶ *22-24.* The reach of the notice plan is anticipated to be at least 78% of the target demographic, and is the best notice program practicable. *Id.* ¶¶ 26, 33. The form and manner of providing notice to the Class satisfy the requirements of due process and Rule 23.

The parties have selected the Heffler Claims Group to prepare and disseminate notice and administer the claims. Heffler is a nationally recognized notice and claims administration firm, with extensive experience in administering claims of this type. *Id.* at Ex. A. Accordingly, Plaintiffs also request that the Court approve the appointment of Heffler Claims Group as Claims Administrator.

## IV. PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following schedule, with dates to be calculated in accordance with the Settlement Agreement:

| Dissemination of Notice | 7 days after entry of Preliminary Order Approval |
|---|---|

| Deadline for filing papers in support of Final Approval and Motion for Attorneys' Fees, Expenses, and Service Awards | 35 days prior to Final Approval Hearing |
|---|---|
| Deadline for Class Members to file Objections | 60 days after Notice Deadline |
| Deadline for filing any papers in further support of Final Approval, including replying to any Objections | 7 days prior to Final Approval Hearing |
| Final Approval Hearing | 75 days after Preliminary Approval (set at Court's convenience) |

## V.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant Preliminary Approval and enter an Order substantially in the form of Exhibit F attached to the Settlement Agreement.

Dated: February 13, 2017

Respectfully submitted,

**DOUGLAS HAUN & HEIDEMANN PC**

By_____/s/_____
Craig R. Heidemann
111 W. Broadway St.
Bolivar, MO 65613
Tel: (417) 326-5261
Fax: (417) 326-2845
Email: cheidemann@bolivarlaw.com

*Interim Co-Class Counsel and Proposed Co-Lead Counsel*

**DOLLAR BURNS & BECKER, L.C.**
Tim Dollar, Missouri Bar No. 33123
1100 Main Street, Suite 2600
Kansas City, MO 64105
Tel: (816) 876-2600
Fax: (816) 221-8763
Email: timd@dollar-law.com

*Proposed Co-Lead Counsel and Chair of the Plaintiffs' Leadership Team*

23

Sharon S. Almonrode (admitted *pro hac vice*)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Suite 300
Rochester, MI 48307
Tel: (248) 841-2200
Fax: (248) 652-2852
Email: ssa@millerlawpc.com

Bonner C. Walsh (admitted *pro hac vice*)
**WALSH, PLLC**
P.O. Box 7
Bly, Oregon 97622
Tel: (541) 359-2827
Fax: (866) 503-8206
Email: bonner@walshpllc.com

Adam R. Gonnelli (admitted *pro hac vice*)
**THE SULTZER LAW GROUP, P.C.**
280 Route 35, Suite 304
Red Bank, NJ 07701
Email: gonnellia@thesultzerlawgroup.com

Nadeem Faruqi (pending *pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, New York 10017
Tel: (212) 983-9330
Fax: (212) 983-9331
Email: nfaruqi@faruqilaw.com

*Proposed Co-Lead Counsel*