# Exhibit 3

## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

ANDREW TYLER FOSTER, et al.,

        Plaintiffs,

    vs.

L-3 COMMUNICATIONS CORPORATION,

        Defendant.

Case No. 6:15-cv-03519-BCW

Consolidated with:

Case No. 4:16-cv-00095-BCW
Case No. 6:16-cv-03109-BCW
Case No. 4:16-cv-00438-BCW
Case No. 4:16-cv-00439-BCW

---

## DECLARATION OF JEANNE C. FINEGAN CONCERNING PROPOSED
## CLASS MEMBER NOTIFICATION

I, JEANNE C. FINEGAN declare as follows:

### INTRODUCTION

1.     I am President and Chief Media Officer of HF Media, LLC, a division of Heffler Claims Group which specializes in the design and implementation of court approved legal notice plans. This Declaration is based upon my personal knowledge as well as information provided to me by my associates and staff, including information reasonably relied upon in the fields of advertising media and communications.

2.     Heffler Claims Group LLC ("Heffler") and HF Media, LLC ("HF Media") have been engaged by Defendant L-3 Communications Corporation, now doing business as L3 Technologies, Inc., as the Settlement and Notice Administrator to develop and implement a proposed legal notice program ("Notice Plan") for the above-captioned case. This program is designed with a contemporary approach to notice taking into consideration traditional, digital, social and mobile media. The basis for the assumptions

articulated below includes research from reasonably relied upon media research data including GfK MediaMark Research and Intelligence LLC[1] ("MRI"), comScore[2] and Telmar[3].

3.      This Declaration describes my experience in designing and implementing notices and notice plans, as well as my credentials to opine on the overall adequacy of the notice effort. This Declaration will also describe the proposed Notice Plan and address why this proposed Notice Plan is consistent with other similar court-approved best notice practicable notice plans. The Notice Plan, in my opinion, which is estimated to reach 78 percent of rifle owners, on average 6 times, is consistent with other similar notice plans approved by various courts as the "best notice practicable" meeting the requirement of Fed. Civ. P. 23(c)(2)(B) and the Federal Judicial Center ("FJC") guidelines[4] for adequate notice.

## QUALIFICATIONS

4.      I have more 30 years of experience in the fields of communications and advertising. I am the only Notice Expert accredited in Public Relations (APR) by the Universal Accreditation Board, a program administered by the Public Relations Society of America. I have provided testimony before Congress on issues of notice. I also have lectured, published and been cited extensively on various aspects of legal noticing, product recall and crisis communications and have served the Consumer Product Safety Commission (CPSC) as an expert to determine ways in which the CPSC can increase the effectiveness of its product recall campaigns.

5.      I have served as an expert, directly responsible for the design and

---

[1] GfK MRI's *Survey of the American Consumer*® is the industry standard for magazine audience ratings in the U.S. and is used in the majority of media and marketing agencies in the country. MRI provides comprehensive reports on demographic, lifestyle, product usage and media exposure. http://www.mri.gfk.com/

[2] comScore is a global Internet information provider on which leading companies and advertising agencies rely for consumer behavior insight and Internet usage data. comScore maintains a proprietary database of more than 2 million consumers who have given comScore permission to monitor their browsing and transaction behavior, including online and offline purchasing. This data includes and fuses 1st party, (website data), second party (data shared by websites for marketing purposes) and 3rd party data, tied to offline purchasing behavior. www.comscore.com/.

[3] Telmar provides a cross tabulation platform to provide reach and frequency analysis.

[4] Notice Checklist and Plain Language Guide (2010) ("Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide").

implementation of hundreds of class action notice programs, some of which are the largest and most complex programs ever implemented in both the United States and in Canada. My work includes a wide range of class actions and regulatory and consumer matters that include product liability, construction defect, antitrust, asbestos, medical pharmaceutical, human rights, civil rights, telecommunications, media, environmental, securities, banking, insurance and bankruptcy.

6.      I have been at the forefront of modern notice, including plain language as noted in a RAND study[5], and importantly, integrating digital media and social media into court approved legal notice programs such as:

- *Carter v Forjas Taurus S.S., Taurus International Manufacturing*, Inc., Case No. 1:13-CV-24583 PAS (S.D. Fl. 2016);
- *In re: Blue Buffalo Marketing and Sales Practices Litigation*, No. 14-md-02562-RWS (ED Mo. 2016);
- *In re: TracFone Unlimited Service Plan Litigation, No. C-13-3440 EMC (*N.D.CA 2015)*, and;
- *In re: Skechers Toning Shoes Products Liability Litigation*, No. 3:11-MD-2308-TBR (W.D. Ky. 2012).

7.      Courts have repeatedly recognized my work as an expert.  For example, in: **Carter v Forjas Taurus S.S., Taurus International Manufacturing, Inc.,** Case No. 1:13-CV-24583 PAS (S.D. Fl. 2016). In her Final Order and Judgment Granting Plaintiffs Motion for Final Approval of Class Action Settlement, the Honorable Patricia Seitz stated:

> *"The Court considered the extensive experience of Jeanne C. Finegan and the notice program she developed. ...There is no national firearms registry and Taurus sale records do not provide names and addresses of the ultimate purchasers... Thus the form and method used for notifying Class Members of the terms of the Settlement was the best notice practicable. ...The court-approved notice plan used peer-accepted national research to identify the optimal traditional, online, mobile and social media platforms to reach the Settlement Class Members."*

Additionally, in January 20, 2016, Transcript of Class Notice Hearing, p. 5 Judge Seitz praised Ms. Finegan, noting:

---

5 Deborah R. Hensler et al., CLASS ACTION DILEMAS, PURSUING PUBLIC GOALS FOR PRIVATE GAIN.  RAND (2000).

> *"I would like to compliment Ms. Finegan and her company because I was quite impressed with the scope and the effort of communicating with the Class."*

**In Re: Blue Buffalo Company, Ltd., Marketing and Sales Practices Litigation**, Case No. 4:14-MD-2562 RWS (E.D. Mo. 2015), (Hearing for Final Approval, May 19, 2016 transcript p. 49). During the Hearing for Final Approval, the Honorable Rodney Sippel said:

> *"It is my finding that notice was sufficiently provided to class members in the manner directed in my preliminary approval order and that notice met all applicable requirements of due process and any other applicable law and considerations."*

**In re: Skechers Toning Shoes Products Liability Litigation**, No. 3:11-MD-2308-TBR (W.D. Ky. 2012). In his Final Order and Judgment granting the Motion for Preliminary Approval of Settlement, the Honorable Thomas B. Russell stated:

> *"... The comprehensive nature of the class notice leaves little doubt that, upon receipt, class members will be able to make an informed and intelligent decision about participating in the settlement."*

**Quinn v. Walgreen Co., Wal-Mart Stores Inc.,** 7:12 CV-8187-VB (NYSD) (Jt Hearing for Final App, March. 5, 2015, transcript page 40-41). During the Hearing on Final Approval of Class Action, the Honorable Vincent L. Briccetti gave accolades to Ms. Finegan, noting:

> *"The notice plan was the best practicable under the circumstances. ... [and] the proof is in the pudding. ... So the notice has reached a lot of people and a lot of people have made claims."*

**DeHoyos, et al. v. Allstate Ins. Co.,** No. SA-01-CA-1010 (W.D.Tx. 2001). In the Amended Final Order and Judgment Approving Class Action Settlement, the Honorable Fred Biery stated:

> *"[T]he undisputed evidence shows the notice program in this case was developed and implemented by a nationally recognized expert in class action notice programs. ... This program was vigorous and specifically structured to reach the African-American and Hispanic class members. Additionally, the program was based on a scientific methodology which is used throughout the advertising industry and which has been routinely embraced routinely [sic] by the Courts. Specifically, in order to reach the identified targets directly and efficiently, the notice program utilized a multi-layered approach which included national*

*magizines; magazines specifically appropriate to the targeted audiences; and newspapers in both English and Spanish."*

8.     I have published extensively on various aspects of legal noticing, including the following publications and articles:

  a)  Author, *Notice 2017: Best Practice Takeaways to Successfully Navigating Online Complexity*, LinkedIn: www.linkedin.com/in/jeanne-finegan-spr-7112341b /, (January 2017).

  b)  Co-Author, "Modern Notice Requirements Through the Lens of Eisen and Mullane" – *Bloomberg BNA Class Action Litigation Report*. 17 CLASS 1077. (October 14, 2016).

  c)  Author, "Think All Internet Impressions are the Same? Think Again" – *Law360.com*. New York (March 16, 2016).

  d)  Author, "Why Class Members Should See An Online Ad More Than Once" – *Law360.com*. New York (December 3, 2015).

  e)  Author, "Being 'Media-Relevant' — What It Means And Why It Matters" - *Law360.com*. New York (September 11, 2013, 2:50 PM ET).

  f)  Co-Author, "New Media Creates New Expectations for Bankruptcy Notice Program." *ABI Journal*. Vol. XXX. No 9. November 2011.

  g)  Quoted Expert, "Effective Class Action Notice Promotes Access to Justice: Insight from a New U.S. Federal Judicial Center Checklist" *Canadian Supreme Court Law Review*. (2011). 53 S.C.L.R. (2d).

  h)  Co-Author, with Hon. Dickran Tevrizian, "Expert Opinion: It's More Than Just a Report…Why Qualified Legal Experts Are Needed to Navigate the Changing Media Landscape," *BNA Class Action Litigation Report*. 12 CLASS 464. 5/27/11.

  i)  Co-Author, with Hon. Dickran Tevrizian, "Your Insight: It's More Than Just a Report…Why Qualified Legal Experts Are Needed to

Navigate the Changing Media Landscape," *TXLR*. Vol. 26. No. 21. 5/26/2011.

j) Author, "Five Key Considerations for a Successful International Notice Program," *BNA Class Action Litigation Report*. 4/9/10 Vol. 11. No. 7 p. 343.

k) Quoted: "Technology Trends Pose Novel Notification Issues for Class Litigators," *BNA Electronic Commerce and Law Report*. 15. ECLR 109. 1/27/10.

l) Author, "Legal Notice: R U ready 2 adapt?" *BNA Class Action Litigation Report*. Vol. 10. No. 14. 7/24/2009. pp. 702-703.

m) Author, "On Demand Media Could Change the Future of Best Practicable Notice", *BNA Class Action Litigation Report*. Vol. 9. No. 7. 4/11/2008. pp. 307-310.

n) Quoted in, "Warranty Conference: Globalization of Warranty and Legal Aspects of Extended Warranty," *Warranty Week*. February 28. 2007. www.warrantyweek.com/archive/ww20070228.html.

o) Co-Author, "Approaches to Notice in State Court Class Actions," *For The Defense*. Vol. 45. No. 11. November, 2003.

p) Author, "The Web Offers Near, Real-Time Cost Efficient Notice," *American Bankruptcy Institute Journal*. Vol. XXII. No. 5. 2003.

q) Author, "Determining Adequate Notice in Rule 23 Actions," *For The Defense*. Vol. 44. No. 9. September, 2002.

r) Co-Author, "The Electronic Nature of Legal Noticing," *American Bankruptcy Institute Journal*. Vol. XXI. No. 3. April, 2002.

s) Author, "Three Important Mantras for CEO's and Risk Managers in 2002," *International Risk Management Institute*. irmi.com/. January, 2002.

t)  Co-Author, "Used the Bat Signal Lately," *The National Law Journal*. Special Litigation Section. February 19, 2001.

u)  Author, "How Much is Enough Notice," *Dispute Resolution Alert*. Vol. 1. No. 6. March, 2001.

v)  Author, "Monitoring the Internet Buzz," *The Risk Report*. Vol. XXIII. No. 5. January, 2001.

w)  Author, "High-Profile Product Recalls Need More Than the Bat Signal," *International Risk Management Institute*. irmi.com/. July 2001.

x)  Author, "The Great Debate - How Much is Enough Legal Notice?" *American Bar Association -- Class Actions and Derivatives Suits Newsletter*. Winter 1999.

y)  Author, "What are the best practicable methods to give notice?" Georgetown University Law Center Mass Tort Litigation Institute, CLE White Paper: Dispelling the communications myth -- A notice disseminated is a notice communicated, November 1, 2001.

9.      I have lectured or presented extensively on various aspects of legal noticing.  A sample list includes the following:

a)  Miami Law Class Action & Complex Litigation Forum, Faculty Panelist,  "Settlement and Resolution of Class Actions," Miami, FL December 2, 2016.

b)  The Knowledge Group, Faculty Panelist, "Class Action Settlements: Hot Topics 2016 and Beyond," Live Webcast, www.theknowledgegroup.org,  October 2016.

c)  ABA National Symposium, Faculty Panelist, "Ethical Considerations in Settling Class Actions," New Orleans, LA March 2016.

d) SF Banking Attorney Association, Speaker, "How a Class Action Notice can Make or Break your Client's Settlement," San Francisco, CA May 2015.

e) Perrin Class Action Conference, Faculty Panelist, "Being Media Relevant, What it Means and Why It Maters – The Social Media Evolution: Trends Challenges and Opportunities," Chicago, IL May 2015

f) Bridgeport Continuing Ed. Faculty Panelist, "Media Relevant in the Class Notice Context," April 2014.

g) CASD 5th Annual Speaker, "The Impact of Social Media on Class Action Notice." Consumer Attorneys of San Diego Class Action Symposium, San Diego, California, September 2012.

h) Law Seminars International, Speaker, "Class Action Notice: Rules and Statutes Governing FRCP (b)(3) Best Practicable… What constitutes a best practicable notice? What practitioners and courts should expect in the new era of online and social media." Chicago, IL, October 2011.

i) CLE International, Faculty Panelist, Building a Workable Settlement Structure, CLE International, San Francisco, California May, 2011.

j) Consumer Attorneys of San Diego (CASD), Faculty Panelist, "21st Century Class Notice and Outreach," 2nd Annual Class Action Symposium CASD Symposium, San Diego, California, October 2010.

k) Consumer Attorneys of San Diego (CASD), Faculty Panelist, "The Future of Notice," 2nd Annual Class Action Symposium CASD Symposium, San Diego, California, October 2009.

l) American Bar Association, Speaker, 2008 Annual Meeting, "Practical Advice for Class Action Settlements: The Future of Notice In the

United States and Internationally – Meeting the Best Practicable Standard."

m) American Bar Association, Section of Business Law Business and Corporate Litigation Committee – Class and Derivative Actions Subcommittee, New York, NY, August 2008.

n) Faculty Panelist, Women Lawyers Association of Los Angeles (WLALA) CLE Presentation, "The Anatomy of a Class Action." Los Angeles, CA, February 2008.

o) Faculty Panelist, Practicing Law Institute (PLI) CLE Presentation, 11th Annual Consumer Financial Services Litigation. Presentation: Class Action Settlement Structures -- "Evolving Notice Standards in the Internet Age." New York/Boston (simulcast) March, 2006; Chicago, April, 2006; and San Francisco, May 2006.

p) Expert Panelist, U.S. Consumer Product Safety Commission. I was the only legal notice expert invited to participate as an expert to the Consumer Product Safety Commission to discuss ways in which the CPSC could enhance and measure the recall process. As an expert panelist, I discussed how the CPSC could better motivate consumers to take action on recalls and how companies could scientifically measure and defend their outreach efforts. Bethesda, MD, September 2003.

q) Expert Speaker, American Bar Association. Presentation: "How to Bullet-Proof Notice Programs and What Communication Barriers Present Due Process Concerns in Legal Notice," ABA Litigation Section Committee on Class Actions & Derivative Suits, Chicago, August 6, 2001.

10. A comprehensive description of my credentials and experience that qualify me to provide expert opinions on the adequacy of class action notice plans is attached as **Exhibit A**.

## NOTICE PLAN METHODOLOGY

11.     To appropriately design and target the publication component of the Notice Plan, HF Media utilized a methodology accepted by the advertising industry and embraced by courts in the United States.

12.     We are guided by well-established principles of communication and utilize best-in-class nationally syndicated media research data provided by MRI, online measurement currency comScore, and Telmar among others, to provide media consumption habits and audience delivery verification of the potentially affected population.  These data resources are used by advertising agencies nationwide as the basis to select the most appropriate media to reach specific target audiences. These research reports are instrumental in our selection of media channels and outlets for determining the estimated net audience reached through this Notice Plan.  Specifically, this research identifies which media channels are favored by the target audience (i.e., potential Class Members who are rifle owners) by considering browsing behaviors on the internet, social media channels that are used, and which magazines Class Members are reading.

13.     While traditional media [6] is typically purchased based on both demographic (i.e., age, gender, ethnicity, income, education) and psychographic (i.e., lifestyle, product and brand preference, media usage, and media definition) characteristics, online media, including internet and mobile and social media, may be purchased through more granular target audience characteristics.  As a result, we are applying the most sophisticated and modern media relevant approach to audience targeting, similar to that which is used by large brands to select the most appropriate digital and social media platforms to communicate with customers and market products.

14.     By utilizing the best-in-class media research tools, identified in paragraphs 2 and 12, we can create target audience characteristics or segments, and then select the most appropriate media and communication methods to best reach them.

15.     Based on these tools, we are able to measure and report to the Court the

---

[6]Traditional media is a reference to pre-internet media: magazine, newspaper, terrestrial radio, and broadcast and cable television.

net percentage of the target Class that will be reached by the notice component and how many times the target audience had the opportunity to see the message. In advertising, this is commonly referred to as a "Reach and Frequency" analysis, where "Reach" refers to the estimated percentage of the unduplicated audience (across media channels) exposed to the campaign, and "Frequency" refers to how many times, on average, the target audience had the opportunity to see the message.

16.      These calculations are used by advertising and communications firms worldwide, and have become a critical element to help provide the basis for determining adequacy of notice in class actions.

## NOTICE PLAN

17.      Pursuant to the Settlement Agreement, the Class is defined as:

*All U.S. residents who are current owners of one or more Qualifying Holographic Weapon Sights that were manufactured between January 1, 2005 and November 1, 2016, and purchased for personal use on or before Preliminary Approval Order date or who previously returned one of these HWS models to EOTech and received a refund. Specifically excluded from the Class are Defendant and any of Defendant's subsidiaries, divisions, affiliates, officers, employees and directors, as well as any assigned judges, and members of their families within the first degree of consanguinity, all members of the Court's staff, Plaintiffs' lawyers in this lawsuit; all Governmental entities and residents of one of the U.S. territories.*

## Media Selection

18.      In order to appropriately identify class members in this case, owners who are purchasers EOTech Holographic sites, and select an appropriate mix of media channels, we have taken into consideration the defendant's marketing information, input from plaintiff counsel and demographic and media use research from MRI[7] and comScore[8]. Based on this information, we are using a media definition of rifle owners.

_____
[7] MRI Fall 2015
[8] comScore June 2016

Further, media use key findings include: 75 percent are users of magazine, 87 percent are online, and 74 percent use social media, with nearly 60 percent using Facebook. Given these characteristics, multiple media channels are required to effectively reach this audience. Based on this information, we have selected the media below.

## Magazine

19.　　Magazines are now commonly referred to as traditional media. The magazines below were selected based on the highest coverage and index[9] against the target audience (rifle owner) characteristics. Additionally, specific titles including *American Rifleman* and *Guns & Ammo* were selected based on their previous inclusion in EOTech marketing and advertising campaigns.



NRA's *American Rifleman* is the monthly flagship magazine of the NRA, with an estimated circulation of 2,077,683 and approximately 5,419,000 readers of the print edition. The summary notice will be published once as a half-page, black and white ad.



*America's 1ˢᵗ Freedom* has a circulation of 661,206 for the print edition. A one-half page, black and white ad will be published once in the national edition of this magazine.

---

[9] Index is a media metric that describes a target audience's inclination to use a given outlet. An index over 100 suggests a target population's inclination to use a medium to a greater degree than the rest of the population. For example, an index of 157 would mean that the target is 57 percent more likely than the rest of the population to use a medium.



*Guns & Ammo* has a circulation of 420,645 with approximately 9,951,000 readers of the print edition. A one-half page, black and white ad will be published once in the national edition of this magazine.



*American Hunter* has a circulation of 951,289 with approximately 4,147,000 readers of the print edition. A one-half page, black and white ad will be published once in the national edition of this magazine.



*Sports Illustrated* has a circulation of 3,057,042 with approximately 18,237,000 readers of the print edition. A one-half page, black and white ad will be published once in the national edition of this magazine.



*Swat* has a circulation of 48,240 for the print edition with approximately 1,967,420 readers of the print edition. A one-half page, black and white ad will be published once in the national edition of this magazine.

### INTERNET AND SOCIAL MEDIA

20.      According to MRI data, 87 percent of rifle owners are online, which makes online notice in this case particularly important.

21.      This program takes a unique and highly effective layered approach to online notice:

a) Online banner ads will appear *specifically* on 10 highly relevant gun enthusiast, shooting and outdoor sports websites. Based on available inventory at the time of the media buy, ads on these sites will appear in prominent positions such as on the home page, as page take-overs[10] or as static ads. Websites include:

- *Grand View Outdoors Group - Bowhunting World, Archery Business, Predator Xtreme, Whitetail Journey, Tactical Retailer, Shooting Sports Retailer and AR Guns & Hunting*
- *Outdoor Sportsman Group -* includes *Outdoor Channel, In-Fisherman, Fly-Fisherman, Game & Fish, Florida Sportsman, Bass Fan, World Fishing Network, Petersen's Bowhunting, Wildfowl, Petersen's Hunting, Sportsman Channel, Gun Dog, North American Whitetail, Bowhunter, Shooting Times, Rifleshooter, Firearms News, Handguns, Guns & Ammo* and *Sportsmen Vote*
- *Field&Stream.com*
- *OutdoorLife.com*
- *AR15.com*
- *HKPro.com*
- *GunBroker.com*
- *GunsAmerica.com*
- *SilencerTalk.com and*
- *TheHighRoad.org*

b) Online display banner ads will appear in the e-newsletters[11] of seven highly relevant digital magazines. Inclusion based on availability at time of placement. Newsletters may include:

- *Field & Stream*
- *Grand View Outdoors[12]*
- *Hunting*
- *Outdoor Life*

---

[10] With homepage takeovers, advertisers usually have a 100% share of voice on the homepage as no other ad is shown.

[11] The combined total circulation of the biweekly e-newsletters is 539,000.
[12] Includes *Bowhunting World, Archery Business, Predator Xtreme, Whitetail Journey, Tactical Retailer, Shooting Sports Retailer and AR Guns & Hunting*

- *Rifle Shooter*
- *Shooting Times*
- *Firearms News*

22.     Further, as part of a programmatic strategy[13], online display banner ads will be served on three digital networks including *Conversant, Google Display, and Xaxis* each comprised of many hundreds of individual website partners. The display banners will provide information for visitors to self-identify as potential Class Members, where they may "click" on the banner and then link directly to the official website for more information and where they may register online, file a claim, or seek additional information including frequently asked questions and important court deadlines and documents.

23.     Multi-faceted online targeting parameters:

a)     **Contextual targeting:** Online display banners that appear on websites that are contextually relevant to the audience, such as website with shooting, weapons, weapon accessories, etc.

b)     **Demographic Targeting:** According to MRI data, nearly 75 percent of rifle purchasers are over the age of 35 and over 70 percent are male[14].

c)     **Audience targeting:** Online display banners will target known gun owners along with those in the military or protective services.

d)     **Search/Keyword targeting:** Ads to appear in Google search results based on identified search terms and keywords.

e)     **Retargeting:** Banners will also be retargeted (served again as reminders) to people who previously visited the website but did not file a claim, or abandoned the claim prior to submission. Banner ads will continue to be served, for a short time, to those individuals as a

---

[13] Programmatic Buying describes online display advertising that is aggregated, booked, flighted, analyzed and optimized via demand side software interfaces and algorithms. While it includes real time buying ("RTB") it also includes non RTB methods and buy types such as Facebook Ads. Programmatic also implies the use of multi-sourced data signals to inform targeting and optimization decisions.

[14] Importantly, while this program is appropriately weighted to a male target, it will also reach a female audience within the same demographic as well as reaching older and younger age demographics.

reminder.

  f) **Whitelisted News and Weather:** Importantly, banner ads, will be served on a whitelist[15] of over 200 premium national news and weather websites such as cnn.com, fox.com, accuweather.com, and weather.com. As an added layer, the program will run in local markets across the country on newspaper, television and radio news sites.

24. Finally, banner ads will appear on social media platforms including Facebook, Instagram and Twitter, specifically targeting users who have engaged with content and groups related to Scopes, Rifles, Accessories, Firearms, NRA, Second Amendment and more. In total the online outreach will serve over 173,600,000 impressions.

25. Privacy: As part of our retargeting effort, we are also mindful of privacy considerations. Therefore, an *AdChoices[16]*  (privacy) icon will be placed on all ads, where available, for those who choose not to be provided with continued reminders.

## AUDIENCE DELIVERY AND MEDIA MEASURMENT

26. When calculating the estimated online audience delivery, this proposed notice program has taken into consideration potential online audience duplication factors in order to provide a conservative target audience reach — in particular, that each person may represent multiple unique users because they have multiple cookies; for example: at home and work each person may use multiple browsers (Firefox, Safari, Chrome) and use multiple devices (laptop, computer, and tablet). HF Media has taken these factors into consideration and is reporting the target audience reach as a net unduplicated statistic, based on reach and frequency validation software from comScore. Further, this program leverages a comprehensive array of campaign validation measures to ensure that online ads are served in the highest quality digital environment. This is accomplished through software and technology including, among others, Integral Ad Sciences, ("IAS") and

---

[15] Whitelisted sites are specifically selected web properties on which an advertiser will permit their ads to be placed.

[16] The AdChoices Icon is a sign for consumer information and control for interest-based advertising (which is also referred to as "online behavioral advertising." The AdChoices Icon gives browsers the ability to control whether they receive interest-based advertising and from which companies.

Concerning Proposed Class Member Notification

16

Case 6:15-cv-03519-BCW Document 122-10 Filed 02/13/17 Page 17 of 47

Double Verify, which scans web pages in milliseconds to protect against ad fraud, bot traffic, etc.

## CAFA NOTIFICATION

27.     In compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1715(b) Heffler will provide notice of the proposed settlement by First Class Certified U.S. Mail to all 50 state Attorneys General, the U.S. Attorney General, the acting ATF Director and appropriate U.S. Acting Territorial Attorneys General.

## DIRECT MAIL

28.     I understand that EOTech will provide the names and addresses of reasonably ascertainable customers who previously returned EOTech's sights and received a refund. EOTech will also provide any reliable information it has on other purchasers within the Class Definition. I further understand that because EOTech historically sold through distributors and retailers, rather than directly to consumers, it has only limited, often incomplete, records of product registrations that can identify members of the Class.

29.     Upon receipt of EOTech's data, Heffler will perform an analysis of the class records to determine the quality of the data and identify the unique individual records. Each record will be assigned an identification number that is used for tracking purposes.

30.     Prior to mailing the Notice to Class Members, Heffler will update all Class Members mailing addresses utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service ("the USPS"). The NCOA contains change of address notifications filed with the USPS. In the event any individual had filed a USPS change of address notification, the address listed with NCOA will be used in connection with the mailing of any Notices sent via first class U.S. Mail. A complete report of the direct mail results will be reported to this Court upon completion of the notice program.

## OFFICIAL SETTLEMENT WEBSITE

31.     An official website will be established and optimized for mobile visitors so that information loads on their mobile device quickly. The website will serve as a

landing page for the online advertising, where Class Members may continue to obtain further information about the class action, their rights, and related information, including the Settlement Agreement, Court Orders, and Plaintiffs' Motion for Approval of Fees, Expenses, and Incentive Awards. The website address will be prominently displayed in the publication notice and is accessible 24-hours a day, 7-days a week.

## TOLL FREE HELP LINE

32.     A toll free telephone helpline will be established and maintained by Heffler. It will be available 24-hours a day where callers may obtain information about the class action.

## CONCLUSION

33.     In my opinion, the outreach efforts described above reflect a particularly appropriate, highly targeted and contemporary way to provide notice to this class, which is reasonably calculated to provide notice that is consistent with best practicable court-approved notice plans in similar matters and is consistent with the Federal Judicial Center's guidelines concerning appropriate reach. Importantly, this program was reasonably calculated using appropriate tools and methodology accepted in the advertising industry to effectively reach an estimated 78 percent of rifle owners, with an average frequency of 6 times.

34.     I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on February 10, 2017, in Tigard, Oregon.

_Jeanne C. Finegan_
_____
Jeanne C. Finegan, APR

# Exhibit A



# JEANNE C. FINEGAN, APR

### BIOGRAPHY



Jeanne Finegan, APR, is President and Chief Media Officer of HF Media, LLC. (a division of Heffler Claims Group), named by *Diversity Journal* as one of the "Top 100 Women Worth Watching," has more than 30 years of communications and advertising experience and is a distinguished legal notice and communications expert. During her tenure, she has planned and implemented nearly 1,000 high profile, complex legal notice communication programs. She is a recognized notice expert in both the United States and in Canada, with extensive international notice experience spanning more than 140 countries and over 40 languages.

Ms. Finegan has lectured, published and has been cited extensively on various aspects of legal noticing, product recall and crisis communications. She has served the Consumer Product Safety Commission (CPSC) as an expert to determine ways in which the Commission can increase the effectiveness of its product recall campaigns. Further, she has planned and implemented large-scale government enforcement notice programs for the Federal Trade Commission (FTC) and the Securities and Exchange Commission (SEC).

Ms. Finegan is accredited in Public Relations (APR) by the Universal Accreditation Board, which is a program administered by the Public Relations Society of America (PRSA), and is also a recognized member of the Canadian Public Relations Society (CPRS). She has served on examination panels for APR candidates and worked *pro bono* as a judge for prestigious PRSA awards.

Ms. Finegan has provided expert testimony before Congress on issues of notice, and expert testimony in both state and federal courts regarding notification campaigns. She has conducted numerous media audits of proposed notice programs to assess the adequacy of those programs under Fed R. Civ. P. 23(c)(2) and similar state class action statutes.

She was an early pioneer of plain language in notice (as noted in a RAND study,[1]) and continues to set the standard for modern outreach as the first notice expert to integrate social and mobile media into court approved legal notice programs.

In the course of her class action experience, courts have recognized the merits of, and admitted expert testimony based on, her scientific evaluation of the effectiveness of notice plans. She has designed legal notices for a wide range of class actions and consumer matters that include

---

[1] Deborah R. Hensler et al., CLASS ACTION DILEMAS, PURSUING PUBLIC GOALS FOR PRIVATE GAIN. RAND (2000).



product liability, construction defect, antitrust, medical/pharmaceutical, human rights, civil rights, telecommunication, media, environment, government enforcement actions, securities, banking, insurance, mass tort, restructuring and product recall.

## JUDICIAL COMMENTS AND LEGAL NOTICE CASES

In evaluating the adequacy and effectiveness of Ms. Finegan's notice campaigns, courts have repeatedly recognized her excellent work. The following excerpts provide some examples of such judicial approval.

***Carter v Forjas Taurus S.S., Taurus International Manufacturing***, Inc., Case No. 1:13-CV-24583 PAS (S.D. Fl. 2016). In her Final Order and Judgment Granting Plaintiffs Motion for Final Approval of Class Action Settlement, the Honorable Patricia Seitz stated:

> *The Court considered the extensive experience of Jeanne C. Finegan and the notice program she developed. …There is no national firearms registry and Taurus sale records do not provide names and addresses of the ultimate purchasers… Thus the form and method used for notifying Class Members of the terms of the Settlement was the best notice practicable. …The court-approved notice plan used peer-accepted national research to identify the optimal traditional, online, mobile and social media platforms to reach the Settlement Class Members.*

Additionally, in January 20, 2016, Transcript of Class Notice Hearing, p. 5 Judge Seitz, gave accolades to Ms. Finegan, noting:

> *I would like to compliment Ms. Finegan and her company because I was quite impressed with the scope and the effort of communicating with the Class.*

***Michael Allagas, et al., v. BP Solar International, Inc., et al., BP Solar Panel Settlement***, Case No. 3:14-cv-00560- SI (N.D. Cal., San Francisco Div. 2016). In the Order Granting Final Approval, Dated December 22, 2016, The Honorable Susan Illston stated:

> *Class Notice was reasonable and constituted due, adequate and sufficient notice to all persons entitled to be provided with notice; and d. fully satisfied the requirements of the Federal Rules of Civil Procedure, including Fed. R. Civ. P. 23(c)(2) and (e), the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable law.*

***In re: Skechers Toning Shoes Products Liability Litigation***, No. 3:11-MD-2308-TBR (W.D. Ky. 2012). In his Final Order and Judgment granting the Motion for Preliminary Approval of Settlement, the Honorable Thomas B. Russell stated:


*… The comprehensive nature of the class notice leaves little doubt that, upon receipt, class members will be able to make an informed and intelligent decision about participating in the settlement.*

***Brody v. Merck & Co., Inc., et al,*** No. 3:12-cv-04774-PGS-DEA (N.J.) (Jt Hearing for Prelim App, Sept. 27, 2012, transcript page 34). During the Hearing on Joint Application for Preliminary Approval of Class Action, the Honorable Peter G. Sheridan praised Ms. Finegan, noting:

> *Ms. Finegan did a great job in testifying as to what the class administrator will do. So, I'm certain that all the class members or as many that can be found, will be given some very adequate notice in which they can perfect their claim.*

***Quinn v. Walgreen Co., Wal-Mart Stores Inc.,*** 7:12 CV-8187-VB (NYSD) (Jt Hearing for Final App, March. 5, 2015, transcript page 40-41).  During the Hearing on Final Approval of Class Action, the Honorable Vincent L. Briccetti gave accolades to Ms. Finegan, noting:

> *"The notice plan was the best practicable under the circumstances.  … [and] "the proof is in the pudding. This settlement has resulted in more than 45,000 claims which is 10,000 more than the Pearson case and more than 40,000 more than in a glucosamine case pending in the Southern District of California I've been advised about.  So the notice has reached a lot of people and a lot of people have made claims."*

***In Re: TracFone Unlimited Service Plan Litigation,*** *No. C-13-3440 EMC (ND Ca).* In the Final Order and Judgment Granting Class Settlement, July 2, 2015, the Honorable Edward M. Chen noted:

> *"…[D]epending on the extent of the overlap between  those class members who will automatically receive a payment and those who filed claims, the total claims rate is estimated to be approximately 25-30%. This is an excellent result...*

***In Re:  Blue Buffalo Company, Ltd., Marketing and Sales Practices Litigation***, Case No. 4:14-MD-2562 RWS (E.D. Mo. 2015),  (Hearing for Final Approval, May 19, 2016 transcript p. 49). During the Hearing for Final Approval, the Honorable Rodney Sippel said:

> *It is my finding that notice was sufficiently provided to class members in the manner directed in my preliminary approval order and that notice met all applicable requirements of due process and any other applicable law and considerations.*

***DeHoyos, et al. v. Allstate Ins. Co.,*** No. SA-01-CA-1010 (W.D.Tx. 2001).  In the Amended Final Order and Judgment Approving Class Action Settlement, the Honorable Fred Biery stated:

> *[T]he undisputed evidence shows the notice program in this case was developed and implemented by a nationally recognized expert in class action notice programs. … This program was vigorous and specifically structured to reach the African-American and Hispanic class members.  Additionally, the program was based on a scientific*


*methodology which is used throughout the advertising industry and which has been routinely embraced routinely [sic] by the Courts. Specifically, in order to reach the identified targets directly and efficiently, the notice program utilized a multi-layered approach which included national magazines; magazines specifically appropriate to the targeted audiences; and newspapers in both English and Spanish.*

*In re: Reebok Easytone Litigation*, No. 10-CV-11977 (D. MA. 2011). The Honorable F. Dennis Saylor IV stated in the Final Approval Order:

*The Court finds that the dissemination of the Class Notice, the publication of the Summary Settlement Notice, the establishment of a website containing settlement-related materials, the establishment of a toll-free telephone number, and all other notice methods set forth in the Settlement Agreement and [Ms. Finegan's] Declaration and the notice dissemination methodology implemented pursuant to the Settlement Agreement and this Court's Preliminary Approval Order… constituted the best practicable notice to Class Members under the circumstances of the Actions.*

**Bezdek v. Vibram USA and Vibram FiveFingers** LLC, No 12-10513 (D. MA) The Honorable Douglas P. Woodlock stated in the Final Memorandum and Order:
*…[O]n independent review I find that the notice program was robust, particularly in its online presence, and implemented as directed in my Order authorizing notice. …I find that notice was given to the Settlement class members by the best means "practicable under the circumstances." Fed.R.Civ.P. 23(c)(2).*

*Gemelas v. The Dannon Company Inc.,* No. 08-cv-00236-DAP (N.D. Ohio). In granting final approval for the settlement, the Honorable Dan A. Polster stated:

*In accordance with the Court's Preliminary Approval Order and the Court-approved notice program, [Ms. Finegan] caused the Class Notice to be distributed on a nationwide basis in magazines and newspapers (with circulation numbers exceeding 81 million) specifically chosen to reach Class Members. … The distribution of Class Notice constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. 1715, and any other applicable law.*

*Pashmova v. New Balance Athletic Shoes, Inc.*, 1:11-cv-10001-LTS (D. Mass.). The Honorable Leo T. Sorokin stated in the Final Approval Order:

*The Class Notice, the Summary Settlement Notice, the web site, and all other notices in the Settlement Agreement and the Declaration of [Ms Finegan], and the notice methodology implemented pursuant to the Settlement Agreement: (a) constituted the best practicable notice under the circumstances; (b) constituted notice that was reasonably calculated to apprise Class Members of the pendency of the Actions, the terms of the Settlement and their rights under the settlement … met all applicable*


*requirements of law, including, but not limited to, the Federal Rules of Civil Procedure, 28 U.S.C. § 1715, and the Due Process Clause(s) of the United States Constitution, as well as complied with the Federal Judicial Center's illustrative class action notices.*

***Hartless v. Clorox Company***, No. 06-CV-2705 (CAB) (S.D.Cal.).  In the Final Order Approving Settlement, the Honorable Cathy N. Bencivengo found:

> *The Class Notice advised Class members of the terms of the settlement; the Final Approval Hearing and their right to appear at such hearing; their rights to remain in or opt out of the Class and to object to the settlement; the procedures for exercising such rights; and the binding effect of this Judgment, whether favorable or unfavorable, to the Class. The distribution of the notice to the Class constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. §1715, and any other applicable law.*

***McDonough et al v. Toys 'R' Us et al,*** No. 09:-cv-06151-AB (E.D. Pa.).  In the Final Order and Judgment Approving Settlement, the Honorable Anita Brody stated:

> *The Court finds that the Notice provided constituted the best notice practicable under the circumstances and constituted valid, due and sufficient notice to all persons entitled thereto.*

***In re: Pre-Filled Propane Tank Marketing & Sales Practices Litigation,*** No. 4:09-md-02086-GAF (W.D. Mo.)  In granting final approval to the settlement, the Honorable Gary A. Fenner stated:

> *The notice program included individual notice to class members who could be identified by Ferrellgas, publication notices, and notices affixed to Blue Rhino propane tank cylinders sold by Ferrellgas through various retailers. ... The Court finds the notice program fully complied with Federal Rule of Civil Procedure 23 and the requirements of due process and provided to the Class the best notice practicable under the circumstances.*

***Stern v. AT&T Mobility Wireless***, No. 09-cv-1112 CAS-AGR (C.D.Cal. 2009).  In the Final Approval Order, the Honorable Christina A. Snyder stated:

> *[T]he Court finds that the Parties have fully and adequately effectuated the Notice Plan, as required by the Preliminary Approval Order, and, in fact, have achieved better results than anticipated or required by the Preliminary Approval Order.*

***In re: Processed Egg Prods. Antitrust Litig.***, MDL No. 08-md-02002 (E.D.P.A.).  In the Order Granting Final Approval of Settlement, Judge Gene E.K. Pratter stated:



> *The Notice appropriately detailed the nature of the action, the Class claims, the definition of the Class and Subclasses, the terms of the proposed settlement agreement, and the class members' right to object or request exclusion from the settlement and the timing and manner for doing so.... Accordingly, the Court determines that the notice provided to the putative Class Members constitutes adequate notice in satisfaction of the demands of Rule 23.*

*In re Polyurethane Foam Antitrust Litigation*, 10- MD-2196 (N.D. OH). In the Order Granting Final Approval of Voluntary Dismissal and Settlement of Defendant Domfoam and Others, the Honorable Jack Zouhary stated:

> *The notice program included individual notice to members of the Class who could be identified through reasonable effort, as well as extensive publication of a summary notice. The Notice constituted the most effective and best notice practicable under the circumstances of the Settlement Agreements, and constituted due and sufficient notice for all other purposes to all persons and entities entitled to receive notice.*

*Rojas v Career Education Corporation*, No. 10-cv-05260 (N.D.E.D. IL) In the Final Approval Order dated October 25, 2012, the Honorable Virgina M. Kendall stated:

> *The Court Approved notice to the Settlement Class as the best notice practicable under the circumstance including individual notice via U.S. Mail and by email to the class members whose addresses were obtained from each Class Member's wireless carrier or from a commercially reasonable reverse cell phone number look-up service, nationwide magazine publication, website publication, targeted on-line advertising, and a press release. Notice has been successfully implemented and satisfies the requirements of the Federal Rule of Civil Procedure 23 and Due Process.*

*Golloher v Todd Christopher International, Inc. DBA Vogue International (Organix), No. C 1206002 N.D CA.* In the Final Order and Judgment Approving Settlement, the Honorable Richard Seeborg stated:

> *The distribution of the notice to the Class constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. §1715, and any other applicable law.*

*Stefanyshyn v. Consolidated Industries*, No. 79 D 01-9712-CT-59 (Tippecanoe County Sup. Ct., Ind.). In the Order Granting Final Approval of Settlement, Judge Randy Williams stated:

> *The long and short form notices provided a neutral, informative, and clear explanation of the Settlement. ... The proposed notice program was properly designed, recommended, and implemented ... and constitutes the "best practicable" notice of the proposed Settlement. The form and content of the notice program satisfied all*



*applicable legal requirements. … The comprehensive class notice educated Settlement Class members about the defects in Consolidated furnaces and warned them that the continued use of their furnaces created a risk of fire and/or carbon monoxide. This alone provided substantial value.*

*McGee v. Continental Tire North America, Inc. et al*, No. 06-6234-(GEB) (D.N.J.).

> *The Class Notice, the Summary Settlement Notice, the web site, the toll-free telephone number, and all other notices in the Agreement, and the notice methodology implemented pursuant to the Agreement: (a) constituted the best practicable notice under the circumstances; (b) constituted notice that was reasonably calculated to apprise Class Members of the pendency of the Action, the terms of the settlement and their rights under the settlement, including, but not limited to, their right to object to or exclude themselves from the proposed settlement and to appear at the Fairness Hearing; (c) were reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notification; and (d) met all applicable requirements of law, including, but not limited to, the Federal Rules of Civil Procedure, 20 U.S.C. Sec. 1715, and the Due Process Clause(s) of the United States Constitution, as well as complied with the Federal Judicial Center's illustrative class action notices,*

*Varacallo, et al. v. Massachusetts Mutual Life Insurance Company, et al.*, No. 04-2702 (JLL) (D.N.J.). The Court stated that:

> [A]*ll of the notices are written in simple terminology, are readily understandable by Class Members, and comply with the Federal Judicial Center's illustrative class action notices. … By working with a nationally syndicated media research firm, [Finegan's firm] was able to define a target audience for the MassMutual Class Members, which provided a valid basis for determining the magazine and newspaper preferences of the Class Members. (Preliminary Approval Order at p. 9). . . . The Court agrees with Class Counsel that this was more than adequate. (Id. at § 5.2).*

*In re: Nortel Network Corp., Sec. Litig.*, No. 01-CV-1855 (RMB) Master File No. 05 MD 1659 (LAP) (S.D.N.Y.). Ms. Finegan designed and implemented the extensive United States and Canadian notice programs in this case. The Canadian program was published in both French and English, and targeted virtually all investors of stock in Canada. *See* www.nortelsecuritieslitigation.com. Of the U.S. notice program, the Honorable Loretta A. Preska stated:

> *The form and method of notifying the U.S. Global Class of the pendency of the action as a class action and of the terms and conditions of the proposed Settlement … constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.*



Regarding the B.C. Canadian Notice effort: *Jeffrey v. Nortel Networks*, [2007] BCSC 69 at para. 50, the Honourable Mr. Justice Groberman said:

> ***The efforts to give notice to potential class members in this case have been thorough. There has been a broad media campaign to publicize the proposed settlement and the court processes. There has also been a direct mail campaign directed at probable investors. I am advised that over 1.2 million claim packages were mailed to persons around the world. In addition, packages have been available through the worldwide web site nortelsecuritieslitigation.com on the Internet. Toll-free telephone lines have been set up, and it appears that class counsel and the Claims Administrator have received innumerable calls from potential class members. In short, all reasonable efforts have been made to ensure that potential members of the class have had notice of the proposal and a reasonable opportunity was provided for class members to register their objections, or seek exclusion from the settlement.***

*Mayo v. Walmart Stores and Sam's Club*, No. 5:06 CV-93-R (W.D.Ky.). In the Order Granting Final Approval of Settlement, Judge Thomas B. Russell stated:

> ***According to defendants' database, the Notice was estimated to have reached over 90% of the Settlement Class Members through direct mail. The Settlement Administrator … has classified the parties' database as 'one of the most reliable and comprehensive databases [she] has worked with for the purposes of legal notice.'… The Court thus reaffirms its findings and conclusions in the Preliminary Approval Order that the form of the Notice and manner of giving notice satisfy the requirements of Fed. R. Civ. P. 23 and affords due process to the Settlement Class Members.***

*Fishbein v. All Market Inc*., (d/b/a **Vita Coco**) No. 11-cv-05580 (S.D.N.Y.). In granting final approval of the settlement, the Honorable J. Paul Oetken stated:

> ***"The Court finds that the dissemination of Class Notice pursuant to the Notice Program…constituted the best practicable notice to Settlement Class Members under the circumstances of this Litigation … and was reasonable and constituted due, adequate and sufficient notice to all persons entitled to such notice, and fully satisfied the requirements of the Federal Rules of Civil Procedure, including Rules 23(c)(2) and (e), the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable laws."***

*Lucas, et al. v. Kmart Corp.*, No. 99-cv-01923 (D.Colo.), wherein the Court recognized Jeanne Finegan as an expert in the design of notice programs, and stated:

> ***The Court finds that the efforts of the parties and the proposed Claims Administrator in this respect go above and beyond the "reasonable efforts" required for identifying individual class members under F.R.C.P. 23(c)(2)(B).***



*In re: Johns-Manville Corp.* **(Statutory Direct Action Settlement, Common Law Direct Action and Hawaii Settlement)**, No 82-11656, 57, 660, 661, 665-73, 75 and 76 (BRL) (Bankr. S.D.N.Y.). The nearly half-billion dollar settlement incorporated three separate notification programs, which targeted all persons who had asbestos claims whether asserted or unasserted, against the Travelers Indemnity Company. In the Findings of Fact and Conclusions of a Clarifying Order Approving the Settlements, slip op. at 47-48 (Aug. 17, 2004), the Honorable Burton R. Lifland, Chief Justice, stated:

> *As demonstrated by Findings of Fact (citation omitted), the Statutory Direct Action Settlement notice program was reasonably calculated under all circumstances to apprise the affected individuals of the proceedings and actions taken involving their interests, Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950), such program did apprise the overwhelming majority of potentially affected claimants and far exceeded the minimum notice required. . . . The results simply speak for themselves.*

*Pigford v. Glickman and U.S. Department of Agriculture*, No. 97-1978. 98-1693 (PLF) (D.D.C.). This matter was the largest civil rights case to settle in the United States in over 40 years. The highly publicized, nationwide paid media program was designed to alert all present and past African-American farmers of the opportunity to recover monetary damages against the U.S. Department of Agriculture for alleged loan discrimination. In his Opinion, the Honorable Paul L. Friedman commended the parties with respect to the notice program, stating;

> *The parties also exerted extraordinary efforts to reach class members through a massive advertising campaign in general and African American targeted publications and television stations. . . . The Court concludes that class members have received more than adequate notice and have had sufficient opportunity to be heard on the fairness of the proposed Consent Decree.*

*In re: Louisiana-Pacific Inner-Seal Siding Litig.*, Nos. 879-JE, and 1453-JE (D.Or.). Under the terms of the Settlement, three separate notice programs were to be implemented at three-year intervals over a period of six years. In the first notice campaign, Ms. Finegan implemented the print advertising and Internet components of the Notice program. In approving the legal notice communication plan, the Honorable Robert E. Jones stated:

> *The notice given to the members of the Class fully and accurately informed the Class members of all material elements of the settlement…[through] a broad and extensive multi-media notice campaign.*

Additionally, with regard to the third-year notice program for Louisiana-Pacific, the Honorable Richard Unis, Special Master, commented that the notice was:

> *…well formulated to conform to the definition set by the court as adequate and reasonable notice. Indeed, I believe the record should also reflect the Court's*


*appreciation to Ms. Finegan for all the work she's done, ensuring that noticing was done correctly and professionally, while paying careful attention to overall costs. Her understanding of various notice requirements under Fed. R. Civ. P. 23, helped to insure that the notice given in this case was consistent with the highest standards of compliance with Rule 23(d)(2).*

***In re: Expedia Hotel Taxes and Fees Litigation***, No. 05-2-02060-1 (SEA) (Sup. Ct. of Wash. in and for King County). In the Order Granting Final Approval of Class Action Settlement, Judge Monica Benton stated:

*The Notice of the Settlement given to the Class … was the best notice practicable under the circumstances. All of these forms of Notice directed Class Members to a Settlement Website providing key Settlement documents including instructions on how Class Members could exclude themselves from the Class, and how they could object to or comment upon the Settlement. The Notice provided due and adequate notice of these proceeding and of the matters set forth in the Agreement to all persons entitled to such notice, and said notice fully satisfied the requirements of CR 23 and due process.*

***Rene Rosales v. Fortune Ins. Co.***, No. 99-04588 CA (41) (11th Judicial Dist. Ct. of Miami-Dade County, Fla.). Ms. Finegan provided expert testimony in this matter. She conducted an audit on behalf of intervening attorneys for the proposed notification to individuals insured with personal injury insurance.
Based upon the audit, Ms. Finegan testified that the proposed notice program was inadequate. The Court agreed and signed an Order Granting Intervenors' Objections to Class Action Settlement, stating:

*The Court finds that Ms. Finegan is qualified as an expert on class notice and effective media campaigns. The Court finds that her testimony is credible and reliable.*

***Thomas A. Foster and Linda E. Foster v. ABTco Siding Litigation***, No. 95-151-M (Cir. Ct., Choctaw County, Ala.). This litigation focused on past and present owners of structures sided with Abitibi-Price siding. The notice program that Ms. Finegan designed and implemented was national in scope and received the following praise from the Honorable J. Lee McPhearson:

*The Court finds that the Notice Program conducted by the Parties provided individual notice to all known Class Members and all Class Members who could be identified through reasonable efforts and constitutes the best notice practicable under the circumstances of this Action. This finding is based on the overwhelming evidence of the adequacy of the notice program. … The media campaign involved broad national notice through television and print media, regional and local newspapers, and the Internet (see id. ¶¶9-11) The result: over 90 percent of Abitibi and ABTco owners are estimated to have been reached by the direct media and direct mail campaign.*



***Wilson v. Massachusetts Mut. Life Ins. Co.***, No. D-101-CV 98-02814 (First Judicial Dist. Ct., County of Santa Fe, N.M.). This was a nationwide notification program that included all persons in the United States who owned, or had owned, a life or disability insurance policy with Massachusetts Mutual Life Insurance Company and had paid additional charges when paying their premium on an installment basis. The class was estimated to exceed 1.6 million individuals. www.insuranceclassclaims.com. In granting preliminary approval to the settlement, the Honorable Art Encinias found:

> *[T]he Notice Plan [is] the best practicable notice that is reasonably calculated, under the circumstances of the action. ...[and] meets or exceeds all applicable requirements of the law, including Rule 1-023(C)(2) and (3) and 1-023(E), NMRA 2001, and the requirements of federal and/or state constitutional due process and any other applicable law.*

***Sparks v. AT&T Corp.***, No. 96-LM-983 (Third Judicial Cir., Madison County, Ill.). The litigation concerned all persons in the United States who leased certain AT&T telephones during the 1980's. Ms. Finegan designed and implemented a nationwide media program designed to target all persons who may have leased telephones during this time period, a class that included a large percentage of the entire population of the United States.
In granting final approval to the settlement, the Court found:

> *The Court further finds that the notice of the proposed settlement was sufficient and furnished Class Members with the information they needed to evaluate whether to participate in or opt out of the proposed settlement. The Court therefore concludes that the notice of the proposed settlement met all requirements required by law, including all Constitutional requirements.*

***In re: Georgia-Pacific Toxic Explosion Litig.***, No. 98 CVC05-3535 (Ct. of Common Pleas, Franklin County, Ohio). Ms. Finegan designed and implemented a regional notice program that included network affiliate television, radio and newspaper. The notice was designed to alert adults living near a Georgia-Pacific plant that they had been exposed to an air-born toxic plume and their rights under the terms of the class action settlement. In the Order and Judgment finally approving the settlement, the Honorable Jennifer L. Bunner stated:

> *[N]otice of the settlement to the Class was the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The Court finds that such effort exceeded even reasonable effort and that the Notice complies with the requirements of Civ. R. 23(C).*

***In re: American Cyanamid***, No. CV-97-0581-BH-M (S.D.Al.). The media program targeted Farmers who had purchased crop protection chemicals manufactured by American Cyanamid. In the Final Order and Judgment, the Honorable Charles R. Butler Jr. wrote:


*The Court finds that the form and method of notice used to notify the Temporary Settlement Class of the Settlement satisfied the requirements of Fed. R. Civ. P. 23 and due process, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all potential members of the Temporary Class Settlement.*

***In re: First Alert Smoke Alarm Litig.***, No. CV-98-C-1546-W (UWC) (N.D.Al.).  Ms. Finegan designed and implemented a nationwide legal notice and public information program.  The public information program ran over a two-year period to inform those with smoke alarms of the performance characteristics between photoelectric and ionization detection.  The media program included network and cable television, magazine and specialty trade publications.  In the Findings and Order Preliminarily Certifying the Class for Settlement Purposes, Preliminarily Approving Class Settlement, Appointing Class Counsel, Directing Issuance of Notice to the Class, and Scheduling a Fairness Hearing, the Honorable C.W. Clemon wrote that the notice plan:

*…constitutes due, adequate and sufficient notice to all Class Members; and (v) meets or exceeds all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Alabama State Constitution, the Rules of the Court, and any other applicable law.*

***In re: James Hardie Roofing Litig.,*** No. 00-2-17945-65SEA (Sup. Ct. of Wash., King County). The nationwide legal notice program included advertising on television, in print and on the Internet. The program was designed to reach all persons who own any structure with JHBP roofing products.  In the Final Order and Judgment, the Honorable Steven Scott stated:

*The notice program required by the Preliminary Order has been fully carried out… [and was] extensive.  The notice provided fully and accurately informed the Class Members of all material elements of the proposed Settlement and their opportunity to participate in or be excluded from it; was the best notice practicable under the circumstances; was valid, due and sufficient notice to all Class Members; and complied fully with Civ. R. 23, the United States Constitution, due process, and other applicable law.*

***Barden v. Hurd Millwork Co. Inc., et al,*** No. 2:6-cv-00046 (LA) (E.D.Wis.) (***"The Court approves, as to form and content, the notice plan and finds that such notice is the best practicable under the circumstances under Federal Rule of Civil Procedure 23(c)(2)(B) and constitutes notice in a reasonable manner under Rule 23(e)(1)."***)

***Altieri v. Reebok,*** No. 4:10-cv-11977 (FDS) (D.C.Mass.) (***"The Court finds that the notices … constitute the best practicable notice... The Court further finds that all of the notices are written in simple terminology, are readily understandable by Class Members, and comply with the Federal Judicial Center's illustrative class action notices."***)



*Marenco v. Visa Inc.,* No. CV 10-08022 (DMG) (C.D.Cal.) (*"[T]he Court finds that the notice plan…meets the requirements of due process, California law, and other applicable precedent. The Court finds that the proposed notice program is designed to provide the Class with the best notice practicable, under the circumstances of this action, of the pendency of this litigation and of the proposed Settlement's terms, conditions, and procedures, and shall constitute due and sufficient notice to all persons entitled thereto under California law, the United States Constitution, and any other applicable law."*)

*Palmer v. Sprint Solutions, Inc.,* No. 09-cv-01211 (JLR) (W.D.Wa.) (*"The means of notice were reasonable and constitute due, adequate, and sufficient notice to all persons entitled to be provide3d with notice."*)

*In re: Tyson Foods, Inc., Chicken Raised Without Antibiotics Consumer Litigation*, No. 1:08-md-01982 RDB (D. Md. N. Div.) (*"The notice, in form, method, and content, fully complied with the requirements of Rule 23 and due process, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons entitled to notice of the settlement."*)

*Sager v. Inamed Corp. and McGhan Medical Breast Implant Litigation*, No. 01043771 (Sup. Ct. Cal., County of Santa Barbara) (*"Notice provided was the best practicable under the circumstances."*).

*Deke, et al. v. Cardservice Internat'l,* Case No. BC 271679, slip op. at 3 (Sup. Ct. Cal., County of Los Angeles) (*"The Class Notice satisfied the requirements of California Rules of Court 1856 and 1859 and due process and constituted the best notice practicable under the circumstances."*).

*Levine, et al. v. Dr. Philip C. McGraw, et al*., Case No. BC 312830 (Los Angeles County Super. Ct., Cal.) (*"[T]he plan for notice to the Settlement Class … constitutes the best notice practicable under the circumstances and constituted due and sufficient notice to the members of the Settlement Class … and satisfies the requirements of California law and federal due process of law."*).

*In re: Canadian Air Cargo Shipping Class Actions*, Court File No. 50389CP, Ontario Superior Court of Justice, Supreme Court of British Columbia, Quebec Superior Court (*"I am satisfied the proposed form of notice meets the requirements of s. 17(6) of the CPA and the proposed method of notice is appropriate."*).

*Fischer et al v. IG Investment Management, Ltd. et al*, Court File No. 06-CV-307599CP, Ontario Superior Court of Justice.

*In re: Vivendi Universal, S.A. Securities Litigation*, No. 02-cv-5571 (RJH)(HBP) (S.D.N.Y.).

*In re: Air Cargo Shipping Services Antitrust Litigation*, No. 06-MD-1775 (JG) (VV) (E.D.N.Y.).



*Berger, et al., v. Property ID Corporation, et al.*, No. CV 05-5373-GHK (CWx) (C.D.Cal.).

*Lozano v. AT&T Mobility Wireless*, No. 02-cv-0090 CAS (AJWx) (C.D.Cal.).

*Howard A. Engle, M.D., et al., v. R.J. Reynolds Tobacco Co., Philip Morris, Inc., Brown & Williamson Tobacco Corp.,* No. 94-08273 CA (22) (11th Judicial Dist. Ct. of Miami-Dade County, Fla.).

*In re: Royal Dutch/Shell Transport Securities Litigation,* No. 04 Civ. 374 (JAP) (Consolidated Cases) (D. N.J.).

*In re: Epson Cartridge Cases, Judicial Council Coordination Proceeding*, No. 4347 (Sup. Ct. of Cal., County of Los Angeles).

*UAW v. General Motors Corporation*, No: 05-73991 (E.D.MI).

*Wicon, Inc. v. Cardservice Intern'l, Inc.*, BC 320215 (Sup. Ct. of Cal., County of Los Angeles).

*In re: SmithKline Beecham Clinical Billing Litig.*, No. CV. No. 97-L-1230 (Third Judicial Cir., Madison County, Ill.).  Ms. Finegan designed and developed a national media and Internet site notification program in connection with the settlement of a nationwide class action concerning billings for clinical laboratory testing services.

*MacGregor v. Schering-Plough Corp.,* No. EC248041 (Sup. Ct. Cal., County of Los Angeles).  This nationwide notification program was designed to reach all persons who had purchased or used an aerosol inhaler manufactured by Schering-Plough.  Because no mailing list was available, notice was accomplished entirely through the media program.

*In re: Swiss Banks Holocaust Victim Asset Litig.*, No. CV-96-4849 (E.D.N.Y.).  Ms. Finegan managed the design and implementation of the Internet site on this historic case.  The site was developed in 21 native languages.  It is a highly secure data gathering tool and information hub, central to the global outreach program of Holocaust survivors. www.swissbankclaims.com.

*In re: Exxon Valdez Oil Spill Litig.*, No. A89-095-CV (HRH) (Consolidated) (D. Alaska).  Ms. Finegan designed and implemented two media campaigns to notify native Alaskan residents, trade workers, fisherman, and others impacted by the oil spill of the litigation and their rights under the settlement terms.

*In re: Johns-Manville Phenolic Foam Litig.*, No. CV 96-10069 (D. Mass).  The nationwide multi-media legal notice program was designed to reach all Persons who owned any structure, including an industrial building, commercial building, school, condominium, apartment house, home, garage or other type of structure located in the United States or its territories, in which Johns-Manville PFRI was installed, in whole or in part, on top of a metal roof deck.



***Bristow v Fleetwood Enters Litig.***, No Civ 00-0082-S-EJL (D. Id). Ms. Finegan designed and implemented a legal notice campaign targeting present and former employees of Fleetwood Enterprises, Inc., or its subsidiaries who worked as hourly production workers at Fleetwood's housing, travel trailer, or motor home manufacturing plants. The comprehensive notice campaign included print, radio and television advertising.

***In re: New Orleans Tank Car Leakage Fire Litig.***, No 87-16374 (Civil Dist. Ct., Parish of Orleans, LA) (2000). This case resulted in one of the largest settlements in U.S. history. This campaign consisted of a media relations and paid advertising program to notify individuals of their rights under the terms of the settlement.

***Garria Spencer v. Shell Oil Co.***, No. CV 94-074(Dist. Ct., Harris County, Tex.). The nationwide notification program was designed to reach individuals who owned real property or structures in the United States, which contained polybutylene plumbing with acetyl insert or metal insert fittings.

***In re: Hurd Millwork Heat Mirror™ Litig.***, No. CV-772488 (Sup. Ct. of Cal., County of Santa Clara). This nationwide multi-media notice program was designed to reach class members with failed heat mirror seals on windows and doors, and alert them as to the actions that they needed to take to receive enhanced warranties or window and door replacement.

***Laborers Dist. Counsel of Alabama Health and Welfare Fund v. Clinical Lab. Servs., Inc***, No. CV–97-C-629-W (N.D. Ala.). Ms. Finegan designed and developed a national media and Internet site notification program in connection with the settlement of a nationwide class action concerning alleged billing discrepancies for clinical laboratory testing services.

***In re: StarLink Corn Prods. Liab. Litig.***, No. 01-C-1181 (N.D. Ill).. Ms. Finegan designed and implemented a nationwide notification program designed to alert potential class members of the terms of the settlement.

***In re: MCI Non-Subscriber Rate Payers Litig.***, MDL Docket No. 1275, 3:99-cv-01275 (S.D.Ill.). The advertising and media notice program, found to be "more than adequate" by the Court, was designed with the understanding that the litigation affected all persons or entities who were customers of record for telephone lines presubscribed to MCI/World Com, and were charged the higher non-subscriber rates and surcharges for direct-dialed long distance calls placed on those lines. www.rateclaims.com.

***In re: Albertson's Back Pay Litig.***, No. 97-0159-S-BLW (D.Id.). Ms. Finegan designed and developed a secure Internet site, where claimants could seek case information confidentially.

***In re: Georgia Pacific Hardboard Siding Recovering Program***, No. CV-95-3330-RG (Cir. Ct., Mobile County, Ala.). Ms. Finegan designed and implemented a multi-media legal notice program, which was designed to reach class members with failed G-P siding and alert them of



the pending matter. Notice was provided through advertisements, which aired on national cable networks, magazines of nationwide distribution, local newspaper, press releases and trade magazines.

*In re: Diet Drugs* **(Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig**., Nos. 1203, 99-20593. Ms. Finegan worked as a consultant to the National Diet Drug Settlement Committee on notification issues. The resulting notice program was described and complimented at length in the Court's Memorandum and Pretrial Order 1415, approving the settlement,

*In re: Diet Drugs* **(Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig**., 2000 WL 1222042, Nos. 1203, 99-20593 (E.D.Pa. Aug. 28, 2002).

Ms. Finegan designed the Notice programs for multiple state antitrust cases filed against the Microsoft Corporation. In those cases, it was generally alleged that Microsoft unlawfully used anticompetitive means to maintain a monopoly in markets for certain software, and that as a result, it overcharged consumers who licensed its MS-DOS, Windows, Word, Excel and Office software. The multiple legal notice programs designed by Jeanne Finegan and listed below targeted both individual users and business users of this software. The scientifically designed notice programs took into consideration both media usage habits and demographic characteristics of the targeted class members.

*In re: Florida Microsoft Antitrust Litig. Settlement*, No. 99-27340 CA 11 (11th Judicial Dist. Ct. of Miami-Dade County, Fla.).

*In re: Montana Microsoft Antitrust Litig. Settlement*, No. DCV 2000 219 (First Judicial Dist. Ct., Lewis & Clark Co., Mt.).

*In re: South Dakota Microsoft Antitrust Litig. Settlement*, No. 00-235(Sixth Judicial Cir., County of Hughes, S.D.).

*In re: Kansas Microsoft Antitrust Litig. Settlement*, No. 99C17089 Division No. 15 Consolidated Cases (Dist. Ct., Johnson County, Kan.) ("The Class Notice provided was the best notice practicable under the circumstances and fully complied in all respects with the requirements of due process and of the Kansas State. Annot. §60-22.3.").

*In re: North Carolina Microsoft Antitrust Litig. Settlement*, No. 00-CvS-4073 (Wake) 00-CvS-1246 (Lincoln) (General Court of Justice Sup. Ct., Wake and Lincoln Counties, N.C.).

*In re: ABS II Pipes Litig.*, No. 3126 (Sup. Ct. of Cal., Contra Costa County). The Court approved regional notification program designed to alert those individuals who owned structures with the pipe that they were eligible to recover the cost of replacing the pipe.

*In re: Avenue A Inc. Internet Privacy Litig.*, No: C00-1964C (W.D. Wash.).



*In re: Lorazepam and Clorazepate Antitrust Litig.*, No. 1290 (TFH) (D.C.C.).

*In re: Providian Fin. Corp. ERISA Litig.*, No C-01-5027 (N.D. Cal.).

*In re: H & R Block., et al Tax Refund Litig.*, No. 97195023/CC4111 (MD Cir. Ct., Baltimore City).

*In re: American Premier Underwriters, Inc, U.S. Railroad Vest Corp.*, No. 06C01-9912 (Cir. Ct., Boone County, Ind.).

*In re: Sprint Corp. Optical Fiber Litig.*, No: 9907 CV 284 (Dist. Ct., Leavenworth County, Kan).

*In re: Shelter Mutual Ins. Co. Litig.*, No. CJ-2002-263 (Dist.Ct., Canadian County. Ok).

*In re: Conseco, Inc. Sec. Litig.*, No: IP-00-0585-C Y/S CA (S.D. Ind.).

*In re: Nat'l Treasury Employees Union, et al.*, 54 Fed. Cl. 791 (2002).

*In re: City of Miami Parking Litig.*, Nos. 99-21456 CA-10, 99-23765 – CA-10 (11th Judicial Dist. Ct. of Miami-Dade County, Fla.).

*In re: Prime Co. Incorporated D/B/A/ Prime Co. Personal Comm.*, No. L 1:01CV658 (E.D. Tx.).

*Alsea Veneer v. State of Oregon A.A.*, No. 88C-11289-88C-11300.



## INTERNATIONAL EXPERIENCE

***Bell v. Canadian Imperial Bank of Commerce***, *et al, Court File No.: CV-08-359335 (Ontario Superior Court of Justice); (2016)*

***In re: Canadian Air Cargo Shipping Class Actions*** *(Ontario Superior Court of Justice, Court File No. 50389CP, Supreme Court of British Columbia,*

***In re: Canadian Air Cargo Shipping Class Actions*** *Québec Superior Court);*

***Fischer v. IG Investment Management LTD.***, *No. 06-CV-307599CP (Ontario Superior Court of Justice).*

***In Re Nortel I & II Securities Litigation***, *Civil Action No. 01-CV-1855 (RMB), Master File No. 05 MD 1659 (LAP) (S.D.N.Y. 2006);*

***Frohlinger v. Nortel Networks Corporation*** *et al., Court File No.: 02-CL-4605 (Ontario Superior Court of Justice);*

***Association de Protection des Épargnants et Investissuers du Québec v. Corporation Nortel Networks***, *No.: 500-06-0002316-017 (Superior Court of Québec);*

***Jeffery v. Nortel Networks Corporation*** *et al., Court File No.: S015159 (Supreme Court of British Columbia);*

***Gallardi v. Nortel Networks Corporation***, *No. 05-CV-285606CP (Ontario Superior Court);*

***Skarstedt v. Corporation Nortel Networks***, *No. 500-06-000277-059 (Superior Court of Québec);*


## SEC ENFORCEMENT NOTICE PROGRAM EXPERIENCE

***SEC v. Vivendi Universal, S.A., et al.,*** *Case No. 02 Civ. 5571 (RJH) (HBP) (S.D.N.Y.).*
The Notice program included publication in 11 different countries and eight different languages.

***SEC v. Royal Dutch Petroleum Company***, *No.04-3359 (S.D. Tex.)*



**FEDERAL TRADE COMMISSION NOTICE PROGRAM EXPERIENCE**

*FTC v. TracFone Wireless, Inc.*, Case No. 15-cv-00392-EMC.

*FTC v. Skechers U.S.A., Inc.,* No. 1:12-cv-01214-JG (N.D. Ohio).

*FTC  v. Reebok International Ltd.*,  No. 11-cv-02046 (N.D. Ohio)

*FTC v. Chanery and RTC Research and Development LLC [Nutraquest]*, No :05-cv-03460 (D.N.J.)

**BANKRUPTCY EXPERIENCE**

Ms. Finegan has designed and implemented hundreds of domestic and international bankruptcy notice programs.  A sample case list includes the following:

*In re AMR Corporation [American Airlines], et al.*, No. 11-15463 (SHL) (Bankr. S.D.N.Y.) *("due and proper notice [was] provided, and … no other or further notice need be provided.")*

*In re Jackson Hewitt Tax Service Inc.*, et al., No 11-11587 (Bankr. D.Del.) (2011). The debtors sought to provide notice of their filing as well as the hearing to approve their disclosure statement and confirm their plan to a large group of current and former customers, many of whom current and viable addresses promised to be a difficult (if not impossible) and costly undertaking. The court approved a publication notice program designed and implemented by Finegan and the administrator, that included more than 350 local newspaper and television websites, two national online networks (24/7 Real Media, Inc. and Microsoft Media Network), a website notice linked to a press release and notice on eight major websites, including CNN and Yahoo. These online efforts supplemented the print publication and direct-mail notice provided to known claimants and their attorneys, as well as to the state attorneys general of all 50 states. The *Jackson Hewitt* notice program constituted one of the first large chapter 11 cases to incorporate online advertising.

*In re: Nutraquest Inc.*, No. 03-44147 (Bankr. D.N.J.)

*In re: General Motors Corp. et al*, No. 09-50026 (Bankr. S.D.N.Y.).  This case is the 4th largest bankruptcy in U.S. history.  Ms. Finegan and her team worked with General Motors restructuring attorneys to design and implement the legal notice program.

*In re: ACandS, Inc.,* No. 0212687 (Bankr. D.Del.) (2007) (*"Adequate notice of the Motion and of the hearing on the Motion was given."*).

*In re: United Airlines*, No. 02-B-48191 (Bankr. N.D Ill.).  Ms. Finegan worked with United and its restructuring attorneys to design and implement global legal notice programs.  The notice was published in 11 countries and translated into 6 languages. Ms. Finegan worked closely with



legal counsel and UAL's advertising team to select the appropriate media and to negotiate the most favorable advertising rates. www.pd-ual.com.

*In re: Enron*, No. 01-16034 (Bankr. S.D.N.Y.). Ms. Finegan worked with Enron and its restructuring attorneys to publish various legal notices.

*In re: Dow Corning,* No. 95-20512 (Bankr. E.D. Mich.). Ms. Finegan originally designed the information website. This Internet site is a major information hub that has various forms in 15 languages.

*In re: Harnischfeger Inds.*, No. 99-2171 (RJW) Jointly Administered (Bankr. D. Del.). Ms. Finegan designed and implemented 6 domestic and international notice programs for this case. The notice was translated into 14 different languages and published in 16 countries.

*In re: Keene Corp.*, No. 93B 46090 (SMB), (Bankr. E.D. MO.). Ms. Finegan designed and implemented multiple domestic bankruptcy notice programs including notice on the plan of reorganization directed to all creditors and all Class 4 asbestos-related claimants and counsel.

*In re: Lamonts*, No. 00-00045 (Bankr. W.D. Wash.). Ms. Finegan designed an implemented multiple bankruptcy notice programs.

*In re: Monet Group Holdings*, Nos. 00-1936 (MFW) (Bankr. D. Del.). Ms. Finegan designed and implemented a bar date notice.

*In re: Laclede Steel Co.*, No. 98-53121-399 (Bankr. E.D. MO.). Ms. Finegan designed and implemented multiple bankruptcy notice programs.

*In re: Columbia Gas Transmission Corp.*, No. 91-804 (Bankr. S.D.N.Y.). Ms. Finegan developed multiple nationwide legal notice notification programs for this case.

*In re: U.S.H. Corp. of New York, et al*. (Bankr. S.D.N.Y.) Ms. Finegan designed and implemented a bar date advertising notification campaign.

*In re: Best Prods. Co., Inc.,* No. 96-35267-T, (Bankr. E.D. Va.). Ms. Finegan implemented a national legal notice program that included multiple advertising campaigns for notice of sale, bar date, disclosure and plan confirmation.

*In re: Lodgian, Inc., et al.*, No. 16345 (BRL) Factory Card Outlet – 99-685 (JCA), 99-686 (JCA) (Bankr. S.D.N.Y.).

*In re: Internat'l Total Servs, Inc., et al.*, Nos. 01-21812, 01-21818, 01-21820, 01-21882, 01-21824, 01-21826, 01-21827 (CD) Under Case No: 01-21812 (Bankr. E.D.N.Y.).

*In re: Decora Inds., Inc. and Decora, Incorp.*, Nos. 00-4459 and 00-4460 (JJF) (Bankr. D. Del.).



*In re: Genesis Health Ventures, Inc., et al*, No. 002692 (PJW) (Bankr. D. Del.).

*In re: Tel. Warehouse, Inc., et al*, No. 00-2105 through 00-2110 (MFW) (Bankr. D. Del.).

*In re: United Cos. Fin. Corp., et al*, No. 99-450 (MFW) through 99-461 (MFW) (Bankr. D. Del.).

*In re: Caldor, Inc. New York, The Caldor Corp., Caldor, Inc. CT, et al.*, No. 95-B44080 (JLG) (Bankr. S.D.N.Y).

*In re: Physicians Health Corp., et al.*, No. 00-4482 (MFW) (Bankr. D. Del.).

*In re: GC Cos., et al.*, Nos. 00-3897 through 00-3927 (MFW) (Bankr. D. Del.).

*In re: Heilig-Meyers Co., et al.*, Nos. 00-34533 through 00-34538 (Bankr. E.D. Va.).

**PRODUCT RECALL AND CRISIS COMMUNICATION EXPERIENCE**

***Reser's Fine Foods.*** Reser's is a nationally distributed brand and manufacturer of food products through giants such as Albertsons, Costco, Food Lion, WinnDixie, Ingles, Safeway and Walmart. Ms. Finegan designed an enterprise-wide crisis communication plan that included communications objectives, crisis team roles and responsibilities, crisis response procedures, regulatory protocols, definitions of incidents that require various levels of notice, target audiences, and threat assessment protocols. Ms. Finegan worked with the company through two nationwide, high profile recalls, conducting extensive media relations efforts.

***Gulf Coast Claims Facility Notice Campaign.*** Finegan coordinated a massive outreach effort throughout the Gulf Coast region to notify those who have claims as a result of damages caused by the Deep Water Horizon Oil spill. The notice campaign included extensive advertising in newspapers throughout the region, Internet notice through local newspaper, television and radio websites and media relations. The Gulf Coast Claims Facility (GCCF) was an independent claims facility, funded by BP, for the resolution of claims by individuals and businesses for damages incurred as a result of the oil discharges due to the Deepwater Horizon incident on April 20, 2010.

***City of New Orleans Tax Revisions, Post-Hurricane Katrina.*** In 2007, the City of New Orleans revised property tax assessments for property owners. As part of this process, it received numerous appeals to the assessments. An administration firm served as liaison between the city and property owners, coordinating the hearing schedule and providing important information to property owners on the status of their appeal. Central to this effort was the comprehensive outreach program designed by Ms. Finegan, which included a website and a heavy schedule of television, radio and newspaper advertising, along with the coordination of key news interviews about the project picked up by local media.


**ARTICLES**

Co-Author, "Modern Notice Requirements Through the Lens of *Eisen* and *Mullane"* – Bloomberg BNA Class Action Litigation Report, 17 CLASS 1077, (October 14, 2016).

Author, "Think All Internet Impressions Are The Same? Think Again" – Law360.com, New York (March 16, 2016, 3:39 ET).

Author, "Why Class Members Should See An Online Ad More Than Once" – Law360.com, New York, (December 3, 2015, 2:52 PM ET).

Author, 'Being 'Media-Relevant' — What It Means And Why It Matters - Law360.com, New York (September 11, 2013, 2:50 PM ET).

Co-Author, "New Media Creates New Expectations for Bankruptcy Notice Programs," ABI Journal, Vol. XXX, No 9, (November 2011).

Quoted Expert, "Effective Class Action Notice Promotes Access to Justice: Insight from a New U.S. Federal Judicial Center Checklist," Canadian Supreme Court Law Review, (2011), 53 S.C.L.R. (2d).

Co-Author, with Hon. Dickran Tevrizian – "Expert Opinion: It's More Than Just a Report…Why Qualified Legal Experts Are Needed to Navigate the Changing Media Landscape," BNA Class Action Litigation Report, 12 CLASS 464, May 27, 2011.

Co-Author, with Hon. Dickran Tevrizian, Your Insight, "Expert Opinion: It's More Than Just a Report -Why Qualified Legal Experts Are Needed to Navigate the Changing Media Landscape," TXLR, Vol. 26, No. 21, May 26, 2011.

Quoted Expert, "Analysis of the FJC's 2010 Judges' Class Action Notice and Claims Process Checklist and Guide: A New Roadmap to Adequate Notice and Beyond," BNA Class Action Litigation Report, 12 CLASS 165, February 25, 2011.

Author, Five Key Considerations for a Successful International Notice Program, BNA Class Action Litigation Report, April, 9, 2010 Vol. 11, No. 7 p. 343.

Quoted Expert, "Communication Technology Trends Pose Novel Notification Issues for Class Litigators," BNA Electronic Commerce and Law, 15 ECLR 109 January 27, 2010.

Author, "Legal Notice: R U ready 2 adapt?" BNA Class Action Report, Vol. 10 Class 702, July 24, 2009.



Author, "On Demand Media Could Change the Future of Best Practicable Notice," BNA Class Action Litigation Report, Vol. 9, No. 7, April 11, 2008, pp. 307-310.

Quoted Expert, "Warranty Conference: Globalization of Warranty and Legal Aspects of Extended Warranty," Warranty Week, warrantyweek.com/archive/ww20070228.html/ February 28, 2007.

Co-Author, "Approaches to Notice in State Court Class Actions," For The Defense, Vol. 45, No. 11, November, 2003.

Citation, "Recall Effectiveness Research: A Review and Summary of the Literature on Consumer Motivation and Behavior," U.S. Consumer Product Safety Commission, CPSC-F-02-1391, p.10, Heiden Associates, July 2003.

Author, "The Web Offers Near, Real-Time Cost Efficient Notice," American Bankruptcy Institute, ABI Journal, Vol. XXII, No. 5., 2003.

Author, "Determining Adequate Notice in Rule 23 Actions," For The Defense, Vol. 44, No. 9 September, 2002.

Author, "Legal Notice, What You Need To Know and Why," Monograph, July 2002.

Co-Author, "The Electronic Nature of Legal Noticing," The American Bankruptcy Institute Journal, Vol. XXI, No. 3, April 2002.

Author, "Three Important Mantras for CEO's and Risk Managers," - International Risk Management Institute, irmi.com, January 2002.

Co-Author, "Used the Bat Signal Lately," The National Law Journal, Special Litigation Section, February 19, 2001.

Author, "How Much is Enough Notice," Dispute Resolution Alert, Vol. 1, No. 6. March 2001.

Author, "Monitoring the Internet Buzz," The Risk Report, Vol. XXIII, No. 5, Jan. 2001.

Author, "High-Profile Product Recalls Need More Than the Bat Signal," - International Risk Management Institute, irmi.com, July 2001.

Co-Author, "Do You Know What 100 Million People are Buzzing About Today?" Risk and Insurance Management, March 2001.

Quoted Article, "Keep Up with Class Action," Kentucky Courier Journal, March 13, 2000.



Author, "The Great Debate - How Much is Enough Legal Notice?" American Bar Association – Class Actions and Derivatives Suits Newsletter, winter edition 1999.

**SPEAKER/EXPERT PANELIST/PRESENTER**

Miami Law Class Action
& Complex Litigation Forum

Faculty Panelist, " Settlement and Resolution of Class Actions," Miami, FL December 2, 2016.

The Knowledge Group

Faculty Panelist, "Class Action Settlements: Hot Topics 2016 and Beyond," Live Webcast, www.theknowledgegroup.org, October 2016.

ABA National Symposium

Faculty Panelist, "Ethical Considerations in Settling Class Actions," New Orleans, LA, March 2016.

SF Banking Attorney Assn.

Speaker, "How a Class Action Notice can Make or Break your Client's Settlement," San Francisco, CA, May 2015.

Perrin Class Action Conf.

Faculty Panelist, "Being Media Relevant, What It Means and Why It Matters – The Social Media Evolution: Trends, Challenges and Opportunities," Chicago, IL May 2015.

Bridgeport Continuing Ed.

Speaker, Webinar "Media Relevant in the Class Notice Context." July, 2014.

Bridgeport Continuing Ed.

Faculty Panelist, "Media Relevant in the Class Notice Context." Los Angeles, California, April 2014.

CASD 5th Annual

Speaker, "The Impact of Social Media on Class Action Notice." Consumer Attorneys of San Diego Class Action Symposium, San Diego, California, September 2012.

Law Seminars International

Speaker, "Class Action Notice: Rules and Statutes Governing FRCP (b)(3) Best Practicable… What constitutes a best practicable notice? What practitioners and courts should expect in the new era of online and social media."  Chicago, IL, October 2011.
***Voted by attendees as one of the best presentations given.***

CASD 4th Annual

Faculty Panelist, "Reasonable Notice - Insight for practitioners on the FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*. Consumer Attorneys of San Diego Class Action Symposium, San Diego, California, October 2011.



| | |
|---|---|
| CLE International | Faculty Panelist, Building a Workable Settlement Structure, CLE International, San Francisco, California May, 2011. |
| CASD | Faculty Panelist, "21st Century Class Notice and Outreach." 3nd Annual Class Action Symposium CASD Symposium, San Diego, California, October 2010. |
| CASD | Faculty Panelist, "The Future of Notice." 2nd Annual Class Action Symposium CASD Symposium, San Diego California, October 2009. |
| American Bar Association | Speaker, 2008 Annual Meeting, "Practical Advice for Class Action Settlements: The Future of Notice In the United States and Internationally – Meeting the Best Practicable Standard." Section of Business Law Business and Corporate Litigation Committee – Class and Derivative Actions Subcommittee, New York, NY, August 2008. |
| Women Lawyers Assn. | Faculty Panelist, Women Lawyers Association of Los Angeles "The Anatomy of a Class Action." Los Angeles, CA, February, 2008. |
| Warranty Chain Mgmt. | Faculty Panelist, Presentation Product Recall Simulation. Tampa, Florida, March 2007. |
| Practicing Law Institute (PLI) | Faculty Panelist, CLE Presentation, 11th Annual Consumer Financial Services Litigation. Presentation: Class Action Settlement Structures – Evolving Notice Standards in the Internet Age. New York/Boston (simulcast), NY March 2006; Chicago, IL April 2006 and San Francisco, CA, May 2006. |
| U.S. Consumer Product Safety Commission | Ms. Finegan participated as an expert panelist to the CPSC to discuss ways in which the CPSC could enhance and measure the recall process. As a panelist, Ms Finegan discussed how the CPSC could better motivate consumers to take action on recalls and how companies could scientifically measure and defend their outreach efforts. Bethesda, MD, September 2003. |
| Weil, Gotshal & Manges | Presenter, CLE presentation, "A Scientific Approach to Legal Notice Communication." New York, June 2003. |
| Sidley & Austin | Presenter, CLE presentation, "A Scientific Approach to Legal Notice Communication." Los Angeles, May 2003. |


| | |
|---|---|
| Kirkland & Ellis | Speaker to restructuring group addressing "The Best Practicable Methods to Give Notice in a Tort Bankruptcy." Chicago, April 2002. |
| Georgetown University Law | Faculty, CLE White Paper: "What are the best practicable methods to Center Mass Tort Litigation give notice? Dispelling the communications myth – A notice Institute disseminated is a notice communicated," Mass Tort Litigation Institute. Washington D.C., November, 2001. |
| American Bar Association | Presenter, "How to Bullet-Proof Notice Programs and What Communication Barriers Present Due Process Concerns in Legal Notice," ABA Litigation Section Committee on Class Actions & Derivative Suits. Chicago, IL, August 6, 2001. |
| McCutchin, Doyle, Brown | Speaker to litigation group in San Francisco and simulcast to four other McCutchin locations, addressing the definition of effective notice and barriers to communication that affect due process in legal notice. San Francisco, CA, June 2001. |
| Marylhurst University | Guest lecturer on public relations research methods. Portland, OR, February 2001. |
| University of Oregon | Guest speaker to MBA candidates on quantitative and qualitative research for marketing and communications programs. Portland, OR, May 2001. |
| Judicial Arbitration & Mediation Services (JAMS) | Speaker on the definition of effective notice. San Francisco and Los Angeles, CA, June 2000. |
| International Risk Management Institute | Past Expert Commentator on Crisis and Litigation Communications. www.irmi.com. |
| The American Bankruptcy Institute Journal (ABI) | Past Contributing Editor – Beyond the Quill. www.abi.org. |

## BACKGROUND

Ms Finegan's past experience includes working in senior management for leading Class Action Administration firms including The Garden City Group ("GCG") and Poorman-Douglas Corp., ("EPIQ"). Ms. Finegan co-founded Huntington Advertising, a nationally recognized leader in legal notice communications. After Fleet Bank purchased her firm in 1997, she grew the company into one of the nation's leading legal notice communication agencies.



Prior to that, Ms. Finegan spearheaded Huntington Communications, (an Internet development company) and The Huntington Group, Inc., (a public relations firm). As a partner and consultant, she has worked on a wide variety of client marketing, research, advertising, public relations and Internet programs. During her tenure at the Huntington Group, client projects included advertising (media planning and buying), shareholder meetings, direct mail, public relations (planning, financial communications) and community outreach programs. Her past client list includes large public and privately held companies: Code-A-Phone Corp., Thrifty-Payless Drug Stores, Hyster-Yale, The Portland Winter Hawks Hockey Team, U.S. National Bank, U.S. Trust Company, Morley Capital Management, and Durametal Corporation.

Prior to Huntington Advertising, Ms. Finegan worked as a consultant and public relations specialist for a West Coast-based Management and Public Relations Consulting firm.

Additionally, Ms. Finegan has experience in news and public affairs. Her professional background includes being a reporter, anchor and public affairs director for KWJJ/KJIB radio in Portland, Oregon, as well as reporter covering state government for KBZY radio in Salem, Oregon. Ms. Finegan worked as an assistant television program/promotion manager for KPDX directing $50 million in programming. She was also the program/promotion manager at KECH-22 television.

Ms. Finegan's multi-level communication background gives her a thorough, hands-on understanding of media, the communication process, and how it relates to creating effective and efficient legal notice campaigns.

### MEMBERSHIPS, PROFESSIONAL CREDENTIALS

**APR -** The Universal Board of Accreditation Public Relations Society of America – Accredited.
**Member of the Public Relations Society of America**
**Member Canadian Public Relations Society**

### SOCIAL MEDIA

*LinkedIn:* **www.linkedin.com/in/jeanne-finegan-apr-7112341b**
*Twitter:* *@jfinhfmedia*