**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

ANDREW TYLER FOSTER, et al,

                    Plaintiffs,

        vs.

L-3 COMMUNICATIONS
EOTECH, INC. et al,

              Defendants.

Case No.6:15-cv-03519-BCW

Consolidated with:

     Case No. 4:16-cv-00095-BCW
     Case No. 6:16-cv-03109-BCW
     Case No. 4:16-cv-00438-BCW
     Case No. 4:16-cv-00439-BCW

Hon. Brian C. Wimes

## SUGGESTIONS IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND CLASS CERTIFICATION

# TABLE OF CONTENTS

CONCISE STATEMENT OF ISSUES PRESENTED ................................................................. iv

INTRODUCTION ................................................................................................................ 1

I.    BACKGROUND ....................................................................................................... 2

      A.    Procedural History ...................................................................................... 2

      B.    Settlement Negotiations .............................................................................. 3

      C.    The Settlement Agreement .......................................................................... 4

      D.    Settlement Notice ........................................................................................ 4

ARGUMENT ....................................................................................................................... 5

I.    FINAL APPROVAL OF THE SETTLEMENT SHOULD BE GRANTED ................... 5

      A.    The Standard of Approval of a Class Action Settlement ............................ 5

      B.    The Settlement Warrants Final Approval and Is Fair, Reasonable,
            and Adequate .............................................................................................. 6

            1.    The Proposed Settlement, Which Was The Result Of Arm's-Length
                  Negotiations Among Experienced Counsel, Is Presumptively Valid ......... 7

            2.    The Proposed Settlement Is Fair, Reasonable, And Adequate As
                  Required Under Fed. R. Civ. P. 23(e) ....................................................... 9

                  a.    The Settlement Is Fair And Reasonable When Weighed
                        Against The Strengths And Weaknesses Of The Claims ............... 9

                  b.    Defendant's Financial Condition Supports Settlement ................ 10

                  c.    Risk And Expense Of Further Litigation (i.e. Trial And Any
                        Subsequent Appeals) Weigh In Favor Of Approval .................... 10

                  d.    The Minimal Amount Of Opposition Supports Approval Of The
                        Settlement .................................................................................. 11

II.   THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES ... 12

      A.    The Class Satisfies The Requirements Of Rule 23(a) ........................................ 12

            1.    The Class Members Are Too Numerous To Be Joined ............................ 13

            2.    There Are Common Questions of Law And Fact .................................... 13

Case 6:15-cv-03519-BCW   Document 129   Filed 05/19/17   Page 2 of 32

|   | 3. | Plaintiffs' Claims Are Typical Of The Class ............................................. 15 |
|   | 4. | Plaintiffs Will, And Have, Fairly And Adequately Protected The Interest Of The Class ............................................................................................. 16 |

B. Rule 23(b)(3) Is Satisfied ......................................................................................... 17

    1. Issues Common To The Class Predominate Over Individual Issues ........ 18

    2. A Class Action Is Superior To Other Methods Of Adjudication .............. 19

C. Interim Lead Counsel Should be Appointed Class Counsel ................................ 20

III. THE NOTICE PROGRAM SATISFIES DUE PROCESS ............................................. 21

CONCLUSION ...................................................................................................................... 23

Case 6:15-cv-03519-BCW   Document 129   Filed 05/19/17   Page 3 of 32

## CONCISE STATEMENT OF ISSUES PRESENTED

1.     Whether this Court should enter an order granting final approval of the proposed

Settlement and certifying the proposed Settlement Class in this action?

Plaintiffs' Answer:    Yes

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)...........................................17, 19, 20

*Boswell v. Panera Bread Co.*,
   311 F.R.D. 515 (E.D. Mo. 2015) ..........................................................................................13

*In re Charter Communications, Inc., Securities Litig.*,
   No. MDL 1506, 4:02-CV-1186 CAS,
   2005 U.S. Dist. LEXIS 14772 (E.D. Mo. June 30, 2005).......................................................9

*Claxton v. Kum & Go, L.C.*,
   No. 6:14-CV-03385-MDH,
   2015 U.S. Dist. LEXIS 75605 (W.D. Mo. June 11, 2015) ............................................. *passim*

*Cromeans v. Morgan Keegan & Co.*,
   303 F.R.D. 543 (W.D. Mo. 2014) ........................................................................................13

*DeBoer v. Mellon Mortg. Co.*,
   64 F.3d 1171 (8th Cir. 1995) ............................................................................................8, 11

*Eastwood v. Southern Farm Bureau Casualty Insurance Co.*,
   No 3:11-CV-03075, 2014 U.S. Dist. LEXIS 142652 (D. Ark. Oct. 7, 2014).........................22

*Ebert v. Gen. Mills, Inc.*,
   823 F.3d 472 (8th Cir. 2016) ..........................................................................................12, 14

*Ebert v. Gen. Mills, Inc.*,
   No. CIV. 13–33412015,
   U.S. Dist. LEXIS 23736 (D. Minn. Feb. 27, 2015) .............................................................13

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995).....................................................................................................7

*Grunin v. Int'l House of Pancakes*,
   513 F.2d 114 (8th Cir. 1975) ....................................................................................6, 7, 9, 21

*Hashw v. Department Stores National Bank*,
   No. 13-727, 2016 U.S. Dist. LEXIS 61004 (D. Minn. April 26, 2016)............................11, 22

*Ingersoll v. Farmland Foods, Inc.*,
   No. 10-6046-CV-SJ-FJG,
   2012 U.S. Dist. LEXIS 24021 (W.D. Mo. Feb. 9, 2012).........................................................14

*Khoday v. Symantec Corp.*,
    No. CIV. 11-180, 2014 U.S. Dist. LEXIS (D. Minn. Mar. 31, 2014) ....................................15

*Lafollette v. Liberty Mut. Fire Ins. Co.*,
    No. 2:14-CV-04147-NKL,
    2016 U.S. Dist. LEXIS 99980 (W.D. Mo. Aug. 1, 2016)...........................................15, 16, 18

*Liddell by Liddell v. Bd. of Edu. of City of St. Louis*,
    126 F.3d 1049 (8th Cir. 1997) ...................................................................................6

*Marshall v. Nat'l Football League*,
    787 F.3d 502 (8th Cir. 2015) ...................................................................................9

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)...................................................................................................7

*Petrovic v Amoco Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999) ..........................................................................6, 9, 10, 11

*Pollard v. Remington Arms Company, LLC*,
    No. 4:13-CV-00086, 2017 U.S. Dist. LEXIS 35885 (W.D. Mo. Mar. 14, 2017)................5, 6

*Ramsey v. Sprint*
    No. 4:11-Cv-3211, 2012 U.S. Dist. LEXIS 171145 (D. Neb. Dec. 3, 2012) .........................22

*Roeser v. Best Buy Co.*,
    No. CIV. 13-1968 ...................................................................................................15

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*,
    821 F.3d 992 (8th Cir. 2016) ...............................................................................13, 18

*Speer v. Cerner Corporation*,
    No. 14-0204-CV-W-FJG,
    2016 U.S. Dist. LEXIS 131873 (W.D. Mo. Sept. 27, 2016) ............................................19, 20

*In re Uponor, Inc.*, *F1807 Plumbing Fittings Prods. Liab. Litig.*,
    716 F.3d 1057 (8th Cir. 2013) ...............................................................................7, 12

*Van Horn v. Trickey*,
    840 F.2d 604 (8th Cir. 1988) ...................................................................................9

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
    396 F.3d 922 (8th Cir. 2005) ...................................................................................9

## Other Authorities

Alba Conte & Herbert Newberg, Newberg on Class Actions (4th ed. 2002)...................................7

Federal Rule of Civil Procedure 23(a) .........................................................12, 13, 15, 16

Case 6:15-cv-03519-BCW   Document 129   Filed 05/19/17   Page 6 of 32

Federal Rule of Civil Procedure 23(b)(3) ...............................................................17, 19

Federal Rule of Civil Procedure 23(c)(2)(B) ................................................................21

Federal Rule of Civil Procedure 23(e)(2) ......................................................................5

Federal Rule of Civil Procedure 23(g)...................................................................20, 21

Plaintiffs, individually and on behalf of the Class, ("Plaintiffs") respectfully move for final approval of the Settlement preliminarily approved by the Court on February 15, 2017. *See* ECF No. 124. For the reasons set forth below, the Settlement is fair, reasonable and adequate, and should be approved under Federal Rule of Civil Procedure 23(e).

## INTRODUCTION

The case involves allegations that hundreds of thousands of Holographic Weapons Sights ("HWS") that were sold to consumers did not perform as advertised, resulting in, among other things, inaccurate shot placement. Defendant denies these allegations. The proposed Settlement resolves the class action claims pending in this Court against Defendant and offers the following substantial benefits:

1. The option to return HWS purchased as far back as 2005 and receive a full refund of the purchase price up to the Manufacturer's Suggested Retail Price, ranging from $299 to $1,179, plus $15 for shipping and a $22.50 L3 EOTech product voucher; or

2. The option to keep the HWS and receive a cash benefit between $25 and $50 depending how many people submit Valid Claims; or

3. The option to keep the HWS and receive a $100 voucher toward the purchase of a new L3 EOTech product; or

4. The receipt of a $22.50 voucher toward the purchase of a new L3 EOTech product for those class members who previously received a refund from L3 EOTech.

The Settlement is the result of extensive arm's-length negotiations between the parties, including the use of a third-party independent mediator Rodney A. Max, who conducted four mediations across the country. The Settlement confers substantial benefits to the Class in a case

1

of considerable complexity, and in the face of hard-fought litigation by Defendant and the attendant risks of motion practice, trial and lengthy appeals.

The Class contains hundreds of thousands of members. As a result of this litigation, as of May 12, 2017, more than approximately 78,300 Sights have been returned. According to data provided by class members at this time the average cost of returned sights is $651.67, thus the approximate value of the returns so far is $51,025,761.00 and none had opted out or objected[1]. *See* Declaration of Tim Dollar in Support of Plaintiffs' Motion for Final Approval of Class Settlement, Class Certification, and Award of Attorneys' Fees, Expenses and Service Awards, dated May 19, 2017 ("Dollar Decl.") ¶ 40. The favorable class member response strongly supports settlement approval.

As such, Plaintiffs respectfully request that the Court enter an Order granting final approval of the Settlement and granting class certification for settlement purposes.

## I. BACKGROUND

### A. Procedural History

Commencing in late 2015, a series of proposed class actions alleging violations of the federal Magnuson Moss Act, state common law, and various state consumer statutes were filed against Defendant in Missouri, Oregon and Michigan. The parties in the various cases conferred and in the interest of the class and judicial efficiency, agreed to consolidate the cases in Missouri. Plaintiffs filed a Second Amended Consolidated Complaint ("SAC") on September 19, 2016, on behalf of all plaintiffs which became the operative pleading. ECF No. 101. On October 3, 2016, the Court entered an order appointing Tim Dollar, Craig R. Heidemann, Sharon S. Almonrode, Bonner C. Walsh, and Adam R. Gonnelli as Interim Lead Counsel. ECF No. 107.

---

[1] The deadline to opt out or object is May 23, 2017.

2

Interim Lead Counsel conducted an in-depth investigation of the claims and underlying events relating to the Action. This investigation included, among other things, review and analysis of (i) publicly available information concerning the Defendant, including newspaper articles, online publications, scientific presentations by Defendant, analyst reports and commentary; (ii) regulatory filings made by Defendant with the United States Securities and Exchange Commission; (iii) inspection and actual testing of the Sights; (iv) interviews and statements from plaintiffs and class members about their experiences with the Sights; (v) interviews with a consulting expert and an industry insider concerning Sight design and marketing; and (vi) a review of information in *United States* v. *L-3 Communications EOTech, Inc.*, et al., 1:15-cv-09262, (S.D.N.Y.) a case filed by the Department of Justice. Dollar Decl. ¶¶ 18-19.

Plaintiffs allege in the Second Consolidated Class Action Complaint that EOTech sold Holographic Weapons Sights to consumers that Defendant advertised as having been tested in accordance with military standards. SAC ¶ 8. Plaintiffs further alleged that EOTech Sights, contrary to Defendant's representations, could not properly operate in temperatures from -40 to 150F, were not free of "parallax" and were not fogproof. SAC ¶ 33. Defendant has denied the claims and disputed these allegations, and is confident that it would prevail on its defenses. Plaintiffs sought relief in this action individually and on behalf of a nationwide Class under the federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*; state consumer fraud statutes; breaches of express and implied warranties; and unjust enrichment. SAC ¶ 12.

## B.    Settlement Negotiations

The Parties engaged in extensive discussions regarding the claims and defenses in the case, the size and composition of the class, the likelihood of success of motions for class certification, summary judgment, and at trial, the scope and nature of discovery, and potential damages to the

3

class. These discussion and negotiations took place over the course of a year both directly between the parties and through Mr. Max including four in-person mediations. These discussions were often contentious but ultimately led to this Settlement. Dollar Decl. ¶ 32.

At the time the Parties executed the Settlement Agreement, Plaintiffs and Interim Lead Counsel had a thorough understanding of the strengths and weaknesses of the Plaintiffs' claims and Defendant's potential defenses. In addition to their own investigations, counsel reviewed nearly 50,000 pages of documents produced by Defendants. Dollar Decl. ¶ 28. In light of (i) the Settlement's substantial benefits; (ii) the cost and risks of continuing the litigation against the Defendant through trial and appeals; (iii) the fact that the proposed Settlement resulted from arm's length negotiations by an experienced and respected mediator; and (iv) the approval of the Settlement by the named Plaintiffs with the recommendation of the Court-appointed Interim Lead Counsel, it is respectfully submitted that the Settlement warrants final approval.

### C. The Settlement Agreement

In exchange for the relief awarded to Class Members, currently more than $51,000,000.00, the class will release the claims brought in this litigation. Entirely separate from the relief for class members, the Settlement Agreement allows counsel to apply for an award of attorneys' fees up to $10,000,000.00 including litigation expenses and service awards to the plaintiffs who prosecuted this litigation on behalf of the class. Any fee award will not reduce the benefits to the Class.

### D. Settlement Notice

Pursuant to the Notice Plan approved by the Court, the nationally recognized settlement and notice administrator Heffler Claims Group mailed out over 40,000 notices to HWS owners for whom Defendant had contact information. *See* Declaration of Jeanne C. Finegan Concerning Implementation of Notice Program dated May 18, 2017 (Finegan Decl.") ¶ 16-18. Heffler also

designed and implemented a far-reaching notice program designed to reach the other HWS owners. Heffler ran print advertisements in six print publications with over 35 million readers including *American Rifleman*, *Guns & Ammo* and *Sports Illustrated*.  Finegan Decl. ¶ 20.  Heffler's program also delivered over 203 million online and social media impressions and appeared on websites frequented by class members, such as AR15.com.  Finegan Decl. ¶ 21.  Banner ads also appeared in e-newsletters with a total circulation of 484,000 including *Hunting* and *Rifle Shooter* and throughout social media platforms including Facebook and Twitter specifically targeting users who have engaged with content and groups related to Scopes, Rifles, Accessories, Firearms, NRA, Second Amendment, and more.  Finegan Decl. ¶¶ 21-24.

The notices directed Settlement Class members to a website and toll-free phone number for additional information and claims forms.  As of May 16, there were 331,405 visits to the website, Finegan Decl. ¶ 28, and 5,159 calls were made to the information hotline.  Finegan Decl. ¶ 29.  The calls occupied over 253 hours of automated call time and over twenty-three hours of live operator time.  *Id*.  Based on Class Member and other input, the Heffler Claims Group and Class Counsel worked to improve responses and, as necessary, adjusted the information on the website and the claim forms, with notice to or input from Defendant and/or the Court where appropriate.

## ARGUMENT

## I.  FINAL APPROVAL OF THE SETTLEMENT SHOULD BE GRANTED

### A.  The Standard of Approval of a Class Action Settlement

In order to approve a class action settlement, the Court must find that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *Pollard v. Remington Arms Company, LLC*, No. 4:13-CV-00086, 2017 U.S. Dist. LEXIS 35885, at *19 (W.D. Mo. Mar. 14, 2017) (citing *In re Uponor, Inc.*, *F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir.

5

2013)).  Additionally, the court must "'ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned.'" *Pollard*, 2017 U.S. Dist. LEXIS 35885, at *48 (citing *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 934 (8th Cir. 2005)).

In determining whether a settlement is "fair, reasonable, and adequate," the court considers: "(1) the merits of the plaintiffs' case weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." *Pollard*, 2017 U.S. Dist. LEXIS 35885, at *48 (citing *Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015)).  The most important factor in the Court's consideration is the balance "of the strength of the plaintiffs' case against the terms of the settlement." *Id.*  Importantly, a district court, in performing this evaluation, "'need not undertake the type of detailed investigation that trying the case would involve.'" *Pollard*, 2017 U.S. Dist. LEXIS 35885, at *49 (citing *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)).

Although the decision to approve a proposed settlement is committed to the Court's sound discretion, courts attach "[a]n initial presumption of fairness . . . to a class settlement reached in arm's length negotiations between experienced and capable counsel after meaningful discovery." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975).

### B.    The Settlement Warrants Final Approval and Is Fair, Reasonable, and Adequate

Settlement is the preferred means of resolving litigation, particularly in the class action context. *Liddell by Liddell v. Bd. of Edu. of City of St. Louis,* 126 F.3d 1049, 1056 (8th Cir. 1997).  The Eighth Circuit has recognized that "strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor." *Petrovic v Amoco Oil Co.,* 200 F.3d 1140, 1148 (8th Cir. 1999) (citing *Little Rock Sch. Dist. V. Pulaski Cnty. Special Sch. Dist.*

*No.* 1, 921 F.2d 1371, 1388 (8th Cir. 1990)).  By supporting the settlement of complex class-action disputes, the judicial system can minimize litigation expenses on both sides, reduce the strain on scarce judicial resources and avoid the risks of trial to both parties.  *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 784 (3d Cir. 1995) (citing cases); Alba Conte & Herbert Newberg, Newberg on Class Actions ("Newberg") at § 11.41 (4th ed. 2002).

Final approval of the Settlement is warranted because the Settlement is clearly beneficial to the Class.  This is particularly true in light of the complexities of this action and the substantial risks of continued litigation, including the risk of receiving a smaller recovery if the action were to continue and the risk of delay and potential appeals.

<blockquote>1.    The Proposed Settlement, Which Was The Result Of Arm's-Length Negotiations Among Experienced Counsel, Is Presumptively Valid</blockquote>

The proposed Settlement is presumptively fair, reasonable and adequate, as it was reached after substantial investigation, discovery, disclosures and litigation, and it was the result of arm's-length negotiations between experienced counsel.

Although the decision to approve a proposed settlement is committed to the Court's sound discretion, courts attach "[a]n initial presumption of fairness . . . to a class settlement reached in arm's length negotiations between experienced and capable counsel after meaningful discovery." *Grunin*, 513 F.2d at 123; Newberg § 11.24.  Accordingly, this Court should begin its analysis with the presumption that the proposed Settlement is fair and valid.  Courts have held terms of a settlement are appropriate where the parties, represented by experienced counsel, have engaged in extensive negotiations at an appropriate stage in the litigation, when they can intelligently evaluate the strengths and weaknesses of the case and the propriety of the settlement.  *See, e.g., In re Uponor, Inc.*, 716 F.3d at 1063 ("A settlement agreement is 'presumptively valid.'") (quoting *Little Rock Sch. Dist.*, 921 F.3d at 1391); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999) (courts

7

"may take a settlement amount as good evidence of the maximum available if . . . parties of equal knowledge and negotiating skill agreed upon the figure through arm's length bargaining, unhindered by any considerations tugging against the interests of the parties ostensibly represented in the negotiation.").

The extent of the investigation and arm's-length negotiations in this action has been more than sufficient to support a presumption of fairness of this Settlement. To be sure, Plaintiffs and Defendant are sophisticated in the practice of consumer class actions and they were capable of assessing the strengths and weaknesses of their positions, and balancing the potential value of Plaintiffs' claims against the substantial risks and expense of trial. The Court fully considered Plaintiffs' counsel's experience and qualifications prior to granting the motion to appoint interim class counsel, in which counsel detailed their qualifications. ECF Nos. 81-87, 107. Further, settlement negotiations were lengthy and protracted, and conducted with the assistance of an experience class action mediator, Rodney A. Max of Upchurch Watson White & Max. *See* Declaration of Rodney A. Max, dated May 17, 2017 ("Max Decl."), who has conducted more than 5,000 mediations. Max Decl. ¶ 6.

Where, as here, the parties are represented by experienced counsel and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference. *See DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995) (views of counsel to be accorded deference) (citations omitted). The extent and nature of the negotiations conducted by both Class Counsel and Defense Counsel, their experience litigating complex class actions, and the arm's length nature of the settlement negotiations all weigh in favor of final approval of the Settlement.

8

### 2. The Proposed Settlement Is Fair, Reasonable, And Adequate As Required Under Fed. R. Civ. P. 23(e)

In addition to evaluating the propriety of the negotiations, courts in the Eighth Circuit consider four factors in determining whether a proposed settlement is fair, reasonable, and adequate: (1) the merits of the plaintiff's case weighed against the settlement terms; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *Claxton v. Kum & Go, L.C.*, No. 6:14-CV-03385-MDH, 2015 U.S. Dist. LEXIS 75605, at \*15 (W.D. Mo. June 11, 2015) (citing *Marshall*, 787 F.3d at 508); *see also In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932-33 (8th Cir. 2005) (citing *Grunin*, 513 F.2d at 124); *Van Horn*, 840 F.2d at 607.

All four factors weigh in favor of granting final approval of the Settlement.

### a. The Settlement Is Fair And Reasonable When Weighed Against The Strengths And Weaknesses Of The Claims

"The single most important factor in determining whether a statement is fair, reasonable and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Marshall*, 787 F.3d at 508 (quoting *Van Horn*, 840 F.2d at 607); *see also In re Wireless*, 396 F.3d at 933 (citing *Petrovic*, 200 F.3d at 1150). The Court must balance the risks and benefits of litigation against immediate recovery for the class members. *Grunin*, 513 F.2d at 124; *Petrovic¸* 200 F.3d at 1150. In evaluating this factor, however, "the Supreme Court has cautioned . . . that in determining whether to approve a settlement, courts should 'not decide the merits of the case or resolve unsettled legal questions.'" *In re Charter Communications, Inc., Securities Litig.*, No. MDL 1506, 4:02-CV-1186 CAS, 2005 U.S. Dist. LEXIS 14772, at \*17 (E.D. Mo. June 30, 2005) (citing *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981)); *see also Grunin*, 513 F.2d at 1123-24.

9

Here, the framework of the proposed Settlement will result in Class Members recovering a full refund if they so choose for HWS manufactured as far back as 2005. Absent this Settlement, however, Class Members' ultimate recovery of any amount of their losses is uncertain. Rather than a full refund, the ultimate finder of fact might have awarded a small fraction of the purchase price or nothing at all. Further, Defendant had numerous defenses that would have raised complicated and difficult issues at the class certification and summary judgment stages, and at trial. Moreover, there is no doubt that Defendant would have appealed any unfavorable rulings or a verdict. Although Plaintiffs strongly believe in the merits of their claims, the uncertainties of protracted litigation compared with the benefit of a full refund right now strongly militates in favor of final settlement approval.

### b.   Defendant's Financial Condition Supports Settlement

Courts also examine the compensation provided in the settlement and the defendant's ability to pay when determining whether the settlement is fair, reasonable and adequate. *See Petrovic*, 200 F.3d at 1152 (citing *Grunin*, 513 F.2d at 124). In this case, Defendant is a large defense contractor. There is no reason for concern that Defendant will be unable to provide the benefits outlined in the Settlement Agreement.

### c.   Risk And Expense Of Further Litigation (i.e. Trial And Any Subsequent Appeals) Weigh In Favor Of Approval

The Court must also evaluate whether the expense and complexity of further litigation weighs in favor of approving the settlement. Where, as here, continued litigation would result in the risk and expense of a lengthy trial and likely appeals of any pro-plaintiff verdict, this factor

10

weighs in favor of settlement approval. *Petrovic*, 200 F.3d at 1152 (prospect of lengthy trial and appeals militated in favor of class settlement).

If the litigation had continued, the parties would have engaged in lengthy and expensive discovery, likely requiring Court intervention to settle disputes. Plaintiffs would have moved for class certification and likely summary judgment. Indeed, counsel had begun to prepare both motions when settlement was reached. These motions would have been vigorously opposed by Defendant. There would have been expert testimony and probably *Daubert* motions and evidentiary hearings in support of and in opposition to those motions. In addition, the Court's disposition of these extended and complex battles might have been appealed. Dollar Decl. ¶ 37. The length of time for discovery and dispositive motions would have been measured in years, to say nothing of a trial and post-verdict motion practice, and appeals of any verdict. At the end, there is no guarantee that class members would have received more than they stand to in this settlement.

### d. The Minimal Amount Of Opposition Supports Approval Of The Settlement

As of May 18, 2017, there has been no opposition to the Settlement. There have been no requests for exclusion and no objections. Thus far, as a result of this litigation, more than approximately 78,300 Sights have been returned. The lack of opt-outs and objections is a strong indication of the Settlement Class's satisfaction with the settlement and favors final approval. *See DeBoer*, 64 F.3d at 1178 ("The fact that only a handful of class members objected to the settlement similarly weighs in its favor."); *Hashw v. Department Stores National Bank*, No. 13-727, 2016 U.S. Dist. LEXIS 61004 at *14 (D. Minn. April 26, 2016) ("negligible" number of opt outs and small number of objectors favored settlement approval).

11

## II.     THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES

In its Order of February 15, 2017, the Court granted preliminary certification of the settlement class.  In granting final settlement approval, the Court should also certify the Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The proposed Settlement Class consists of:

> All United States residents who are the current owner of EOTech HWS Models 400, 502, 511, 512, 512 CAMO, 512.XBOW, 512.LBC1, 516, 517, 518, 551, 552, 552.XR, 552.LBC1, 552.LBC2, 553, 555, 555.USMC, 556, 557, 557.4XFTS, 557.4XFXD, 557.3X.FTS, 557.G23.FTS, 558,  EXPS2, EXPS3, HHS I, HHS II, MPO II, MPO III, XPS2, XPS2-RF, XPS2-Z, XPS2-Z2, XPS2-300, and XPS3 that were manufactured between January 1, 2005, and November 1, 2016, and purchased for personal use on or before the Preliminary Approval Order date or who previously returned one of these HWS models to EOTech and received a refund[2].

The Eighth Circuit has acknowledged the propriety of certifying a class solely for purposes of a class action settlement.  *See, e.g., In re Uponor, Inc.,* 716 F.3d at 1060 (affirming district court's certification of proposed classes for settlement purposes).  This Court has "broad discretion" to decide whether certification is appropriate.  *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 477 (8th Cir. 2016) (citations omitted).

### A.     The Class Satisfies The Requirements Of Rule 23(a)

Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

---

[2] Excluded from the class are: all persons who timely exclude themselves from this settlement; governmental entities; subsidiaries, affiliates, officers, employees or directors of the Defendant; residents of the U.S. Territories; the Judge in this case, members of his family, or members of court staff related to this case; or Plaintiffs' lawyers in this lawsuit.

### 1. The Class Members Are Too Numerous To Be Joined

The first subdivision of Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "In considering this requirement, courts examine the number of persons in the proposed class and factors such as the nature of the action, the size of the individual claims, and the inconvenience of trying the individual claims." *Cromeans v. Morgan Keegan & Co.*, 303 F.R.D. 543, 551 (W.D. Mo. 2014) (citing *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 561 (8th Cir.1982)). "The Eighth Circuit has not established a rigid rule regarding the size of the proposed class that will satisfy this requirement." *Id.* (citing *Rattray v. Woodbury County, Iowa,* 253 F.R.D. 444, 452 (N.D. Iowa 2008), *order aff'd,* 614 F.3d 831 (8th Cir.2010)). That said, courts within the Eighth Circuit have frequently certified classes of fewer than 100 members. *See, e.g., Boswell v. Panera Bread Co.*, 311 F.R.D. 515, 527 (E.D. Mo. 2015) ("the Court concludes that the proposed class of at least 61 individuals, who are geographically disbursed throughout numerous states, satisfies the numerosity requirement."); *Ebert v. Gen. Mills, Inc.,* No. CIV. 13–3341 DWF/JJK, 2015 U.S. Dist. LEXIS 23736, at *23 (D. Minn. Feb. 27, 2015) ("In general, a putative class with over forty members meets [the numerosity] requirement.").

Here, the numerosity requirement is easily satisfied. According to sales information provided by the Defendant, the proposed nationwide Class is estimated to involve many hundred thousands of consumers. Because joining thousands of Class members who reside in a geographically dispersed area would be burdensome and expensive, and thus impracticable, the numerosity requirement of Rule 23(a)(1) is satisfied here.

### 2. There Are Common Questions of Law And Fact

Rule 23(a)(2) requires that there be at least one question of law or fact common to the class. Fed. R. Civ. P. 23(a)(2); *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 998 (8th Cir. 2016). "The plaintiffs' 'claims must depend upon a common contention . . . [which] must be

13

of such a nature that it is capable of classwide resolution . . .'" *Ingersoll v. Farmland Foods, Inc.*, No. 10-6046-CV-SJ-FJG, 2012 U.S. Dist. LEXIS 24021, at *21 (W.D. Mo. Feb. 9, 2012) (quoting *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)). "In *Dukes,* the Court acknowledged that a single common question 'will do' for purposes of Rule 23(a)(2)." *Ebert*, 823 F.3d at 478 (quoting *Wal–Mart Stores, Inc.,* 131 S. Ct. at 2556).

Courts have applied the commonality requirement permissively in consumer class cases where, like here, defendants' uniform acts and omissions are at the center of the case. *See, e.g., Claxton,* 2015 U.S. Dist. LEXIS 75605, at *9 (identifying "multiple questions of law or fact common to the class[,]" including "whether Defendant misrepresented the gasoline sold; whether the marketing/labeling of the gasoline was false, misleading, deceptive, or unfair; whether Defendant knew or should have known of the contamination prior to relevant time period; whether the sale of contaminated fuel constituted a breach of an express or implied warranty; etc.").

The "commonality" requirement based upon the complaint's allegations is satisfied here. The Complaint alleges that common legal and factual questions include, but are not limited to:

> (a) whether Defendant advertised or marketed HWS in a way that was false or misleading;
>
> (b) whether Defendant's statements about the operating temperature range of the Sights were false or misleading;
>
> (c) whether Defendant's statements about the Sights being free of parallax were false or misleading;
>
> (d) whether Defendant's statements about the Sights being fogproof were false or misleading;
>
> (e) whether Defendant's statements about the accuracy and durability and the ability of the Sights to function in varied and harsh environments were false or misleading;
>
> (f) whether, by the misconduct set forth in this complaint, Defendant has engaged in unfair, fraudulent or unlawful business practices;

14

(g) whether Defendant's conduct was committed knowingly or intentionally;

(h) whether Defendant breached its express warranties made to Plaintiffs and Class Members;

(i) whether Defendant breached its implied warranties made to Plaintiffs and the Class Members.;

(j) whether Defendant's conduct violates the Magnuson-Moss Act;

(k) whether Defendant's conduct constitutes violations of the state laws asserted herein;

(l) whether Defendant was unjustly enriched by its conduct;

(m) whether Class Members suffered an ascertainable loss as a result of the Defendant's misrepresentations; and

(n) whether, as a result of Defendant's misconduct as alleged herein, Plaintiffs and Class members are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

SAC ¶ 103.  Courts have consistently found such allegations of a common and consistent course of conduct to be the hallmark of consumer actions certified under Rule 23.  *See, e.g., Claxton*, 2015 U.S. Dist. LEXIS 75605, at *4-5 (certifying class of purchasers of contaminated fuel); *Khoday v. Symantec Corp.*, No. CIV. 11-180 JRT/TNL, 2014 U.S. Dist. LEXIS, at *36 (D. Minn. Mar. 31, 2014) (certifying class of purchasers of download insurance products); *Roeser v. Best Buy Co.*, No. CIV. 13-1968 JRT/HB, 2015 U.S. Dist. LEXIS 87770, at *1-2 (D. Minn. July 7, 2015) (certifying class of purchasers of Geek Squad's "Home Networking Made Simple" product).

Therefore, the commonality requirement is satisfied.

### 3. Plaintiffs' Claims Are Typical Of The Class

Rule 23(a)(3) requires that the claims of the class representatives be typical of those of the class.  Fed. R. Civ. P. 23(a)(3).  The requirement "is fairly easily met so long as other class members have claims similar to the named plaintiff."  *Lafollette v. Liberty Mut. Fire Ins. Co.*, No. 2:14-CV-04147-NKL, 2016 U.S. Dist. LEXIS 99980, at *19 (W.D. Mo. Aug. 1, 2016) (quoting

15

*DeBoer,* 64 F.3d at 1174 (8th Cir. 1995)). "In determining typicality, courts consider whether the named plaintiff's claim 'arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory.'" *Id.* (quoting *Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1540 (8th Cir. 1996)).

Here, based upon the complaint's allegations, the typicality requirement is satisfied, as the claims asserted by Plaintiffs are based upon the same statements contained in Defendant's advertising, marketing, and other written materials for the HWS that form the basis of the claims of all Class members. *See* SAC ¶¶ 13-33 (Plaintiffs "relied on EOTech's representations about the accuracy, durability, and specific performance standards of the Sights." Defendant, as noted, denies these allegations. Plaintiffs, like the other Class members, seek to recover damages for claimed losses from the same representations made by Defendant throughout the Class Period. Plaintiffs allege that the impact of the Defendant's misrepresentations affected all members of the Class in the same manner. Since the alleged losses of both Plaintiffs and the Class members arise out of the same course of conduct, Plaintiffs' claims are typical of the claims of the class.

### 4. Plaintiffs Will, And Have, Fairly And Adequately Protected The Interest Of The Class

Rule 23(a)(4) allows class certification if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy of representation is a twofold requirement — '(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class.'" *Claxton,* 2015 U.S. Dist. LEXIS 75605, at *10 (quoting *Lane v. Lombardi,* No. 2:12–CV–4219–NKL, 2012 U.S. Dist. LEXIS 16024132, at *3 (W.D.Mo. Nov. 8, 2012) and *U.S. Fid. & Guar. Co. v. Lord,* 585 F.2d 860, 873 (8th Cir.1978)).

16

As to the first requirement, Plaintiffs have retained counsel highly experienced in consumer class action litigation to prosecute their claims and the claims of the Class. Undersigned counsel have extensive experience litigating consumer class actions on behalf of injured consumers and have obtained significant recoveries in this area of the law. *See Motion for Appointment of Interim Lead Counsel,* ECF Nos. 81-87; Declarations of Craig R. Heidemann, Sharon S. Almonrode, Bonner C. Walsh, Adam R. Gonnelli, and Tim Dollar.

Further, Plaintiffs have no interests that are antagonistic to those of the Class. As purchasers of Defendant's HWS who claimed to have suffered losses as a result of Defendant's alleged actions, Plaintiffs' interests are directly aligned with the interests of all Class members. Plaintiffs and the absent Class members have precisely the same interest in proving their claims against Defendant.

Thus, Rule 23(a)(4)'s adequacy requirement is satisfied.

**B.      Rule 23(b)(3) Is Satisfied**

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) is "designed to secure judgments binding all class members save those who affirmatively elect[] to be excluded," where a class action will "achieve economies of time, effort, and expense, and promote…. uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 614–15, 117 S. Ct. 2231, 2245, 138 L. Ed. 2d 689 (1997) (citation omitted).

The requirements of Rule 23(b)(3) are satisfied here given the Complaint's allegations:

17

### 1. Issues Common To The Class Predominate Over Individual Issues

"At the core of Rule 23(b)(3)'s predominance requirement is the issue of whether the defendant's liability to all plaintiffs may be established with common evidence . . . If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Sandusky Wellness Ctr. LLC*, 821 F.3d at 998 (quoting *Avritt v. Reliastar Life Ins. Co.,* 615 F.3d 1023, 1029 (8th Cir. 2010)). "The requirement is not satisfied if 'individual questions ... overwhelm the questions common to the class.'" *Lafollette*, 2016 U.S. Dist. LEXIS 99980, at *29 (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 133 S.Ct. 1184, 1196 (2013)).

Here, Plaintiffs contend that common questions of fact and law predominate over individual questions because the central questions relating to Defendant's liability are common to the Class, *e.g.,* whether Defendant allegedly made materially false and/or misleading representations regarding the performance and functionality of the HWS, thereby injuring Plaintiffs and the Class members who purchased the HWS during the Class Period. As a result, Plaintiffs believe that Defendant's liability to Plaintiffs and the Class members may be established with common evidence: Defendant's advertising, marketing, and other written materials regarding the HWS. The same alleged course of conduct by the Defendant forms the basis of all Class members' claims and, Plaintiffs claim, resolution of the question whether the HWS are defective will apply to the whole class.

Thus, Plaintiffs contend that the common questions of law and fact relating to the Defendant's liability affect all members of the Class and predominate over questions affecting individual members. *Sandusky Wellness Ctr., LLC*, 821 F.3d at 998 (defining the "core" of the predominance requirement as "whether the defendant's liability to all plaintiffs may be established with common evidence.").

## 2. A Class Action Is Superior To Other Methods Of Adjudication

Rule 23(b)(3) lists four factors relevant to the superiority analysis:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "Rule 23(b)(3) is the best method of adjudication for situations . . . in which the potential recovery is [sufficiently] small that litigation of a single claim is, as a general matter, hardly worth the cost and effort of litigation." *Speer v. Cerner Corporation*, No. 14-0204-CV-W-FJG, 2016 U.S. Dist. LEXIS 131873, at *33 (W.D. Mo. Sept. 27, 2016) (citations omitted). *See also Amchem Prod., Inc.,* 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (citation omitted). Notably, with respect to manageability, "When confronted with a settlement only class, however, 'a district court need not inquire whether the case, if tried, would present intractable management problems.'" *Claxton*, 2015 U.S. Dist. LEXIS 75605, at *14 (quoting *Amchem Prods., Inc.,* 521 U.S. at 620).

Here, class action treatment is superior to any other method for the fair and efficient adjudication of the controversy, particularly with respect to the proposed settlement. There is little incentive to individually control the prosecution because the settlement accounts for (1) Class members who previously received a refund from Defendant, who may be additionally entitled to a voucher toward the purchase of a new L3 EOTech product; (2) Class members who have not previously received a refund but would like to keep their HWS, who may be additionally entitled

19

to a cash benefit or voucher; and (3) Class members who have not previously received a refund and want to return their HWS for a full refund.

In addition, the individual claims here are relatively small – the manufacturer's suggested retail price for the HWS ranges from $299 to $1,179. The Class members, therefore, lack incentive to bring individual actions. *Speer*, 2016 U.S. Dist. LEXIS 131873, at *34; *Amchem Prod., Inc.*, 521 U.S. at 617.

Moreover, the Court has already consolidated separate actions against Defendant and determined it is desirable to concentrate litigation in this forum. A class action in this instance will avoid potential duplicative litigation and will save the Parties time and legal costs to adjudicate common legal and factual issues. *Amchem Prod., Inc.*, 521 U.S. at 614–15.

Therefore, a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

### C.    Interim Lead Counsel Should be Appointed Class Counsel

Plaintiffs also request that this Court appoint Dollar Burns & Becker, L.C.; Douglas Haun & Heidemann, P.C.; Walsh, L.L.C.; The Sultzer Law Group P.C[1], Faruqi & Faruqi LLP and The Miller Law Firm, P.C. as class counsel in accordance with Fed. R. Civ. P. 23(g). That provision states that the court certifying a class must also "appoint class counsel." Class counsel must "fairly and adequately represent the interests of the Class." Fed. R. Civ. P. 23(g)(1)(A), (B). In appointing class counsel, the court must consider:

- the work counsel has done in identifying or investigating potential claims in the action;
- counsel's experience in handling class actions, other complex

---

[1] During the course of the litigation, counsel Adam R. Gonnelli left co-Interim Lead Counsel Faruqi & Faruqi to join the Sultzer Law Group. Both firms have actively worked on the case, and Plaintiffs request that the Sultzer Law Group be added to the Lead Counsel Group. A copy of the firm resume of the Sultzer Law Group is attached as Exhibit 3 to the Gonnelli Decl.

20

litigation, and the types of claims asserted in the action;

- counsel's knowledge of the applicable law; and
- the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A)(i)(iv).

The firms moving for appointment as class counsel have an abundance of complex litigation experience, including numerous successful class actions. *See Firm Resumes (Dollar, Heidemann, Faruqi, Miller),* ECF Nos. 83-84, 86-87; *see also* Bonner Decl. ¶¶ 7-8, ECF No. 85. Further, the firms have already undertaken a vigorous prosecution of this action, including conducting an initial investigation of the claims, coordinating the consolidation of this action, filing the SAC, and negotiating settlement over the course of several mediation sessions, among other things. Through these efforts, undersigned counsel have demonstrated their commitment to this action, and they have invested the resources necessary to litigate the case to a successful conclusion. The firms' ample and notable records in litigating and achieving successful outcomes, and their commitment to this action to date, strongly indicate that these firms will adequately represent the interests of the Class.

Accordingly, under the considerations identified in Rule 23(g)(1), Lead Counsel submit that they have demonstrated they are qualified for appointment as class counsel.

## III. THE NOTICE PROGRAM SATISFIED DUE PROCESS

Rule 23(c)(2)(B) requires that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Grunin*, 513 F.2d at 120 (to satisfy due process, notice of class action settlement must be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections")

21

(quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). In its Preliminary Approval Order, the Court approved the Parties' jointly proposed Notice Plan. Since then, a thorough notice program, intended to provide the best notice practicable, was implemented. *See* § I.D., *supra*.

Where possible, class members received notice of the settlement by direct mail. Finegan Decl. ¶¶ 16-18 (over 40,000 class members were mailed the notice). For the majority of the class, however, notice was provided by online banner ads and print publications. *Id.* ¶¶ 19-25. *Hashw*, 2016 U.S. Dist. LEXIS 61004 at *942 (D. Minn. April 26, 2016) (overruling objector's criticism of Heffler Group notice program which provided direct notice where possible and publication for remainder); *Ramsey v. Sprint,* No. 4:11-Cv-3211, 2012 U.S. Dist. LEXIS 171145, at *5-6 (D. Neb. Dec. 3, 2012) (direct notice where names available and published notice to remainder satisfied due process).

Since over 87% of rifle owners are online, Heffler designed an aggressive web and social media campaign which resulted in over 203 million impressions. Finegan Decl. ¶ 21. *Cf. Eastwood v. Southern Farm Bureau Casualty Insurance Co.*, No 3:11-CV-03075, 2014 U.S. Dist. LEXIS 142652, at *11 (D. Ark. Oct. 7, 2014) (criticizing paper only notice as "antiquated")

With respect to traditional print advertising, ads were places in print magazines with a total readership of roughly 40 million, including magazines purchased almost exclusively by gun-owners. Finegan Decl. ¶ 20. Further, the notice campaign was successful in driving a huge amount of traffic to the settlement website. As of May 16, 2017, 265,976 users (people) had visited the site, with over 331,405 sessions. *Id.* ¶ 28. Lastly, the toll-free help line had received 5,159 calls to the automated line and 3,040 to live operators. *Id.* ¶ 29.

Accordingly, the notice campaign satisfied the requirements of Rule 23 and due process.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court: (i) grant final approval to the proposed settlement; (ii) certify the Settlement Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure; (iii) appoint the law firms of Dollar Burns & Becker, L.C.; Douglas Haun & Heidemann, P.C.; Walsh, L.L.C.; The Sultzer Law Group, P.C, Faruqi & Faruqi, LLP, and The Miller Law Firm, P.C. as class counsel; and (iv) grant such further relief as the Court deems just and proper.

Dated: May 19, 2017

Respectfully submitted,

**DOLLAR BURNS & BECKER, L.C.**

By:  */s/ Tim Dollar*
Tim Dollar, Missouri Bar No. 33123
1100 Main Street, Suite 2600
Kansas City, MO 64105
Tel: (816) 876-2600
Fax: (816) 221-8763
Email: timd@dollar-law.com

*Proposed Co-Lead Counsel and Chair of the Plaintiffs' Leadership Team*

Craig R. Heidemann
**DOUGLAS HAUN & HEIDEMANN PC**
111 W. Broadway St.
Bolivar, MO 65613
Tel: (417) 326-5261
Fax: (417) 326-2845
Email: cheidemann@boliverlaw.com

Sharon S. Almonrode (admitted *pro hac vice*)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Suite 300
Rochester, MI 48307
Tel: (248) 841-2200
Fax: (248) 652-2852
Email: ssa@millerlawpc.com

23

Bonner C. Walsh (admitted *pro hac vice*)
**WALSH, LLC**
P.O. Box 7
Bly, Oregon 97622
Tel: (541) 359-2827
Fax: (866) 503-8206
Email: bonner@walshpllc.com

Adam R. Gonnelli (admitted *pro hac vice*)
**THE SULTZER LAW GROUP, P.C.**
280 Route 35, Suite 304
Red Bank, NJ 07701
Email: gonnellia@thesultzerlawgroup.com

Nadeem Faruqi (pending *pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, New York 10017
Tel: (212) 983-9330
Fax: (212) 983-9331
Email: nfaruqi@faruqilaw.com


*Proposed Co-Lead Counsel*

24

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of May, 2017, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF system, which will send notifications of such filing to the CM/ECF participants registered to receive service in this matter.

By:   */s/ Tim Dollar*
Tim Dollar