**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | |
|---|---|
| ANDREW TYLER FOSTER, et al, <br><br>              Plaintiffs, <br><br>       vs. <br><br> L-3 COMMUNICATIONS <br> EOTECH, INC. et al, <br><br>            Defendants. | Case No.6:15-cv-03519-BCW <br><br> Consolidated with: <br><br>     Case No. 4:16-cv-00095-BCW <br>     Case No. 6:16-cv-03109-BCW <br>     Case No. 4:16-cv-00438-BCW <br>     Case No. 4:16-cv-00439-BCW <br><br> Hon. Brian C. Wimes |

## SUGGESTIONS IN SUPPORT OF PLAINTIFFS' APPLICATION FOR AWARD OF ATTORNEYS' FEES, LITIGATION EXPENSES, AND SERVICE AWARDS

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................ 1

II.     THE SETTLEMENT PROCESS ............................................................................... 1

III.    THE SETTLEMENT TERMS ................................................................................... 2

IV.     ARGUMENT ................................................................................................................ 2

A.     Courts Have Broad Discretion In Awarding Fees ................................................. 2

B.     Compliance With Rules 23(h) And 54(d) ................................................................ 3

C.     The Two Methodologies To Determine An Appropriate Fee Award .................... 4

1.     Percentage Of The Fund And Lodestar/Multiplier ........................................... 4

2.     Courts Prefer The Percentage Method In Class Actions .................................. 4

D.     The Application of the Common Fund Methodology in This Case ........................ 5

1.     This Is A Common Fund Case .......................................................................... 5

2.     The Size Of The Common Fund For Purposes Of The Fee Application ......... 6

3.     The Appropriate Percentage ............................................................................. 7

E.     Factors That May be Considered When Evaluating Fee Applications ................. 8

1.     The Time And Labor Required ......................................................................... 9

2.     The Novelty and Difficulty of the Questions ................................................... 9

3.     The Skill Required to Perform the Services Properly .................................... 10

4.     The Preclusion Of Other Work ...................................................................... 11

5.     The Customary Fee and Awards in Similar Cases ........................................ 11

6.     Whether the Fee is Fixed or Contingent ........................................................ 12

7.     The Amount Involved and the Result Obtained ............................................. 12

8.     The Experience, Reputation And Ability Of The Attorneys .......................... 13

9.     The Undesirability Of The Case ..................................................................... 14

10.    Public Policy Considerations Support The Requested Fee ........................... 15

Case 6:15-cv-03519-BCW   Document 134   Filed 05/19/17   Page 2 of 27

F.      The Use Of The Lodestar Method As A Cross-Check ........................................ 15

        1.   The Fee is Reasonable Under The Lodestar/Multiplier Method.................... 16

        2.   The Requested Service Awards Should Be Approved................................. 17

G.      Expenses Should Be Reimbursed ....................................................................... 17

V.     CONCLUSION.............................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adelphia Comm'ns Corp Sec. & Derivative Litig.*,
No. 03 MDL 1529, 2006 U.S. Dist. LEXIS 84621 (S.D.N.Y. Nov. 26, 2006) ......................11

*Allen v. Tobacco Superstore, Inc.*,
475 F.3d 931 (8th Cir. 2007) ...................................................................................................8

*In re Aquila ERISA Litigation*,
No. 04-00865-Cv-DW,
2007 U.S. Dist. LEXIS 87830 (W.D. Mo. Nov. 29, 2007).......................................................17

*Astiana v. Kashi Co.*,
Case No. 11-CV-1967-H (BGS),
2014 U.S. Dist. LEXIS 127624 (S.D. Cal. Sept. 2, 2014) .......................................................13

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
710 F. Supp. 2d 1378 (J.P.M.L. 2010)....................................................................................14

*Barfield v. Sho-Me Power Electricity Coop.*,
Case No. 2:11-cv-4321NKL,
2015 U.S. Dist. LEXIS 70166 (W.D. Mo. June 1, 2015) ...........................................5, 6, 7, 8

*In re Blue Buffalo Co.*,
53 F. Supp. 3d 1385 (J.M.P.L. 2014)......................................................................................14

*Blum v. Stenson*,
465 U.S. 886 (1984).................................................................................................................7

*Boeing Co. v. Van Geme*rt,
444 U.S. 472 (1980).................................................................................................................6

*Brehm v. Engle*,
No. 8:08Cv254, 2011 U.S. Dist. LEXIS 35127 (D. Neb. Mar. 30, 2011) ...............................8

*Caligiuri v. Symantec Corp.*,
No. 16-2015, 2017 U.S. App. LEXIS 7538 (8th Cir. April 28, 2017)....................7, 12, 16, 17

*In re Charter Commc'ns, Inc.*,
MDL No. 1506, 2005 U.S. Dist. LEXIS 14772 (E.D. Mo. June 30, 2005)...........13, 15, 16, 18

*In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*,
736 F. Supp. 1007 (E.D. Mo. 1990).....................................................................................5, 16

Case 6:15-cv-03519-BCW   Document 134   Filed 05/19/17   Page 4 of 27

*In re Diet Drugs (Phentermine,Fenfluramine, Dexfenfluramine) Products Liab. Litig.*,
  553 F. Supp. 2d 442 (E.D. Pa. 2008) .......................................................14

*E. Me. Baptist Church v. Union Planters Bank, N.A.*,
  244 F.R.D. 538 (E.D. Mo. Feb. 15, 2007) .............................................10

*In re Flag Telecom Holdings*,
  No. 02-Cv-3400, 2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 5, 2010)..........................15

*Gilbert v. Abercrombie & Fitch, Co.*,
  No. 2:15-cv-2854, 2016 U.S. Dist. LEXIS 103441 (S.D. Ohio Aug. 5, 2016) ......................10

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
  559 F. Supp. 2d 1405 (J.P.M.L. 2008).......................................................14

*Huyer v. Wells Fargo & Co.*,
  314 F.R.D. 621 (S.D. Iowa 2016) ..............................................................7

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
  655 F. Supp. 2d 1357 (J.P.M.L. 2009)........................................................14

*Johnson v. Georgia Highway Express*,
  488 F.2d. 714 (5th Cir. 1974) ..............................................................8, 9

*Johnston v. Comerica Mortgage Corp.*,
  83 F.3d 241 (8th Cir. 1996) ..............................................................4, 5, 6

*Kelly v. Phiten USA, Inc.*,
  277 F.R.D. 564 (D. Iowa 2011) ..............................................................8

*Knutson v. Sprint Communs. Co. L.P.*,
  No. 4:11-cv-04041, 2013 U.S. Dist. LEXIS 81029 (D.S.D. June 10, 2013)................3, 4, 6, 7

*In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*,
  847 F.3d 619 (8th Cir. 2017) ..............................................................4

*Litton Microwave Cooking Prods. v. Leviton Mfg. Co.*,
  15 F.3d 790 (8th Cir. 1994) ..............................................................2

*Missouri v. Jenkins*,
  491 U.S. 274 (1989)..............................................................7

*Pa. v. Del. Valley Citizens' Council for Clean Air*,
  483 U.S. 711 (1987)..............................................................12

*Petrovic v. AMOCO Oil Co.*,
  200 F.3d 1140 (8th Cir. 1999) ..............................................................15, 16

v

*Ramsey v. Sprint Commc'ns Co., L.P.*,
No. 4:11-Cv-3211, 2012 U.S. Dist. LEXIS 171145 (D. Neb. Dec. 3, 2012) .....................8, 15

*Ray v. Lundstrom*,
No. 8:10Cv199, 2012 U.S. Dist. LEXIS 160089 (D. Neb. Nov. 8, 2012)................................8

*Sanderson v. Unilever Supply Chain, Inc.*,
No. 10-Cv-00775-FJG,
2011 U.S. Dist. LEXIS 145794 (W.D. Mo. Dec. 19, 2011) ......................................................7

*Shackleford v.Cargill Meat Solutions Corp..*,
No. 12-CV-4065-FJG,
2013 U.S. Dist. LEXIS 32130 (W.D. Mo. Mar. 8, 2013) ........................................................5

*In re St. Paul Travelers Sec. Litig.*,
No. 04-3801 JRT FLN,
2006 U.S. Dist. LEXIS 23191 (D. Minn. Apr. 25, 2006) ......................................................16

*Teachers Ret. Sys. v. A.C.L.N., Ltd.*,
No. 01-Cv-11814, 2004 U.S. Dist. LEXIS 8608 ..................................................................11

*In re Texas Prison Litigation*,
191 F.R.D. 164 (W.D. Mo. 1999) ...........................................................................................5

*In re Toyota Motor Corp. Unintended Acceleration Mktg. Sales Practices &
Prods. Liab. Litig.*,
704 F. Supp. 2d 1379 (J.P.K.L. 2010) ...................................................................................14

*Travelers Prop. Cas. Ins. Co. of Am. v. Nat'l Union Ins. Co.*,
735 F.3d 993 (8th Cir. 2013) ..................................................................................................3

*In re U.S. Bancorp Litig.*,
291 F.3d 1035 (8th Cir. 2002) ................................................................................................7

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods., Liability
Litig.*,
No. MDL 2672, 2017 U.S. Dist. LEXIS 44492 (J.M.P.L. Mar. 24, 2017) ............................14

*West v. PSS World Med., Inc.*,
No. 4:13 CV 574, 2014 U.S. Dist. LEXIS 57150 (E.D. Mo. April 24, 2014).........................7

*Wiles v. Southwestern Bell Tel. Co.*,
No. 09-4236-CV-C-NKL,
2011 U.S. Dist. LEXIS 64163 (W.D. Mo. June 9, 2011) (Whitworth, J.).....................5, 7, 16

*In re Xcel Energy*,
364 F.Supp.2d 980 (D. Minn. 2005)............................................................................. *passim*

Case 6:15-cv-03519-BCW   Document 134   Filed 05/19/17   Page 6 of 27

*Yarrington v. Solvay Pharms., Inc.*,
   697 F. Supp. 2d 1057 (D. Minn. 2010) ........................................................................... *passim*

*Zilhaver v. UnitedHealth Group, Inc.*,
   646 F. Supp. 2d 1075 (D. Minn. 2009) ...................................................................................17

*In re Zurn Pex Plumbing Prod. Liab. Litig.*,
   No. 08-MDL-1958, 2013 U.S. Dist. LEXIS 27155 (D. Minn. Feb. 27, 2013) .......................12

**Other Authorities**

Federal Rule of Civil Procedure 23(h) ...........................................................................................3

Federal Rule of Civil Procedure Rule 54(d) ..............................................................................3, 4

## I. INTRODUCTION

If the Court grants final approval to the proposed Settlement, Plaintiffs request that the Court award attorneys' fees and reimbursement of expenses in the amount of $10,000,000.00 and approve service awards in the amount of $2,000.00 for each class representative. The payment of the attorneys' fees and service awards do not diminish the Class Members' recovery because they will be paid separately from the benefits to the Class.

This consumer class action case took two years and 5,400 attorney hours to litigate and produced an excellent result for the class. Over $51,000,000.00 was claimed and represented a full refund for most participating class members. Indeed, "Settlement Class Members who file timely and otherwise valid claims will receive 100% of their claimed damages – a percentage almost unheard of in class action litigation." *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1062 (D. Minn. 2010).

## II. THE SETTLEMENT PROCESS

The Settlement itself was the result of an extended 11-month long process that took four in-person mediations and numerous telephone conferences to complete. The process was characterized by false starts, terminations of discussions, and the participation of many different lawyers on both sides. The process was overseen by noted mediator Rodney A. Max, whose unflagging efforts should be commended. A description of the settlement process and Mr. Max's role is set forth in his declaration of May 18, 2017 ("Max Decl."), which is submitted with Plaintiffs' motion for final approval of this settlement. The key points of the mediation process are:

> 1.  It was at all times conducted at arm's-length, frequently contentious, and success was uncertain until the day the agreement was signed. Max Decl. ¶¶ 16, 18. In

addition, the process required four mediations in three different cities over 11 months, *id.* at ¶ 14, as well as hundreds of phone calls and emails.

2. The negotiations were characterized by an extremely high level of detail. The parties negotiated contentiously and extensively on the fine points of the Settlement, including how the benefits would be obtained, the claims process and claims administration, and the notice program. *Id.* at ¶¶ 17, 20.

3. The parties negotiated the fees that are requested here only after agreement was reached on the Settlement benefits for the class. *Id.* at ¶ 19.

## III. THE SETTLEMENT TERMS

The terms of the Settlement are described in detail in Plaintiffs' motion for final approval of this Settlement. The Settlement provides anyone who purchased a Sight since 2005 with a full refund if they return their Sight to the Defendant. For those who wish to keep their Sights, they have the option of a cash payment of between $25 and $50 or a $100 voucher for new EOTech products.

Class members have claimed more than $51 million[1] so far.

## IV. ARGUMENT

### A. Courts Have Broad Discretion In Awarding Fees

District Courts in the Eighth Circuit are afforded broad discretion in making fee awards. "The amount of an award of attorney's fees rests within the sound discretion of the court and we will not disturb it absent a clear abuse of that discretion." *Litton Microwave Cooking Prods. v.*

---

[1] This number only includes those members who chose to return the sight and does not include the approximate $80,000 benefit of claims for a voucher, or current claims for $84,850.00 cash for those class members who are retaining their Sight.

2

*Leviton Mfg. Co.*, 15 F.3d 790, 796 (8th Cir. 1994); s*ee also Travelers Prop. Cas. Ins. Co. of Am. v. Nat'l Union Ins. Co.*, 735 F.3d 993, 1002-03 (8th Cir. 2013) (quoting *Litton*).

Even greater discretion is afforded to the trial court in class cases like this one. *Travelers Prop.* 735 F.3d at 1003-04 (deferring to the district court's "substantial and uniquely broad authority" to award fees in common fund cases and declining to review fees).

## B.    Compliance With Rules 23(h) And 54(d)

Federal Rule of Civil Procedure 23(h)[2] authorizes courts to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." In evaluating a fee request, a court "must find the facts and state its legal conclusions under Rule 52(a)." Rule 23(h)(3).

In making a motion for fees in a class action case, plaintiffs must abide by the requirements of Rule 54(d)(2). *See* Rule 23(h)(1). Under 54(d)(2), plaintiffs must apply to the court for fees by motion no later than 14 days after judgment and provide the amount of and grounds for the requested award.[3] *See Knutson v. Sprint Communs. Co. L.P.*, No. 4:11-cv-04041, 2013 U.S. Dist. LEXIS 81029, at *4-5 (D.S.D. June 10, 2013).

---

[2] Attorney's Fees and Nontaxable Costs. In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply: (1) a claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner; (2) a class member, or a party from whom payment is sought, may object to the motion; (3) the court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a); and (4) the court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D).

[3] Rule 54(d) Costs; Attorney's Fees . . . (2) *Attorney's Fees.* (A) *Claim to Be by Motion.* A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages. (B) *Timing and Contents of the Motion.* Unless a statute or a court order provides otherwise, the motion must: (i) be filed no later than 14 days after the entry of judgment; (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award; (iii) state the amount sought or provide a fair

3

Plaintiffs have complied with the requirements of Rule 54(d)(2). They are seeking fees by motion, the motion is made before judgment has been entered, and they set forth the amount sought and grounds for the motion herein.

## C. The Two Methodologies To Determine An Appropriate Fee Award

### 1. Percentage Of The Fund And Lodestar/Multiplier

Courts use two methods to determine appropriate fees: the "percentage of the fund" method and the "lodestar/multiplier" method. *Knutson*, 2013 U.S. Dist. LEXIS 81029, at *5.

Using the percentage method, the court considers fees as a percentage of the class recovery. Using the lodestar method, the court multiplies the number of hours spent on the litigation by the attorneys' hourly rate or rates and then adjusts the figure based on various factors.

It is left to the court's sound discretion which method to use. "It is within the discretion of the district court to choose which method to apply, as well as to determine the resulting amount that constitutes a reasonable award of attorney's fees in a given case." *In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 622 (8th Cir. 2017) (internal quotations and citations omitted).

However, the practice in the Eighth Circuit is to use the percentage method in cases like this one.

### 2. Courts Prefer The Percentage Method In Class Actions

The Eighth Circuit, in *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 245 (8th Cir. 1996), adopted the recommendation of the 1985 Third Circuit Task Force that the percentage method should be used in common fund cases.

---

estimate of it; and (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

4

Although district courts in the Eighth Circuit have discretion to use the lodestar method as well, *id.* at 246, nearly all use the percentage method in common fund cases. This is especially true in the Western District of Missouri. *See Barfield v. Sho-Me Power Electricity Coop.*, Case No. 2:11-cv-4321NKL, 2015 U.S. Dist. LEXIS 70166, at *9 (W.D. Mo. June 1, 2015) (Laughrey, J.) ("Indeed, where attorney fees and class members' benefits are distributed from one fund, a percentage-of-the-benefit method may be preferable to the lodestar method for determining reasonable fees.") (quotations omitted); *Shackleford v.Cargill Meat Solutions Corp..*, No. 12-CV-4065-FJG, 2013 U.S. Dist. LEXIS 32130, at *2-3 (W.D. Mo. Mar. 8, 2013) (holding that "[t]he Eighth Circuit, as well as this Court, has held that in 'common fund' cases, where attorney fees and class members' benefits are distributed from one fund a percentage of the benefit method may be preferable to the lodestar method") (Gaitan, J.); *Wiles v. Southwestern Bell Tel. Co.*, No. 09-4236-CV-C-NKL, 2011 U.S. Dist. LEXIS 64163, at *11 (W.D. Mo. June 9, 2011) (Whitworth, J.) (stating lodestar approach "is not the preferred method in a common fund case."); *In re Texas Prison Litigation*, 191 F.R.D. 164, 176 (W.D. Mo. 1999) ("Because this is a common fund case, the percentage of benefit method should be applied.") (Laughrey, J.); *see also In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*, 736 F. Supp. 1007, 1008-09 (E.D. Mo. 1990) (percentage of fund "is a more appropriate and efficient means of calculating an attorneys' fee award" than lodestar method).

**D.    The Application of the Common Fund Methodology in This Case**

**1.    This Is A Common Fund Case**

In a traditional common fund case, a fund is established from which all payments are drawn—benefits to the class, attorneys' fees, litigation expenses, notice and administration expenses, and service awards.

Here, the Defendants are paying the attorneys' fees expenses, the notice and administration costs separately. However, the case should still be analyzed as if it were a traditional common fund. "The direct payment of attorneys' fees by defendants should not be a barrier to the use of the percentage of the benefit analysis . . ." *Johnston,* 83 F.3d at 245; *Barfield*, 2015 U.S. Dist. LEXIS 70166, at * 10 (same); *Knutson*, 2013 U.S. Dist. LEXIS 81029 (citing *Johnston* and using the percentage method where fees paid separately from settlement fund).

### 2. The Size Of The Common Fund For Purposes Of The Fee Application

As a general matter, fees should be based on the total benefits available to class members whether they are claimed or not. "Under the percentage-of-the-fund method, it is appropriate to base the percentage on the gross cash benefits available for class members to claim, plus the additional benefits conferred on the class by [defendant's] separate payment of attorneys' fees and expenses, and the expenses of administration." *Knutson*, 2013 U.S. Dist. LEXIS 81029, at *5-6. In *Knutson*, the court added the maximum recovery if each class member presented a claim to the fees and the administration costs and used that number as the common fund.

As the United States Supreme Court stated, the class members' "right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel." *Boeing Co. v. Van Gemer*t, 444 U.S. 472, 480 (1980).

Here, the total available benefit if all class members claimed a refund would be over $500 million[4]. By any theory, a $10 million-dollar fee would be a tiny fraction of the total. However, the Court is within its discretion to look to the actual amount claimed by Class Members. Class

---

[4] This is based upon the current submitted average price per Sight of $651.67 as observed by the claims administrator in submitted claim forms through May 17, 2017.

Members have claimed a total benefit exceeding $51,000,000 in cash benefits, comprising mainly returned Sights but also including $80,000.00 in product vouchers and $84,850.00 in cash.

In addition, it is appropriate to include the requested fees themselves and costs of settlement administration to the calculation. *Knutson*, 2013 U.S. Dist. LEXIS 81029, at *5-6. Adding the requested $10 million and $780,000.00 in administration costs, the common fund would be more than $61,000,000.00.

However, even focusing on the claimed benefits alone, a common fund of $51,000,000 supports the requested fee application.

### 3. The Appropriate Percentage

The percentage of the fund awarded as fees should approximate the amount that would be paid in private contingent litigation. *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989). One-third would be a common arrangement. *See Blum v. Stenson*, 465 U.S. 886, 903 (1984). The Eighth Circuit has agreed. *Caligiuri v. Symantec Corp.,* No. 16-2015, 2017 U.S. App. LEXIS 7538, at *13-15 (8th Cir. April 28, 2017) (affirming one-third award); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming 36% award).

Courts in this District have routinely awarded one-third of common funds in fees. *See Cromeans v. Morgan Keegan and Co.*, Inc. No. 2:12-cv-04269-NKL, 2015 U.S. Dist. LEXIS 135404, at *11 (W.D. Mo. Sept. 16, 2015) (awarding one-third of fund); *Barfield*, 2015 U.S. Dist. LEXIS 70166, at *12 (awarding one-third and surveying Eighth Circuit cases); *Wiles*, 2011 U.S. Dist. LEXIS 64163, at *11 (awarding one-third of fund); *Sanderson v. Unilever Supply Chain, Inc.*, No. 10-Cv-00775-FJG, 2011 U.S. Dist. LEXIS 145794, at *2 (W.D. Mo. Dec. 19, 2011) (33.78% of total settlement fund) (Gaitan, J.).

Other district courts in the Eighth Circuit have done so as well. *See Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 629 (S.D. Iowa 2016) (awarding one-third of $25.75m fund in mortgage

7

fee case); *West v. PSS World Med., Inc.*, No. 4:13 CV 574, 2014 U.S. Dist. LEXIS 57150, at \*4 (E.D. Mo. April 24, 2014) (one-third of common fund awarded); *Ray v. Lundstrom*, No. 8:10Cv199, 2012 U.S. Dist. LEXIS 160089, at \*13 (D. Neb. Nov. 8, 2012) (awarding one third of common fund); *Ramsey v. Sprint Commc'ns Co., L.P.*, No. 4:11-Cv-3211, 2012 U.S. Dist. LEXIS 171145, at \*13-17 (D. Neb. Dec. 3, 2012) (26% approved of $4.2m fund); *Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564, 571 (D. Iowa 2011) (33% fee of 3.5 million fund awarded in consumer case); *Brehm v. Engle*, No. 8:08Cv254, 2011 U.S. Dist. LEXIS 35127, at \*6 (D. Neb. Mar. 30, 2011) (one third of common fund awarded); *Yarrington*, 697 F. Supp. 2d at 1061 (awarding one-third and noting that a 36% award would be consistent with awards in the Eighth Circuit).

Here, the requested $10 million in fees represents 19.6% of just the claimed benefits ($51 million). An award of less than 20% of the most conservative view of the common fund is well within the discretion of the Court and practice within the Eighth Circuit. In addition, the fee award will be paid separately from the Class benefits and will not reduce the $51 million.

## E.    Factors That May be Considered When Evaluating Fee Applications

The Eighth Circuit has not established a formal list of factors to consider when evaluating fee applications. Some courts have considered the factors set forth in *Johnson v. Georgia Highway Express*, 488 F.2d. 714, 719-20 (5th Cir. 1974). *See Allen v. Tobacco Superstore, Inc.*, 475 F.3d 931, 944 n.3 (8th Cir. 2007) (citing *Johnson*, 488 F.2d at 717-19). *See also Barfield*, 2015 U.S. Dist. LEXIS 70166, at \*14 (adopting *Johnson* factors in class case involving landowners).

Since not all of the *Johnson* factors apply in every case, "the court has wide discretion as to which factors to apply and the relative weight to assign to each." *In re Xcel Energy*, 364 F.Supp.2d 980, 993 (D. Minn. 2005). The *Johnson* factors for evaluating attorneys' fees include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the attorney's preclusion of other employment due to acceptance of the case; (5) the customary fee; (6)

8

whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id*.

Consideration of the relevant *Johnson* factors supports the fee application.

### 1.      The Time And Labor Required

Class Counsel expended 5,494.45 hours on this litigation for a total lodestar of $3,257,895.17.  *See* Dollar Decl. ¶ 48.

The work performed in this case included: thorough research of the factual and technical claims; interviews, discussions and correspondence with hundreds of class members about their experiences with the Sights; initial and amended complaints; review nearly 50,000 pages of documents; four in-person mediations, and extensive negotiations concerning the settlement and the settlement agreement; and supervision and negotiations concerning the comprehensive notice plan.

In addition, if the Court grants the motion for final approval, Class Counsel will continue to spend time on the case supervising and assisting with the administration of the settlement and answering questions from class members, for which they will receive no additional compensation.

### 2.      The Novelty and Difficulty of the Questions

The technical questions involved in this case were challenging.  This case required a working knowledge of the complexities of the operations of opto-electronic systems as well as general physics and optics.  Opto-electronics is a branch of technology that concerns the combined use of electronics and light, and often involves complex circuitry to bring a portable device to

market.  The importance of understanding the principles behind this area as well as holography,[5] firearms, ballistics, and weapon sights and use was required to adequately understand the issues here.  If class counsel had not had a technical background, then many of the items at issue would not have been understood and the Class might not have been adequately represented.

With respect to the legal questions, Class Counsel was also faced with the prospect of the application of the warranty and consumer laws of many different states to the Plaintiffs' claims, which added a formidable layer of complexity on the legal issues.  *See E. Me. Baptist Church v. Union Planters Bank, N.A.*, 244 F.R.D. 538, 545-46 (E.D. Mo. Feb. 15, 2007) (citing *In re St. Jude Med., Inc.,* 425 F.3d 1116, 1120 (8th Cir. 2005)) ("[T]he Eighth Circuit has held that federal district courts must engage in an in-depth choice of law analysis to determine whether multiple states' laws should be applied to the class claims.").

This factor supports the fee application.

### 3.      The Skill Required to Perform the Services Properly

Class actions are, by their nature, "inherently complex."  *Gilbert v. Abercrombie & Fitch, Co.*, No. 2:15-cv-2854, 2016 U.S. Dist. LEXIS 103441, at *25 (S.D. Ohio Aug. 5, 2016).  They are not for the faint of heart and require a high level of skill and commitment to prosecute.  The firms representing the Class brought that skill and commitment to this case.  *See* Ex. 3 to the Declarations of Adam Gonnelli ("Sultzer Decl."), Nadeem Faruqi ("Farqui Decl."), Tim Dollar

---

[5] Holography is the study or production of holograms.  The Sights at issue here integrate opto-electronics and holography to bring a compact Sight to market that uses a holographic image that is unique to the industry.

("DBB Decl."), Sharon Almonrode ("Miller Decl."), and Craig R. Heidemann ("DHH Decl."); *see also* Declaration of Bonner C. Walsh ("Walsh Decl.") ¶¶ 18-19.

In addition, Defendant L-3 is a large and well-capitalized defense contractor. It was represented by Kirkland and Ellis, LLP and Morrison & Foerster, LLP, large firms with national practices. Courts have repeatedly recognized that the quality of the opposition faced by Plaintiffs' counsel should also be taken into consideration. *See, e.g.*, *Yarrington*, 697 F. Supp. 2d at 1063 (noting fact that defendant's attorneys "consist of multiple well-respected and capable defense firms" which "consistently challenged Plaintiffs throughout the litigation" supported class counsel's request for fees); *In re Adelphia Comm'ns Corp Sec. & Derivative Litig.*, No. 03 MDL 1529, 2006 U.S. Dist. LEXIS 84621, at *15 (S.D.N.Y. Nov. 26, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsel's work"); *Teachers Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-Cv-11814, 2004 U.S. Dist. LEXIS 8608, at *20 ("The quality of opposing counsel is also relevant in evaluating the quality of services rendered by Plaintiffs' Counsel.").

This factor strongly supports the fee application.

### 4. The Preclusion Of Other Work

Several of the firms have hourly practices that generate guaranteed billing. *See* Walsh Decl. ¶ 5, Sultzer Decl. ¶ 5, DHH Decl. ¶ 12. These firms essentially traded guaranteed payment from hourly clients for the uncertain prospect of payment months or years later.

This factor supports the fee application.

### 5. The Customary Fee and Awards in Similar Cases

As discussed *supra*, the customary fee in a case like this in the Eighth Circuit is one-third of the common fund. In cases comparable to this one in size, courts have awarded one-third. *See*

11

*Symantec*, 2017 U.S. App. LEXIS 7538, at *13-15 (upholding award of one-third of $60 million fund). This factor strongly supports the fee application.

### 6. Whether the Fee is Fixed or Contingent

Class Counsel undertook this case on a wholly-contingent basis so fees in this case were never guaranteed. In addition, counsel spent $85,127.18 in out of pocket expenses with no guarantee of reimbursement.

As the U.S. Supreme Court has noted, "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success." *Pa. v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 736 (1987) (citation omitted). The risk of nonpayment strongly supports the fee application: "Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees." *Yarrington*, 697 F. Supp. 2d at 1062 (quoting *In re Xcel*, 364 F. Supp.2d at 994) (quotations omitted); *see also In re Zurn Pex Plumbing Prod. Liab. Litig.*, No. 08-MDL-1958, 2013 U.S. Dist. LEXIS 27155, at *8 (D. Minn. Feb. 27, 2013) ("[T]he risk of receiving little or no recovery is a major factor in awarding attorney fees[.]") (citing *In re Xcel,* 364 F. Supp.2d at 994).

Accordingly, the Court should consider the contingent nature of the representation as a factor strongly supporting Plaintiffs' fee request.

### 7. The Amount Involved and the Result Obtained

This case resulted in more than $51 million being claimed by class members. In addition, the Court should consider the total possible recovery made available by the lawsuit, which is in excess of $500 million.

With respect to the results obtained, Class Members were eligible to receive a full refund, "a percentage almost unheard of in class action litigation." *Yarrington*, 697 F. Supp. 2d at 1062.

12

In addition, by class action standards, this litigation was resolved relatively quickly. This is also a benefit to the class since consumers do not have to wait what might be years before receiving settlement benefits. *See In re Charter Commc'ns, Inc.,* MDL No. 1506, 2005 U.S. Dist. LEXIS 14772, at *65 (E.D. Mo. June 30, 2005), at *21 (noting with approval that "[t]his is the type of complex litigation that easily could have dragged on for several more years. Instead, it had a relatively short stay of two and a half years on this court's docket because counsel litigated the case efficiently and inexpensively.").

This factor strongly supports the fee application.

### 8. The Experience, Reputation And Ability Of The Attorneys

The firms involved in this case enjoy excellent reputations in Missouri and throughout the country.

All six firms have substantial experience in complex litigation. Dollar Burns & Becker, L.C. has a nationwide reputation for trial excellence. Douglas, Haun & Heidemann P.C. have experience prosecuting consumer class actions and UCC violations. Walsh, LLC is experienced in complex consumer litigation and contributes scientific expertise. The Sultzer Law Group, P.C., is experienced in both prosecuting and defending complex class and commercial action. Faruqi & Faruqi, LLP, has specific experience in litigating large-scale consumer class actions involving deceptively marketed and advertised products. Recently, Judge Marilyn L. Huff of the United States District Court for the Southern District of California stated of Faruqi that "Plaintiffs' counsel has extensive experience acting as class counsel in consumer class action cases, including cases involving false advertising claims." *Astiana v. Kashi Co.*, Case No. 11-CV-1967-H (BGS), 2014 U.S. Dist. LEXIS 127624, at *29 (S.D. Cal. Sept. 2, 2014). The Miller Law Firm, P.C. has recovered over $3 billion dollars for clients. By way of example, the firm was co-counsel on the largest securities class action recovery from the financial crisis, *In Re AIG,* which resulted in a

13

$970.5M settlement. Ms. Almonrode, who is lead counsel from the Miller Firm, has been recognized as one of the top 100 lawyers and top five consumer lawyers in the State of Michigan. *See* Ex. 3 to Sultzer Decl., Faruqi Decl. DBB Decl., Miller Decl., and DHH Decl; *see also* Walsh Decl. ¶¶ 18-19.

Together, Proposed Counsel possesses the experience and knowledge needed to efficiently and vigorously represent the class. The experience and reputation of the firms strongly supports the fee application.

### 9. The Undesirability Of The Case

The undesirability of the case must be considered at the time the case was brought, not with the benefit of hindsight after achieving a successful result. "The risk of non-payment must be judged as of the inception of the action and not through the rosy lens of hindsight." *In re Diet Drugs (Phentermine,Fenfluramine, Dexfenfluramine) Products Liab. Litig.,* 553 F. Supp. 2d 442, 478 (E.D. Pa. 2008), *aff'd sub nom. In re Diet Drugs,* 582 F.3d 524 (3d Cir. 2009).

Here, the undesirability of the case is evidenced by the fact that only three groups of plaintiffs filed cases. It is common for many more cases to be filed in consumer class actions as any review of the MDL Panel docket will demonstrate. *See In re Blue Buffalo Co.,* 53 F. Supp. 3d 1385 (J.M.P.L. 2014) (eleven cases over five districts); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods., Liability Litig.*, No. MDL 2672, 2017 U.S. Dist. LEXIS 44492 (J.M.P.L. Mar. 24, 2017) (resulting in a multiple conditional transfer orders for over 1,254 actions in 60 districts); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 559 F. Supp. 2d 1405, 1406 (J.P.M.L. 2008) (17 actions over 4 districts); *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 710 F. Supp. 2d 1378, 1379 (J.P.M.L. 2010) (28 actions over 27 districts); *In re Toyota Motor Corp. Unintended Acceleration Mktg. Sales Practices & Prods. Liab. Litig.*, 704 F. Supp. 2d 1379, 1380 (J.P.K.L. 2010) (11 actions over 5 districts); *In re Hydroxycut Mktg. & Sales*

14

*Practices Litig.*, 655 F. Supp. 2d 1357, 1357 (J.P.M.L. 2009) (16 actions over 12 districts). This factor supports the fee application.

### 10. Public Policy Considerations Support The Requested Fee

A strong public policy concern exists for rewarding firms for bringing successful litigation, in order to provide talented counsel with incentive to bring these actions and help deter future wrongdoing. *See In re Charter Commc'ns,* 2005 U.S. Dist. LEXIS 14772, at *59 ("[P]ublic policy favors the granting of [attorneys'] fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions[.]"); *In re Flag Telecom Holdings*, No. 02-Cv-3400, 2010 U.S. Dist. LEXIS 119702, at *84-85 (S.D.N.Y. Nov. 5, 2010) (if the "important public policy is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"). Accordingly, public policy favors granting Plaintiffs' Class Counsel's fee and expense application here.

### F. The Use Of The Lodestar Method As A Cross-Check

Some courts use the lodestar method as a "reasonableness" cross check to the results of the percentage method. However, the cross-check procedure is not required, and is usually not performed if the percentage method yields a reasonable result, which it does here. *See Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999) (finding it unnecessary to review district court's lodestar analysis where court's approval under percentage method was proper); *Ramsey,* 2012 U.S. Dist. LEXIS 171145, at *16 (citing *Petrovic* and stating, "But the Court emphasizes that a lodestar analysis is not necessary if the fee does not seem excessive as a percentage of the recovery.").

15

### 1.    The Fee is Reasonable Under The Lodestar/Multiplier Method

Although not required, if the Court analyzes the fee application under the lodestar method as a cross check, the result will confirm the reasonableness of the request.

Using the lodestar method, courts multiply the number hours spent on the litigation by reasonable hourly rates. The Court then applies a multiplier to adjust the figure based on relevant factors such as the results achieved, the risk of nonpayment, and the quality of the work. *See In re Chrysler Motors Corp. Overnight EP Litig.*, 736 F. Supp. 1007, 1013-14 (E.D.Mo. 1990) (citing *Lindy Brothers Buildings, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973). *Symantec*, 2017 U.S. App. LEXIS 7538, at 14-15 (upholding fee where multiplier was less than two and citing *Nelson v. WalMart*, No. 05-cv-000134, 2009 U.S. Dist. LEXIS 71253, at *2 (E.D. Ark. Aug 12, 2009) (cited Eighth Circuit multipliers of between 2.5 and 5.61).

Here, Class Counsel's lodestar is $3,257,895.17. Awarding the requested $10 million fee results in a multiplier of 3.07

A multiplier of 3.07 is well within the normal range awarded in class action cases in the Eighth Circuit and throughout the country. Indeed, the usual range of multipliers in class litigation is between two and five. *See In re St. Paul Travelers Sec. Litig.*, No. 04-3801 JRT FLN, 2006 U.S. Dist. LEXIS 23191, at *11 (D. Minn. Apr. 25, 2006) (Tunheim, J.) (awarding fee representing a 3.9 multiplier); *Wiles*, 2011 U.S. Dist. LEXIS 64163, at *11 (awarding fee representing a 2.3 multiplier); *Yarrington*, 697 F. Supp. 2d at 1065 (awarding fee representing a 2.26 multiplier); *Xcel*, 364 F. Supp. 2d at 999 (collecting cases and awarding fee representing a 4.7 multiplier as reasonable); *In re Charter Commc'ns*, 2005 U.S. Dist. LEXIS 14772, at *69 (finding 5.61 multiplier to be "within the range of multipliers awarded in comparable complex cases").

Accordingly, a lodestar cross check demonstrates that an award of $10 million is not "overly generous," and should be approved. *Petrovic*, 200 F.3d at 1157.

16

### 2. The Requested Service Awards Should Be Approved

Under the Settlement, Plaintiffs have requested modest $2,000.00 service awards for each of the plaintiffs who brought the case and spent their time and energy on behalf of the Class. Courts grant service awards to compensate plaintiffs for their efforts to obtain compensation for absent class members. *See Yarrington*, 697 F. Supp. 2d at 1068 (upholding service awards and recognizing that "unlike unnamed Class Members who will enjoy the benefits of the Settlement without taking on any significant role, the Named Plaintiffs made significant efforts on behalf of the Settlement Class and participated actively in the litigation").

Here, Plaintiffs reviewed the complaints, spoke with counsel about their expectations and experiences with the Sights and the gun industry and the progress of the litigation, and reviewed and approved the proposed Settlement. The amounts requested by Plaintiffs are relatively small. "[C]ourts in this circuit regularly grant service awards of $10,000 or greater." *Symantec,* 2017 U.S. App. LEXIS 7538, at *17-18 (citing cases); *In re Aquila ERISA Litigation*, No. 04-00865-Cv-DW, 2007 U.S. Dist. LEXIS 87830, at *7 (W.D. Mo. Nov. 29, 2007) (service awards between $5000 and $25,000 granted to plaintiffs) (Whipple, J.); *Zilhaver v. UnitedHealth Group, Inc.*, 646 F. Supp. 2d 1075, 1085 (D. Minn. 2009) ($15,000); *Xcel*, 364 F. Supp. 2d at 1000 ($100,000 collectively to eight lead plaintiffs). In addition, any service awards will come out of the fees awarded to Counsel and will not reduce the benefits to the Class.

### G. Expenses Should Be Reimbursed

Class Counsel also seeks reimbursement of expenses in the amount of $86,605.43. A list of these expenses is submitted as Ex. 2 to Sultzer Decl., Faruqi Decl., DBB Decl., Miller Decl., and DHH Decl.; Walsh Decl. ¶ 10, and includes mediation fees, travel, and technical research. As with the service awards, any expense reimbursement will come out of the fees awarded to counsel and will not reduce the Class benefits.

17

Reimbursement of expenses that would normally be charged to a paying client is generally granted. *See In re Charter Commc'ns,* 2005 U.S. Dist. LEXIS 14772, at *73-74 (approving reimbursement of travel and mediation costs, among other items); *Xcel*, 364 F. Supp. 2d at 999-1000 (the court was satisfied that "each of the expense categories for which reimbursement was sought is non-duplicative and appropriate for payment from a settlement class fund"); *Yarrington*, 697 F. Supp. 2d at1067 ("Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed . . . The requested costs must be relevant to the litigation and reasonable in amount.")

Here, the expenses incurred were reasonable and necessary to prosecute the litigation and should be reimbursed.

## V.    CONCLUSION

For the reasons above, Plaintiffs' motion should be granted.

Dated:  May 19, 2017                    Respectfully submitted,

**DOLLAR BURNS & BECKER, L.C.**

By:   */s/ Tim Dollar*
Tim Dollar, Missouri Bar No. 33123
1100 Main Street, Suite 2600
Kansas City, MO 64105
Tel: (816) 876-2600
Fax: (816) 221-8763
Email: timd@dollar-law.com

*Co-Lead Counsel and Chair of the Plaintiffs'*
*Leadership Team*

Craig R. Heidemann
**DOUGLAS HAUN & HEIDEMANN PC**
111 W Broadway St
Bolivar, MO 65613
Tel: (417) 326-5261
Fax: (417) 326-2845
Email: cheidemann@bolivarlaw.com

18

Sharon S. Almonrode (admitted *pro hac vice*)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Suite 300
Rochester, MI 48307
Tel: (248) 841-2200
Fax: (248) 652-2852
Email: ssa@millerlawpc.com

Bonner C. Walsh (admitted *pro hac vice*)
**WALSH, LLC**
P.O. Box 7
Bly, Oregon 97622
Tel: (541) 359-2827
Fax: (866) 503-8206
Email: bonner@walshpllc.com

Adam R. Gonnelli (admitted *pro hac vice*)
**THE SULTZER LAW GROUP, P.C.**
280 Route 35, Suite 304
Red Bank, NJ 07701
Email: gonnellia@thesultzerlawgroup.com

Nadeem Faruqi (admitted *pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, New York 10017
Tel: (212) 983-9330
Fax: (212) 983-9331
Email: nfaruqi@faruqilaw.com

*Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of May, 2017, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF system, which will send notifications of such filing to the CM/ECF participants registered to receive service in this matter.

By:    */s/ Tim Dollar*
Tim Dollar