# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| ANDREW TYLER FOSTER, et al, <br><br> Plaintiffs, <br><br> vs. <br><br> L-3 COMMUNICATIONS EOTECH, INC. et al, <br><br> Defendants. | Case No.6:15-cv-03519-BCW <br><br> Consolidated with: <br><br> Case No. 4:16-cv-00095-BCW <br> Case No. 6:16-cv-03109-BCW <br> Case No. 4:16-cv-00438-BCW <br> Case No. 4:16-cv-00439-BCW <br><br> Hon. Brian C. Wimes |

## DECLARATION OF BONNER C. WALSH IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES FILED ON BEHALF OF WALSH LLC

I, Bonner C. Walsh, declare as follows:

1. I am a member of the law firm of Walsh LLC. I submit this declaration in support of Plaintiffs' Counsel application for an award of attorneys' fees in connection with services rendered in this case, as well as the reimbursement of expenses incurred by my firm in connection with this consumer class action litigation, including both this consolidated matter and several of the underlying matters that led to consolidation. I have personal knowledge of the matters set forth herein based upon my active supervision and participation in all material aspects of the litigation.

2. My firm acted as one of the Co-Lead counsel in this matter. My firm has extensive class action experience. The firm represents individuals, debtors, and small businesses in class action cases litigated in the United States. My firm has served as sole lead-counsel, as co-lead counsel, or on an executive committee in numerous class actions, including cases brought on behalf of consumers.

3. My firm kept detailed records regarding the amount of time spent by my firm, and the lodestar calculation based on my firm's current billing rates. The information was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm, which are available at the request of the Court for review *in camera*.[1] Time expended in preparing this application for fees and reimbursement of expenses has not been included in this request.

4. The hourly rates in my firm included in this matter are the same as the regular current rates charged for their services in non-contingent matters and/or which have been used in the lodestar cross check accepted by courts in other class litigation.

5. My work on this matter, which has occupied a considerable portion of my time since its inception, has precluded me from taking on more hourly work.

6. As of May 17, 2017, the total number of hours expended on this litigation by my firm is 539.91 hours. The total lodestar based on the law firm's current rates is $323,945.17.

7. My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

8. I have general familiarity with the range of hourly rates typically charged by plaintiffs' class action counsel in the district where my firm practices and throughout the United States, both on a current basis and historically. From that basis, I am able to conclude that the rates charged by my firm are commensurate with those prevailing in the market for such legal services furnished in complex class action litigation, such as this, especially those involving a technical scientific aspect.

---

[1] These records may include information concerning privileged and/or confidential attorney-client communications or work product.

9. The instant matter required a working knowledge of the complexities of the operations of opto-electronic systems as well as general physics and optics. Due to my background I was well positioned to assist all counsel in this matter on the scientific aspects of this case. Opto-electronics is a branch of technology that concerns the combined use of electronics and light, and involves complex circuitry to bring a portable device to market. The importance of understanding the principles behind this area as well as holography was required to adequately understand the issues here. If class counsel had not had a technical background, and the ability to understand these issues, then many of the items of importance in this case would not have been understood and the class would not have been adequately represented.

10. Based upon my firm records, my firm has incurred a total of $9,534.03 in un-reimbursed expenses in connection with the prosecution of this litigation.

11. The expenses incurred in this action are reflected on the books and records of my firm, which are available at the request of the Court. These books and records are prepared from expense vouchers, check records and other source materials and are an accurate record of the expenses as charged by the vendors. Third-party expenses are not marked up. Upon request, we will provide the Court with copies of documentation for each of the costs itemized above.

12. By agreement between Plaintiffs' Counsel, my firm is not charging separately for the following costs and expenses: secretarial and clerical overtime, including their meals and local transportation; after-hours HVAC; word processing; secretarial/clerical time for document preparation; time charges for routine copying, faxing or scanning; incoming/outgoing fax charges; office supplies (such as paper, binders, etc.); special publications; continuing legal education seminars; working meals for attorneys (with the exception of meals with clients, expert

3

Case 6:15-cv-03519-BCW   Document 138   Filed 05/19/17   Page 3 of 5

or other witnesses, or meal expenses for meetings between Plaintiffs' Counsel); and local overtime meals and transportation for attorneys.

13. With respect to the standing of counsel in this case, and my experience in class action matters, the following information is relevant to this case.

14. I have a Bachelor of Sciences in Physics from the Washington State University. Additionally, I did another year of further graduate studies in Physics prior to going to law school. My university had many professors who were intimately involved in Opto-Electronics including my graduate advisor. The understanding of these principals let to class counsel having a general working knowledge of the principals behind the Holographic Weapons Sights in this matter.

15. Prior to law school, I did significant research concerning defects in metals and gained familiarity with laboratory testing protocols. This has enabled me to liaison with non-retained experts and engineers in this litigation and to streamline many aspects regarding scientific concepts and how they apply to the litigation at hand. In addition, it allowed Plaintiffs' Counsel to perform initial testing of the Holographic Weapons Sights pursuant to appropriate methods and to present them for evaluation for non-testifying experts.

16. My research has been published in Hyperfine Interactions, an international journal devoted to research in solid state physics, atomic physics, nuclear physics and relevant chemistry. *See* Matthew O. Zacate, Bonner C. Walsh, et al., *Segregation of Solutes In Two-Phase Mixtures*, Vol. 136:3, Hyperfine Interactions, 653-658 (2002).

17. I also presented my research, *Site Preferences of Solutes in the Two-phase Field Between $Pd_3Ga_7$ And $PdGa$,* to the American Physics Society in March 2001.

18. I have acquired substantial experience in class actions and other complex litigation, and have obtained favorable settlements as class counsel.

19. My firm or my previous firm have been certified as class counsel in at least seven consumer class actions since 2010, including: *Eatmon v. Palisades Collection LLC*, No. 2:08-cv-00306 (E.D. Tex. Mar. 24, 2010) (Order adopting report and recommendations to certify class and appoint class counsel); *Lantrip v. Dodeka L.L.C.*, No. 2:08-cv-00476 (E.D. Tex. Sept. 15, 2011) (Order granting final approval of settlement and appointing class counsel); *Taylor* v. *Apex Financial Management,* (E.D. Tex. Sept. 21, 2010) (Order Granting Class Certification and appointing class counsel), No. 2:09-cv-00229-TJW, *Walker* v. *Asset Acquisition Group, L.L.C.,* (E.D. Tex. Aug. 25, 2011) (Order Granting Class Certification and appointing class counsel), No. 9:10-cv-185, *Bobby Prescott and Pamela White v. Autovest, L.L. C.*, 2:11-cv-00219, (E.D. Tex. October 28, 2011) (Order Conditionally Certifying Class, Granting Approval and appointing class counsel), *Michael Cox, et al v. Hilco Receivables, LLC and Central Credit Services, Inc.*, 3:09-cv-0897, (N.D. Tex. Sept. 16, 2011) (Order Granting Preliminary Approval and appointing class counsel). Additionally I was an active Executive Committee member in *In Re: Shop-Vac Marketing and Sales Practices Litigation*, MDL 2380 (M.D. Pennsylvania, December 9, 2016) (Memorandum by Judge Kane in support of Final Approval). The above actions resulted in over $500,000,000.00 in total benefits to those classes of consumers/debtors.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 18th day of May 2017.

_____
Bonner C. Walsh